**Exhibit 3**

## COMMONWEALTH OF PUERTO RICO
## COURT OF FIRST INSTANCE
## UPPER ROOM OF SAN JUAN

| | |
|---|---|
| P&M LAW FIRM (PR), LLC, | CIVIL NO. _____ |
| Plaintiff, | FRAUD; JUDGMENT DECLARATION; INJUNCTION PERMANENT AND DAMAGES |
| vs. | |
| DIANA MEY, | |
| Defender | |

_____/

### DEMAND

**TO THE HONORABLE COURT:**

The plaintiff P&M Law Firm (PR), LLC ("P&M") appears, through the legal representation that underwrites, and very respectfully presents this *Lawsuit* against Diana Mey (the "Respondent") seeking damages, preliminary and permanent *injunction* orders, and declaratory judgment against the Respondent, and in support thereof states and alleges:

### INTRODUCTION

1. The Respondent alleges that she is a consumer advocate. In reality, it is a professional plaintiff who, since the 1990s, has filed dozens of lawsuits before state and federal courts under the *Telephone Consumer Protection Act,* 47 USC § 227 ("TCPA") and related laws, and has likely extended many more offers of transaction, for its own pecuniary and commercial or business purposes. The Respondent has implemented a business model that has left him a fortune.

2. Respondent is the antithesis of the type of consumer that the United States Congress United States intended to protect by enacting the TCPA. Far from being the hapless victim of a great implausible number of unsolicited *telemarketing* calls , Respondent actively seeks those calls and then receives and welcomes them, inventing and creating a system so that they are made and she receives more calls. This *Lawsuit* arises from its business model.

3. In this case, the Respondent accessed a website for people seeking Help determine if you may have a claim for damages resulting from your exposure to water contaminated at Marine Corp Base Camp Lejeune in Jacksonville, North Carolina, compliance with the *Camp Lejeune Justice Act of 2022.*

4. The plaintiff is a law firm that is engaged, in part, in the

representation of said people through referrals . Some referrals come from the *"Legal Help Advisor"* website , specifically https://lawsuits.legalhelpadvisor.com/cl/ (the website").

5. On February 9, 2023, the Respondent visited the Website and, using a pseudonym Rhonda Nicholson, presented that fake name, provided phone number (304) 242-4327, and consented to receive "autodialed and/or prerecorded telemarketing calls from or on behalf of Legal Help Advisor at the telephone number I provided above. . . ."

6. Thus he set a trap, as he has done countless times before under its business model. In telephone calls made to Respondent beginning that day, she continued posing as "Rhonda Nicholson" and requested a follow-up call to obtain more information about a possible claim. These acts were deliberately false. The only claim that the Respondent had in mind was the one it was preparing against the Plaintiff, among others.

7. The next step of the business model took place shortly after. The Defendant submitted to plaintiff and others an offer of extrajudicial settlement of six figures and, presumably to push and force an agreement, that same day he presented a ethics complaint ("formal bar complaint") against a P&M-affiliated law firm based in Chicago. The *Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois* quickly determined not to initiate an investigation into the Respondent's complaint.

8. Respondent's conduct is a deceptive or unfair trade practice and constitutes fraud. There are also several justiciable disputes between the parties that require a declaration from this Court. The Plaintiff files this *Complaint* to obtain compensation for damages, an *injunction* to prevent the Respondent from repeating and continuing its business model against the Plaintiff, and to decide certain issues at issue between the parties to in turn have several disputes between them.

## JURISDICTION, THE PARTIES AND COMPETENCE

9. This Honorable Court has jurisdiction over this claim in accordance with the Article 5,001 of the *Judiciary Law of the Commonwealth of Puerto Rico of 2003,* 4 LPRA § 25a, and Rule 3.1 of Civil Procedure, 32 LPRA App. V, R. 3.1.

10. P&M is a limited liability company organized in accordance with the laws of the Commonwealth of Puerto Rico and with offices in San Juan, Puerto Rico.

11. In accordance with Rule 9.1 of Civil Procedure, 32 LPRA App. V, R. 9.1, and the Rule

21 of the Rules for the Administration of the Court of First Instance, 4 LPRA App. II-B, R.

21, it is reported that the physical and postal address of P&M and its telephone number are the following:

P&M Law Firm (PR), LLC
270 Ave. Muñoz Rivera
Suite 201
San Juan, PR 00918
Phone: (312) 488-2000

12. The Respondent is a natural person who is a resident and citizen of the state of West

Virginia.

