IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

DIANA MEY, on behalf of herself
and a class of others similarly situated,

    Plaintiff,

v.                                      Civil Action No. 5:24-CV-55

WILLIAM PINTAS,
P&M LAW FIRM, LLC,
P&M LAW FIRM (PR), LLC,
RELIANCE LITIGATION LLC, and
JAMES RYDER INTERACTIVE LLC

    Defendants.

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY ANTI-SUIT INJUNCTION

Anticipating this lawsuit under the Telephone Consumer Protection Act, Defendant P&M Law Firm (PR), LLC filed a preemptive lawsuit accusing Plaintiff Diana Mey of fraud *in the trial court of the territory of Puerto Rico*. The shameful purpose of that lawsuit is twofold. For one, the Puerto Rican lawsuit is intended to harass and punish Mey for enforcing the TCPA—and cause her to incur significant legal fees to defend herself in a remote jurisdiction where language barriers pose an additional burden. (Demonstrating the harassing and vexatious purpose, the P&M Law Firm (PR) purported to serve process on Mey *by publication in Puerto Rico*). The second purpose of the Puerto Rican lawsuit is to have the territorial court *preempt* this Court on the question of TCPA liability, asking that court to resolve Mey's TCPA

claims against Defendants under the veil of declaratory judgment with res judicata effect.

While Mey will diligently pursue her TCPA claims against Defendants in this Court, Defendants' frivolous lawsuit against her in Puerto Rico territorial court threatens this Court's ability to adjudicate this case under its own jurisdiction. At least two grounds authorize this Court to enjoin Defendants from continuing to prosecute their harassing Puerto Rican case against Mey.

*First*, this Court can issue an anti-suit injunction as "necessary in aid of its jurisdiction." 28 U.S.C. § 2283. Such an injunction is proper where it "may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coastline R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 295 (1970). That standard is readily met here.

*Second*, this Court can also issue an anti-suit injunction to prevent irreparable harm to Mey that is threatening to occur in the Puerto Rican lawsuit, because Defendants are insisting on taking the deposition of Mey's long-time attorney to obtain confidential and privileged attorney-client communications and information. Defendants are asserting that Mey and her attorney have engaged in an unlawful conspiracy to manufacture TCPA claims against them and now seek to directly invade the privilege. If the territorial trial court forces Mey's counsel to do so, the bell cannot be unrung. The harm would be irreparable, which is also a basis to enjoin Defendants' prosecution of the Puerto Rican lawsuit. *See Vick v. Rodriguez*, 2022 WL 1063890, at

2

\*11 (D.P.R. Apr. 8, 2022) (allowing anti-suit injunction "where there has been an adequate showing of irreparable injury") (citing *Wulp v. Corcoran*, 454 F.2d 826 (1st Cir. 1972)).

And given that the Puerto Rican lawsuit serves no legitimate purpose—other than to harass Mey and cost undue expense—the equities likewise justify the equitable remedy of an anti-suit injunction. As such, Mey moves this Court to enjoin Defendants William Pintas, P&M Law Firm, LLC, and P&M Law Firm (PR), LLC from further prosecuting claims against Mey in the Puerto Rican commonwealth court.

## BACKGROUND

Defendant William Pintas is a lawyer residing in Chicago, Illinois. ECF No. 1, at ¶ 8. In addition to operating P&M Law Firm, LLC in Chicago, Pintas founded P&M Law Firm (PR), LLC in Puerto Rico, presumably for tax avoidance purposes.[1] *Id*. at ¶ 8. Plaintiff Diana Mey alleges that William Pintas, P&M Law Firm, LLC, and their agents knowingly engaged in widespread illegal telemarketing in violation of the TCPA all in an effort to solicit clients for the Camp Lejeune mass tort litigation. *Id*. at ¶ 2.

*Domestic Settlement Communications*

Before filing her lawsuit, Mey attempted in good faith to resolve her federal and state telemarketing claims against William Pintas and P&M Law Firm, LLC.

---

[1] Defendants William Pintas, P&M Law Firm, LLC, and P&M Law Firm (PR), LLC are collectively referred to as "Pintas."