13. The Superior Chamber of San Juan of the Court of First Instance is the chamber with

competence and jurisdiction to hear in the case of heading under Rules 3.1, 3.4 and

3.5 of Civil Procedure, 32 LPRA App. V, R. 3.4, 3.5. The controversy object of this Lawsuit

arises within the territorial demarcation of the Commonwealth of Puerto Rico. Besides,

said controversy or some part of it had its origin in San Juan, and, furthermore, the Respondent does not

resides in Puerto Rico. This Court has personal jurisdiction over the Respondent because

a substantial part of the events or omissions that gave rise to the *Claim* occurred and

occurred in the Commonwealth of Puerto Rico, since the Respondent directed its claim

extrajudicial and its evaluation of the value of a transaction – estimated at six figures – related to the

extrajudicial claim to P&M in Puerto Rico, and that is where the damages have been produced and suffered

by P&M as a consequence of the Respondent's conduct.

## FACTS

14. The Respondent is a professional plaintiff, who has filed dozens of

lawsuits in state and federal courts under the TCPA, including class actions,

since the 1990s.

fifteen. She operates this business from her home in Wheeling, West Virginia, dedicated to

orchestrate lawsuits under the TCPA, including class actions under the TCPA, solely for your

own pecuniary benefit.

16. Respondent receives and accepts a high volume of *telemarketing calls.* For

trick businesses into calling her and make businesses call her and continue calling her

with alleged violations of the TCPA, Respondent conceals its identity, feigns interest in

products or services offered by *telemarketers* and request follow-up calls and then

be able to sue those businesses. Through this business model, the Respondent has

3

become an expert at tricking telemarketers *into* identifying or implicating

companies or businesses which she can then threaten with litigation and sue in order to

profit significantly and personally.

17. Respondent uses false names because she knows that *telemarketers* have

access to services that filter outgoing calls *and* prevent them from being initiated

a telephone call to a known TCPA litigant, with Respondent being one of the

more prolific. This is one of several deceptive and unfair tactics he uses to ensure

that *telemarketers* do not realize that they are being set up in order to

file a lawsuit and to prevent them from stopping all calls to her.

18. Respondent has even installed equipment to answer and record calls

telephone calls that are more sophisticated than those of an average consumer to promote and

advance your claims business under the TCPA.

19. This business scheme has been fruitful as it has managed to generate litigation and

lucrative transactions for the Respondent.

20. Respondent alleges that her cell phone number is registered with the *National*

*Do-Not-Call Registry* ("NDNCR")" for decades, but this one uses that number

primarily for business purposes – your TCPA business scheme – which makes

your number is exempt from NDNCR protection, in other words, it is not protected by

the NDNCR.

21. The TCPA litigation generated by the Respondent's business

They have benefited her and her lawyers only; to no one else.

22. Plaintiff and its affiliated law firms are true advocates of

people harmed by any type of *personal injury,* medical negligence and civil rights, and

of consumers who have been harmed. They have obtained totalized transactions and sentences

in the hundreds of millions of dollars for those harmed people.

23. Among other things, Plaintiff is involved in the representation of people

who have claims for damages caused by exposure to contaminated water in Camp

Lejeune.

24. Respondent deliberately and cynically set out to receive calls about a

possible claim in your name – or, rather, under your pseudonym – under a law

approved by the United States Congress to help veterans and their families after the

4

exposure to contaminated water on a military base.

25. On February 9, 2023 at 10:55 am, the Respondent visited the Website.

26. The design and format of the Website was as follows:



27. Respondent submitted the name "Rhonda Nicholson," email address email lincolnwva@gmail.com, your phone number (304) 242-4327, checked the box through which you consented to receive *telemarketing* calls from or on behalf of *Legal Help Advisor* to the phone number you provided above, and hit the "Send" button.

28. The Website is operated by an entity with which the Claimant has a contractual relationship to generate potential clients. Representatives of said entity carry out telephone calls to potential clients after the person consents to receive the calls (including through your consent through the Website) to corroborate your information and complete the *intake* process for new clients.

29. At 12:28 p.m., Respondent answered a call placed to Rhonda Nicholson to the telephone number he submitted through the Website. The Respondent became go by Mrs. Nicholson. If he had told the truth, "There is no one here with that name," he would not could not have claimed nor had the supposed potential to profit. So the Respondent He continued with the lies. Knowing that he had no claim under *Camp Lejeune*

5

*Justice Act of 2022,* he still scheduled a follow-up call to corroborate certain information as part of the process to file the alleged claim.

30. That call occurred at 12:33 pm, as she requested. The Respondent impersonated Ms. Nicholson once again and again feigned interest in a claim under the *Camp Lejeune Justice Act of 2022,* for the sole purpose of having more calls made to him telephones.