3

*See* ECF 7-1, at ¶1 (Decl. of Diana Mey). To that end, on March 15, 2023, Mey emailed a demand letter to bill@pintas.com and laura@pintas.com—addresses associated with the firm's Chicago headquarters. *Id.* at ¶2. On March 16, 2023, Mey was contacted via phone and email by Robby Birnbaum and Chris Meier, Florida attorneys associated with the law firm Greenspoon Marder. *Id.* at ¶3. Between March 16 and April 7, 2023, Mey exchanged numerous emails with Birnbaum and Meier, who offered assurances to Mey that Pintas wanted to settle her claims. *Id.* at ¶4. Unbeknownst to Mey, however, Pintas had no intention of settling the claims, but was simultaneously scheming to file a meritless action in Puerto Rico for the sole purpose of intimidating and coercing Mey into abandoning her claims.

*The Puerto Rican Action*

On April 4, 2023—the same day that Birnbaum emailed Mey about setting up a zoom meeting for April 7 "on getting the claim resolved"—Pintas directed the filing of a lawsuit in the Commonwealth of Puerto Rico's Court of First Instance. *Id.* at ¶5. In that lawsuit, Pintas makes a claim for fraud, asserting that Mey somehow entrapped the firm into violating state and federal telemarketing laws. *See* ECF Nos. 9-1 (P.R. Compl.) and 9-2 (unofficial translation). Among other attacks, Pintas accuses Mey of "extortion" and commit[ing] fraud against the United States government."

Pintas also seeks declarations that none of the calls to Mey violated the TCPA because (a) Mey allegedly consented to be called, (b) Mey established a business relationship with the caller; (c) Mey is not a "residential subscriber" under the TCPA,

and (d) there is no cause of action for a telemarketer's failure to honestly identify itself. *Id*. Put another way, Pintas has invited the Puerto Rican court to resolve Mey's federal claim under the auspices of declaratory judgment.

The very premise of the Puerto Rican suit is indisputably false. First, Pintas alleges that Mey consented to the calls via their website on February 9, 2023. ECF 7-1 at ¶15. But Pintas' own call records, as well as Mey's call recordings, conclusively establish that Mey received the first unsolicited call on February 8, 2023. *Id*. Second, Pintas alleges that Mey initially requested follow-up calls from Pintas-affiliated telemarketers. *Id*. at ¶ 16. But once again, Mey's call recordings conclusively disprove that claim. *Id*. And third, Pintas alleges that the calls from Pintas-affiliated telemarketers stopped when requested. *Id*. at ¶17. That is also false. *Id*. Mey's call records prove that she received numerous additional unsolicited calls after requesting that they cease. *Id*.

*Manufactured Jurisdiction*

The procedural nature of the Puerto Rican lawsuit further exposes its disingenuous purpose. For instance, the Puerto Rican court obviously lacks personal jurisdiction over Mey.[2] Mey did not receive the calls in Puerto Rico; she had not

---

[2] It's also unclear whether the Puerto Rican court has the requisite subject matter jurisdiction to resolve Mey's federal claims. Though federal and state courts have concurrent jurisdiction over private suits arising under the TCPA, *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012), this concurrent jurisdiction does not appear to extend to Puerto Rico's commonwealth courts. *Compare* 47 U.S.C. § 227(c) (providing that claims may be brought "in an appropriate court of that State") *with* 47 U.S.C. § 224 (defining "State," for purposes of that particular section, to include "any State, territory, or possession of the United States, the District of Columbia, or any political subdivision, agency, or instrumentality thereof"); *see also, United States v. Diaz*, 712 F.2d 36, 39 (2d Cir. 1983) (providing that intent to include