31. Indeed, the Respondent coordinated a follow-up call for that same day, for approximately 5:00 p.m., in connection with his interest in the alleged claim to his name of Ms. Nicholson following exposure to contaminated water from Camp Lejeune.

32. The Respondent did not answer that call (she could have been reaching out to similar trap to another *telemarketer* at the time).

33. The Respondent answered a call made the following day, February 10, at 6:01 pm She once again posed as Rhonda Nicholson, and once again lied about her intention to file a claim under the *Camp Lejeune Justice Act of 2022.* Even, the Defendant participated in the *intake* process and spoke and answered questions as Rhonda Nicholson, **for more than 16 minutes.**

34. It was not until he was sent an *engagement* contract that identified the law firms of attorneys involved in any representation that the Respondent informed the representative that she wanted to cancel any *engagement* contract and that she just wanted to find out who she called, since his telephone number was registered in the *National Do-Not-Call Registry.* The calls stopped.

35.   On March 15, 2023, Respondent sent an email using her real name – Diana Mey – to two partners of the Claimant, William Pintas and Laura Mullins, among others.

36. In the email, the Respondent accused the Claimant and the others email recipients of violating the TCPA and the *West Virginia Consumer Credit and Protection Act* ("WVCCPA") based on a false statement of fact and characterization erroneous TCPA and WVCCPA.

37. Respondent admitted in the email that she used the "unique pseudonym "Rhonda Nicholson."

6

38. The Respondent alleged in the email that the Claimant and the others who received it were responsible for the damages they caused, valued at around six figures, and made an extrajudicial settlement offer of that same magnitude.

39. Thirty minutes earlier, Respondent had sent an email to *Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois* ("ARDC"), the disciplinary entity of attorneys admitted to the practice of law in the state of Illinois, as are Mr. Pintas and Mrs. Mullins. The Respondent filed a complaint against the law firm attorneys Pintas & Mullins for an alleged violation of Rule 7.3 of the *Illinois Rules of Professional Conduct for Attorneys* in connection with the solicitation of prospective clients (according to Respondent, a "formal bar complaint against the law firm of Pintas & Mullins. . . for violations of Rule 7.3 of the Illinois Rules of Professional Conduct for Attorneys involving solicitation of prospective clients"), namely, by the same telephone calls identified in your offer of extrajudicial transaction.

40. On March 17, 2023, the ARDC informed Mr. Pintas that they had determined not initiate an investigation based on the Respondent's complaint.

### FIRST CAUSE OF ACTION
### Fraud

41. The allegations preceding facts.

42. The Respondent has committed fraud against the Claimant because he made several false material representations, knowing that they were false and in which he intended that the Plaintiff to trust and rest, for the sole purpose of inducing calls to be made additional telephone calls to your telephone number. The Respondent did this in order to use the receipt of those telephone calls – to which he had consented – to file a lawsuit against the Plaintiff and others.

43. The telephone calls to the Respondent were made in response to the consent that you gave through the Website and to your questions and requests to be make additional follow-up phone calls to explore possible claim under the *Camp Lejeune Justice Act of 2022*. The telephone calls for which the Defendant now alleges that Plaintiff (and others) are liable were made solely because the Respondent induced the Claimant to do them, trusting and relying on his false representations, made under a pseudonym, about your consent to receive such

7

telephone calls and requesting additional calls, to the detriment of persons or entities who called and from the Plaintiff. Because the Respondent's intention was to try to establish the basis for a case against the Plaintiff, the Plaintiff's reputation as a real defender of consumers and injured people have been negatively affected. The plaintiff has also suffered monetary damages as he had to hire legal representation and file this lawsuit to vindicate their rights.

44. Specifically, on at least three separate occasions, on February 9, 2023 at 10:55 am, on February 9, 2023 at 12:28 pm, and on February 9, 2023 at 12:33 pm, the Defendant gave consent through third parties and expressed interest in receiving calls telephone calls to your telephone number in order to obtain more information about the services of the Claimant.

45. The Respondent intended that the Claimant and the third parties carrying out the calls – according to the Respondent, in the name of the Claimant – will trust and rest in their representatives to contact her.

46. Even though the Respondent knew that she did not want to receive the telephone calls to which he consented, that he had no intention of filing a claim under *Camp Lejeune Justice Act of 2022,* already knowing that you included your cell phone number in the NDNCR while continuing to use that number substantially for business purposes – exempting the NDNCR protection number – Respondent continues with its falsehoods by alleging, falsely, that those phone calls and/or messages were "unsolicited ."