alleged any claims arising under Puerto Rican law; she had not accused P&M Law Firm (PR), LLC of violating telemarketing laws; she had not directed any communications into Puerto Rico; and she has not done anything to otherwise avail herself of the Puerto Rican courts. ECF No. 7-1, at ¶ 7. So, in order to manufacture jurisdiction, Pintas points exclusively to Mey's pre-suit demand letter. But this is a wholly insufficient basis to establish personal jurisdiction. Mey sent her demand letter by email to addresses at the pintas.com domain. *Id*. at ¶9. The website to which those email addresses correspond belong to P&M Law Firm, LLC, which is organized and located in Chicago, Illinois. *Id*. The firm's website alludes to work in other domestic cities—but none in Puerto Rico. *Id*. Indeed, there is not a single reference on the website to Pintas' Puerto Rican tax shelter. *Id*. Moreover, the demand letter was directed to William Pintas, a lawyer licensed in Illinois—not Puerto Rico. *Id*. Personal jurisdiction aside, there is no discernable nexus between Pintas' claims and the Puerto Rican forum, suggesting that the forum was chosen only to oppress Mey.

*Underhanded Service and Default Judgment*

Once filed, Pintas served the Puerto Rican lawsuit on Mey in an underhanded fashion, designed to ensure default judgment. First, Pintas attempted to trick Mey into accepting service. Though both Pintas and Mey are native English speakers, Pintas directed his Puerto Rican attorneys to send Mey an email and complaint

---

Puerto Rico within scope of a statute will not be implied where statute itself is silent but similar statutes expressly address inclusion) (collecting cases).

6

written in Spanish. ECF No. 7-1, at ¶10. Assuming the email was mere spam, Mey deleted them. *Id.*

The next day, while Mey was away from her home, a process server appeared at Mey's door with what he described to Mey's husband as a lawsuit from Puerto Rico. Exhibit A, Supplemental Declaration of Diana Mey, at ¶ 4. The server left with papers in hand, but after speaking with her husband, Mey drew a connection to the Spanish email and retrieved it from her trash folder. *Id.* at ¶ 5. Recognizing little more than the name "Pintas," she reached out to Birnbaum, who confirmed that his client had filed the suit. *Id.* at ¶ 6.

Thereafter, Mey reached out to her longtime TCPA attorney, who in turn attempted to reach out to Pintas's Puerto Rican counsel. *Id.* at ¶ 7. Mey's attorney left multiple voicemails over a period of several days in an attempt to learn what was going on. *Id.* After nearly a week, Mey's attorney was finally able to reach someone named "Maria Martinez," who claimed she was unable to disclose what the lawsuit was about without first speaking to her boss. Mey's attorney asked Ms. Martinez to have someone call back. No one ever did. *Id.* at ¶ 8.

As it turns out, while Mey and her attorney were actively attempting to communicate with Pintas' counsel to learn what the all-Spanish complaint was even about—and receiving only silence in response—Pintas was petitioning the Puerto Rican court for permission to serve the complaint via publication. ECF 7-1 at ¶11. A "summons by edict" was subsequently published in the "Primera Hora"—a Puerto

Rican publication written in Spanish, of which Mey was obviously not aware and, even then, could not read. *Id.*

On June 12, 2023—more than a month after Mey's attorney had reached out to Pintas's counsel asking for information about the suit—Mey received what appeared to be an all-Spanish email from a court with the phrase "ANOTACION DE REBELDIA." Exhibit A at ¶ 9. Mey quickly began reaching out to obtain counsel in Puerto Rico, which she was finally able to retain on June 27, 2023. *Id.* at ¶ 10.

Only after receiving translated copies of court filings from her Puerto Rican attorneys, Mey finally realized what had transpired over the past few months. *Id.* at ¶ 11. But by then—and very much by design—she was not only in default, but had missed the opportunity to remove the Puerto Rican suit to federal court.[3] Exhibit B, Declaration of Tessie Leal-Garabís, at ¶¶ 2-3. Nonetheless, Mey's Puerto Rican counsel was optimistic that the court would quickly dismiss the suit based on an obvious lack of personal jurisdiction, and filed a motion to that effect. *Id.* at ¶ 4.

Unfortunately, the Puerto Rican Court failed to rule on the motion for nearly six months. *Id.* at ¶ 12. Eventually, the court held a hearing on January 24, 2024. Prior to the hearing, the court convened an off-the-record meeting in chambers and requested that the parties consider agreeing to defer the issue of jurisdiction in exchange for lifting the default judgment. *Id.* at ¶ 13. In light of the court's comments

---

[3] In their motion to dismiss, the Pintas Defendants disingenuously claim that Mey "elected" to "forego" removal to federal court and must "live with the consequences of her strategic decision." ECF No. 32.