FOR ALL WHICH, it is respectfully requested that this Honorable Court dictate judgment against the Respondent and in favor of the Claimant, declare that the Respondent has committed fraud and issue an order against the Defendant granting P&M compensation for all those damages caused as a result of the fraudulent scheme, including general damages and punitive damages, for the amount determined at trial, interest, and any other remedy appropriate under the applicable laws and that the Court considers fair and reasonable.

### SECOND CAUSE OF ACTION
**Declaratory ruling: The Respondent consented to be called**

47. The allegations

preceding facts.

48. There is a real and justiciable dispute between the parties regarding the alleged violations of the TCPA and the WVCCPA alleged by the Defendant resulting from the calls

8

telephone calls that she claims to have received, despite the fact that her telephone number was registered in the NDNCR.

49. Generally, telephone solicitations directed to telephone numbers registered with the NDNCR are permitted if express written consent is obtained prior to the call.

50. The Respondent alleges that it received telephone solicitations that were directed to her without her express prior written consent, and for which she alleges that the Plaintiff is responsible under the TCPA and the WVCCPA.

51. It is denied that any of the telephone calls to the Respondent, to the extent that may be considered telephone solicitations, were made without your consent expressly and in writing prior to being called at her cell phone number, which she provided through the Website on February 9, 2023.

FOR ALL OF WHICH, in accordance with Rule 59.1 of Civil Procedure, 32 LPRA App. V, R. 59.1, this Honorable Court is empowered, and it is very respectfully requested of the Court, to issue a ruling in favor of P&M that establishes that none of the calls telephone calls for which Respondent alleges P&M is responsible violated the TCPA or the WVCCPA, even if Respondent's telephone number was registered with the NDNCR, because the Respondent had previously provided its express written consent so that it could be called, and to grant any other remedy that it deems fair and reasonable.

### THIRD CAUSES OF ACTION
**Declaratory ruling: Respondent established a business relationship**

52. The allegations preceding facts.

53. There is a real and justiciable dispute between the parties regarding the alleged violations of the TCPA and the WVCCPA alleged by the Defendant resulting from the calls telephone calls that she claims to have received, despite the fact that her telephone number was registered in the NDNCR.

54. In accordance with the rules and regulations issued by the *Federal Communications Commission,* a "telephone solicitation" *for* purposes of the TCPA does not includes a call or message "[to] any individual with whom the caller has established a business relationship." 47 CFR 64.1200(f)(15)(ii) *("[t]o any person with whom the caller has an established business relationship").*

9

55. The term *"established business relationship"* includes *"a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of . . . the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call. . . ."* 47 CFR 64.1200(f)(5).

56. The Respondent had established a business relationship with the entity that called her in the telephone calls for which he alleges that Plaintiff is responsible. In first First, Respondent voluntarily provided and submitted her telephone number and requested that the called regarding a possible claim related to contamination of drinking water. Camp Lejeune. Secondly, all subsequent calls he received were in response and in consequence of her requests, questions and follow-up calls that she herself requested were scheduled.

57. Therefore, none of the telephone calls made to the Respondent were "telephone solicitations" *that* give rise to a cause of action under the TCPA or the WVCCPA.

FOR ALL OF WHICH, in accordance with Rule 59.1 of Civil Procedure, 32 LPRA App. V, R. 59.1, this Honorable Court is empowered, and it is very respectfully requested of the Court, to issue a ruling in favor of P&M that establishes that none of the calls telephone calls for which Respondent alleges P&M is responsible violated the TCPA or the WVCCPA since the Respondent had established a business relationship with the person or entity who called you and, therefore, the calls do not constitute "telephone solicitations. " *solicitations"),* and to grant any other remedy that it deems fair and reasonable.

**FOURTH CAUSE OF ACTION**
**Declaratory Judgment: Respondent is not a *"residential subscriber"* for purposes of the TCPA**

58. The allegations preceding facts.

59. There is a real and justiciable dispute between the parties regarding the alleged violations of the TCPA and the WVCCPA alleged by the Defendant resulting from the calls telephone calls that she claims to have received, despite the fact that her telephone number was registered in the NDNCR.

60. Under the TCPA, only telephone calls made to *"residential telephone*

10

Machine Translated by Google
Case 5:24-cv-00059-JPB Document 9-2 Filed 04/26/24 Page 11 of 13 PageID #: 86
SJ2023CV02295 04/04/2023 11:40:31 pm Entry No. 1 Page 11 of 13

*subscribers"* who registered their phone numbers with the NDNCR could lead to a lawsuit of action under 47 USC § 227(c)(5) and 47 CFR § 64.1200(c)(2).