8

during that meeting, and based on her attorneys' advice, Mey was left with the impression that the only way to have the default judgment lifted would be to agree to withdraw the motion to dismiss and defer the jurisdictional question until after a period of full-fledged merits discovery. *Id.* at 14. The parties then went on the record and confirmed that "agreement."

That discovery is now underway, and Pintas has continued to engage in bad-faith litigation conduct designed to exact punishment on Mey. Pintas has served hundreds of interrogatories, demanded production of documents and records far exceeding any relevant purpose, and has demanded that Mey and her husband travel to Puerto Rico, at their own expense, to sit for depositions. ECF 7-1 at ¶18. Pintas has solicited and submitted false declarations from third parties intended to harm Mey and her counsel's reputations. And, disturbingly, Pintas has demanded the deposition of Mey's longtime attorney in the United States, referring to him as a "co-conspirator" and, on that frivolous basis, demanding that the attorney divulge information protected by the attorney client privilege. *Id.*[4]

To date, Mey has incurred tens of thousands of dollars defending Pintas' fraudulent lawsuit. *Id.* at ¶19.

***

---

[4] *See* Exhibit C, a roughly translated copy of Pintas' "Informative Motion," in which he requests "that attorney Ryan Donovan be ordered to answer questions about his support of Mey's efforts. That is because Donovan is a co-conspirator in the efforts of Mey to defraud and therefore cannot sweep the facts under the rug relying on an attorney-client privilege that does not apply to him."

In sum, Pintas filed a knowingly false complaint accusing Mey of fraud, offered further falsehoods to manufacture jurisdiction in a far-flung tribunal, and deceitfully served the complaint in order to obtain a default judgment—all for the purpose of harming Mey, coercing her into dropping her TCPA advocacy, and depriving this Court of its authority to resolve Mey's legitimate claims.

## ARGUMENT

The requested injunction is both permissible and necessary. First, the All Writs Act empowers federal courts to enjoin interfering state proceedings in aid of their own federal jurisdiction. Second, the circumstances of this case fall within one of the statutory exceptions to the Anti-Injunction Act ("AIA"), which otherwise limits the power of federal courts to enjoin state court proceedings. And third, the equities necessitate the requested relief. Mey discusses each issue in turn.

### A. The All Writs Act Affords the Requested Injunctive Relief.

The All Writs Act grants district courts the authority to enjoin parallel litigation in both federal and state courts under certain circumstances. The statute provides that courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). This includes the ability to enjoin parties from engaging in litigation in another court. *See In re Jimmy John's Overtime Litig.*, 877 F.3d 756, 762 (7th Cir. 2017).

## B. The Anti-Injunction Act Does Not Preclude an Injunction.

The equitable authority afforded by the All Writs Act is circumscribed, to an extent, by the AIA. *In re Prudential Ins. Co. of Am. Sales Prac. Litig.*, 261 F.3d 355, 365 (3d Cir. 2001) ("The All Writs Act acts in concert with the Anti-Injunction Act to permit the issuance of an injunction") (cleaned up). The AIA provides that a "court of the United States may not grant an injunction to stay proceedings in a State court except [1] as expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate its judgments." 28 U.S.C. § 2283. In addition, courts have also recognized a fourth exception justifying intervention in such cases "where there has been an adequate showing of irreparable injury." *Vick v. Rodriguez*, 2022 WL 1063890, at *11 (D.P.R. Apr. 8, 2022); *Wulp v. Corcoran*, 454 F.2d 826 (1st Cir. 1972); *In re Coordinated Pretrial Proc. in Antibiotic Antitrust Actions*, 520 F. Supp. 635, 662 (D. Minn. 1981).[5]

Here, the requested injunction falls within the second exception, providing for injunctions "necessary in aid of its jurisdiction." This exception applies in instances where it "may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coastline R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 295 (1970). This exception also permits federal courts to intervene in cases where proceedings in state courts would make the