61. Respondent's cell phone number (304) 242-4327 does not qualify as one of *"residential subscriber".* The Respondent uses that telephone number primarily for commercial or business purposes, particularly for your business engaged in orchestrating the claims for violations of the TCPA, including class actions, solely for your own pecuniary benefit. Through this scheme, she deceives businesses and entities into calling her. and continue to call her for the purpose of creating alleged violations of the TCPA. The Respondent uses equipment to answer and record calls that are more sophisticated than consumer equipment average to promote their TCPA abusive business.

62. Therefore, Claimant disputes Respondent's claim that any of the telephone calls made to you give rise to a cause of action under the TCPA (or WVCCPA) as impermissible telephone calls made to a *"residential telephone subscribers"* who registered their number with the NDNCR.

FOR ALL OF WHICH, in accordance with Rule 59.1 of Civil Procedure, 32 LPRA App. V, R. 59.1, this Honorable Court is empowered, and it is very respectfully requested of the Court, to issue a ruling in favor of P&M that establishes that none of the calls telephone calls for which Respondent alleges P&M is liable violated the TCPA (or, in to the extent applicable, the WVCCPA) being a prohibited call made to a *"residential telephone subscribers"* who registered their number with the NDNCR, because the cell phone number Respondent's (304) 242-4327 does not qualify as a *"residential subscription",* and is requested that any other remedy that the Court deems fair and reasonable be granted.

### FIFTH CAUSE OF ACTION
**Declaratory Ruling: There is No Cause of Action Based on "Identification Requirements"**

63. The allegations preceding facts.

64. There is a real and justiciable dispute between the parties regarding the alleged violations of the TCPA and the WVCCPA alleged by the Defendant resulting from the calls telephone calls that she claims to have received and that violated the "identification requirements" – alleged requirements that at the beginning of the call the name, address and/or the telephone number of the beneficiaries of the calls (as alleged by the Respondent in its

extrajudicial correspondence) – for which he alleges that the Claimant is responsible and must

liable for a significant amount in damages.

65. These "identification requirements" are

implemented in the TCPA regulations issued by *Federal Communications*

*Commission* pursuant to 47 USC § 227(d).

66. Analogous requirements of the WVCCPA are codified in W.Va. Code Ann.

§ 46A-6F-401.

67. Much of the Respondent's extrajudicial settlement offer was

based on these alleged violations.

68. However, the Sixth United States Court of Appeals concludes

Circuit, "However, . . . . Section 227(d) does not contain a similar private right of action, unlike

other subsections [of the TCPA]." *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199*

*WV/KY/OH,* 708 F.3d 737, 745 (6th Cir. 2013). The Federal District Court of the state where

resides, Respondent reasons, "[T]he regulations promulgated pursuant to this section are solely

enforceable by the FCC and state attorneys general. . . . Section 227(d) . . . lacks the same private

cause of action provisions contained in Sections (b) and (c). . . . Without such language in Section

(d), the Court is compelled to find that Congress did not intend private parties to enforce either

Section 227(d) or the regulations prescribed pursuant to that section." *Hurley v. Wayne County*

*Bd. of Educ.,* No. CV 3:16-9949, 2017 WL 2454325, *4 (SDW Va. June 6, 2017).

69. Likewise, there is no private cause of action that the Respondent

can exercise for violations of W. Va. Code Ann. § 46A-6F-401.

FOR ALL OF WHICH, in accordance with Rule 59.1 of Civil Procedure, 32

LPRA App. V, R. 59.1, this Honorable Court is empowered, and it is very respectfully requested

of the Court, which renders a ruling in favor of P&M establishing that there is no cause of action

under which the Respondent can claim against P&M based on the alleged non-compliance

with the "identification requirements" of the TCPA or WCCPA by persons who

made the calls to the Respondent, and that the Respondent is not entitled to compensation

for damages as a consequence thereof, even if said provisions have been violated, and

requests that any other remedy be granted that the Court deems fair and reasonable.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on April 4, 2023.

**PIETRANTONI MÉNDEZ & ÁLVAREZ LLC** Popular Center, 19th Floor

208 Ave. Ponce de León San Juan, PR 00918 Tel: (787) 274-1212

Fax: (787) 274-1470

*f/ Diego Murgia Díaz* Diego Murgia Díaz RUA No. 16,825
dmurgia@pmalaw.com

*s/ María Elena Martínez Casado* María Elena Martínez Casado RUA No. 22,251
mmartinez@pmalaw.com

13