---

[5] "State court," as used by the AIA, is generally understood to include the commonwealth courts of Puerto Rico. *See generally WM Cap. Partners 53, LLC v. Barreras, Inc.,* 2022 WL 2111668, at *1 (D.P.R. Apr. 19, 2022); *Vick*, 2022 WL 1063890, at *11.

ongoing oversight of federal cases unmanageable. *See e.g., Carlough v. Amchem Products, Inc.*, 10 F.3d 189, 197 (3rd Cir. 1993) (injunction found appropriate in complex class action where potential settlement was imminent and federal court invested considerable time in such efforts); *In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2d Cir.1985) (upholding injunction against state court actions to protect ability of federal court to manage and to settle multidistrict class action proceeding which was far advanced and in which court had extensive involvement); *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196 (7th Cir. 1996) (federal court managing multidistrict litigation authorized to enjoin parallel state proceedings to protect integrity of pretrial discovery orders). Though the second exception has traditionally been applied principally to in rem proceedings, *Mayo v. Wells Fargo Bank, N.A.*, 2014 WL 504719, at *3 (E.D. Va. Feb. 7. 2014), the Fourth Circuit has noted that "support for a broader application of the 'necessary in aid of its jurisdiction' exception can be found in the Supreme Court's statement that both this exception and the third exception to the Anti-Injunction Act allow federal injunctive relief against state court proceedings where it is 'necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *In re American Honda Motor Co., Inc. Dealership Relations Litigation*, 315 F.3d 417,439 (4th Cir. 2003) (citing *Atlantic Coast Line R. Co.*, 398 U.S. at 295)).

The circumstances of the harassing Puerto Rico litigation satisfy the second exception under the AIA. In the Puerto Rican lawsuit, Pintas has essentially

12

recharacterized anticipated defenses to federal claims as affirmative claims for relief under state law. Pintas does so in hopes that the Puerto Rican commonwealth court will preemptively extinguish Mey's federal claims under the guise of declaratory judgment. Should the Puerto Rican court decide those claims in favor of Pintas, then Pintas will presumably leverage the doctrines of res judicata and claim preclusion to deprive this Court of its authority not only to adjudicate Mey's claims, but to adjudicate the claims of many thousands of putative class members. That the Puerto Rican action threatens to deprive this Court of jurisdiction compels this Court's intervention.

In support of their motion to dismiss, ECF No. 32, the Pintas Defendants note that some courts have reasoned that mere concerns about the effects of res judicata, standing alone, are not sufficient to warrant an anti-suit injunction. But in this case, those concerns most definitively do not stand alone. As the Court found in its order granting a temporary restraining order, "it appears the defendants' filing of the Puerto Rican lawsuit was a vexatious lawsuit designed to harass Ms. Mey." ECF 22 at 7. The fact that the suit to be enjoined is premised on known falsehoods makes this a very different case from those on which the Pintas Defendants rely.

In addition, a second, independently sufficient reason tips the scales in favor of an injunction here. Pintas is now urging the territorial court to compel the disclosure of privileged communications between Mey and her longtime attorney, based on the meritless accusation that the attorney was a co-conspirator in Mey's supposed attempts to entrap Pintas into violating federal telemarketing laws. These

13

false and defamatory accusations, Pintas asserts, entitles him to an unfettered deposition of Mey's counsel. Should the territorial court force Mey's attorney to disclose such communications, Mey will be irreparably harmed by the disclosure of privileged communications. A money judgment will not remedy such harm. Judging by the territorial court's reluctance to faithfully apply the requirement of personal jurisdiction—and is instead allowing discovery, etc.—an injunction is necessary to prevent irreparable harm that will flow from the disclosure of privileged communications.

### C. The Equities Further Support an Injunction

Because the generic four-part test for preliminary injunctions provides an awkward fit in cases contemplating injunctions of state and foreign proceedings, district courts have no obligation to employ it in such contexts. *See Quaak v. Klynveld Peat Marwick*, 361 F.3d 11, 20 (1st Cir. 2004). When an injunction is otherwise permissible under the Anti-Injunction Act, courts will instead weigh the more general "principles of equity, comity, and federalism." *Wyly v. Weiss*, 697 F.3d 131, 144 (2d Cir. 2012); *1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs.*, 634 F. Supp. 3d 158, 171 (S.D.N.Y. 2022). Here, the equities counsel in favor of enjoining the Puerto Rican proceedings.

**First**, the Puerto Rican action is legally improper, meaning this Court's interests in preserving federalism with a "state" court is not significantly disturbed by the issuance of injunctive relief. For instance, when a lawsuit "seeks a declaration of non-liability to preemptively defeat actions grounded on tort claims involving

rights already accrued by reason of alleged wrongful conduct, various courts have held [such an] application is not a warranted purpose." *See, e.g., Balarezo Family Chiropractic, LLC v. State Farm Mutual*, 2024 WL 1343178, at *14 (S.D. Fla. Feb. 12, 2024). As in those cases, when Pintas filed their lawsuit, they essentially asked the territorial court to rule on the viability of a then-hypothetical claim which may never have been brought, and affirmative defenses that may never have been asserted. *See Transamerica Life Ins. Co. v. Daibes Gas Holdings Atlanta*, L.L.C., No. 18-cv-10869, 2018 WL 5033755, at *5 (D.N.J. Oct. 17, 2018). The Puerto Rican action is simply a ploy to avoid resolution of federal claims by a federal court. Here, Pintas has cast anticipated defenses to federal claims as declaratory claims for relief under state law. In doing so, Pintas is attempting to preempt this Court on the question of TCPA liability. Such gamesmanship should not be rewarded—especially when the federal claim at issue arises under a private right of action created by Congress for the specific purpose of enforcing an important federal interest. *See Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 784 (N.D.W. Va. 2017). If Pintas' strategy is allowed to stand, it could effectively end private enforcement of the TCPA—which is to say, virtually all enforcement of the TCPA—because few plaintiffs are as willing or capable as Mey to fight back.

**Second**, the Puerto Rican action has all the markings of abusive and vexatious litigation intended to harass and cause undue expense. *See In re Baldwin-United Corp.*, 770 F.2d at 337 ("To the extent that the impending state court suits were vexatious and harassing, our interest in preserving federalism and comity with the

state courts is not significantly disturbed by the issuance of injunctive relief."). For starters, Pintas filed a lawsuit, littered with misrepresentations, in a far-flung jurisdiction with no discernable connection to the parties or claims. Indeed, William Pintas, a resident of Chicago, who owns and operates a law firm in Chicago, chose not to file his fraud and declaratory judgment claims in Illinois courts. Instead, Pintas elected to file the lawsuit in a territorial trial court of Puerto Rico, leaving this Court to infer that decision was made only to exact the most harm and expense to Mey. Venue aside, Pintas has used the procedural mechanisms of service to further oppress, securing default judgment by effectuating service through publication in an obscure Puerto Rican newspaper. Mey continues to be harmed by the expense of defending against this fraudulent lawsuit and underhanded tactics.

**Third**, that Pintas has asked the Puerto Rican court to dissolve the attorney-client privilege between Mey and her attorneys presents a real threat of irreparable harm, which counsels in favor of an injunction under both the second and fourth exceptions to the Anti-Injunction Act.

## Conclusion

For the foregoing reasons, the requested injunction is both permissible and necessary to protecting this Court's own jurisdiction and insolating Mey from irreparable harm. As such, Mey moves this Court for an order enjoining Defendants William Pintas, P&M Law Firm, LLC, and P&M Law Firm (PR), LLC from further prosecuting claims against Mey in the Puerto Rican territorial court.

**DIANA MEY**

By Counsel:


/s/ Ryan McCune Donovan
Ryan M. Donovan (WVSB #11660)
Andrew C. Robey (WVSB #12806)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
t: 681-265-3802
f: 304-982-8056
rdonovan@hfdrlaw.com
arobey@hfdrlaw.com

17

**Certificate of Service**

I hereby certify that, on May 7, 2024, a copy of the foregoing document was served via the Court's electronic filing system.

/s/ Ryan McCune Donovan
Ryan M. Donovan (WVSB #11660)
