**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**DIANA MEY, on behalf of herself
and a class of others similarly situated,**

      Plaintiff,

**v.**                                     **Civil Action No.: 5:24-cv-55**

**WILLIAM PINTAS, P&M LAW
FIRM, LLC, P&M LAW FIRM (PR), LLC,
RELIANCE LITIGATION, LLC, and JAMES
RYDER INTERACTIVE, LLC,**

      Defendants.

### P&M DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Diana Mey uses stereotypes and generalizations in her moving papers for a preliminary injunction, complaining about "language barriers" and a "remote jurisdiction" to argue that this Court *must* enjoin and stay the ongoing proceedings properly pleaded before a Puerto Rico court.[1] Moreover, the extreme unusual remedy requested by Mey not only stays the case so that the Puerto Rico court cannot resolve its merits; it goes beyond the merits by stripping the Puerto Rico court even from its ability to determine its own jurisdiction against the basic tenet that any tribunal has jurisdiction to determine its jurisdiction. Mey uses misperceptions to evoke, advance, and perpetuate bias against the Puerto Rican courts, the Puerto Rican lawyers, the Puerto Rican people, and Spanish speakers. As is patently clear, Mey's provincial and isolationist utterings are having the desired effect. *See, e.g.*, TRO Hearing Transcript, at 6:1-15; *see also Mey v. Pintas et al.*, No. 5:24-cv-55 (N.D. W. Va. May 1, 2024), ECF No. 22 (the "TRO Ruling"). Yet Mey's invective

---

[1] The proceedings in Puerto Rico are well advanced at the discovery stage and progressing pursuant to a Case Management Order that was entered by the Court, which approved a discovery schedule jointly proposed by the parties and approved by Mey's attorneys in Puerto Rico.

serves just one purpose—to question and undermine the legitimacy of Puerto Rico's courts, laws, rules, and due process, and to allow Mey to impermissibly seek refuge in this Court.[2]

But Mey's unfounded attacks on Puerto Rico's courts show her disregard of well-settled federal law. For over a century, the Supreme Court has repeatedly recognized the application of federal constitutional rights to U.S. citizens in Puerto Rico. *See, e.g.*, *Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 7 (1982) ("We have held that Puerto Rico is subject to the constitutional guarantees of due process and equal protection of the laws.") (citing *Examining Board v. Flores de Otero*, 426 U.S. 572, 599-601 (1976) (holding that claims cognizable under 42 U.S.C. § 1983 are enforceable in Puerto Rico, and that the U.S. District Court in Puerto Rico has jurisdiction to hear those cases under 28 U.S.C. § 1343);[3] *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 (1974). Congress even ratified Puerto Rico's Constitution, under which Puerto Rico courts operate. *Commonwealth v. Valle*, 136 S. Ct. 1863, 1868-69, 1875 (2016). And the Supreme Court has expressly ruled that federal due process rights extend to Puerto Rico. *Torres v. Puerto Rico*, 442 U.S. 465, 469-70 (1979) ("This Court has held or otherwise indicated that Puerto Rico is subject to the First Amendment Speech Clause . . . ; *the Due Process Clause of*

---

[2] It is worth noting that 48 U.S.C. § 737 addresses privileges and immunities in the Commonwealth of Puerto Rico. That statute provides, *in hac verba*, "[t]he rights, privileges, and immunities of citizens of the United States shall be respected in Puerto Rico to the same extent as though Puerto Rico were a State of the Union and subject to the provisions of paragraph 1 of section 2 of article IV of the Constitution of the United States." *See* 48 U.S.C. § 737.

[3] 28 U.S.C. § 1343(3) gives a district court jurisdiction of actions "[to] redress the deprivation, under color of any State law" of federal constitutional rights, privileges, or immunities, and § 1983 provides that "[e]very person who, under color of any statute . . . of any State or Territory" deprives another of "any rights, privileges, or immunities secured by the Constitution and laws" shall be liable to the party injured in a proper action.

*either the Fifth or the Fourteenth Amendment . . .* ; and the equal protection guarantee of either the Fifth or the Fourteenth Amendment . . . ." (emphasis added) (internal quotation marks omitted).[4]

Mey's derisive commentary—recycled here from her Complaint and initial motion seeking a TRO and preliminary injunction—is wholly insufficient to support her claim that she is entitled to an extraordinary injunction under the Anti-Injunction Act, 28 U.S.C. § 2283 (the "AIA"). To be sure, Spanish is the primary language used in the Puerto Rican Court of First Instance (Tribunal de Primera Instancia), where Mey is the lone defendant named in the Puerto Rico Lawsuit. But that alone does not mean application of the AIA is appropriate. In other words, the fact that Spanish is spoken in the Puerto Rico's court system is no reason to condemn the Puerto Rico courts and processes, or to enjoin the P&M Law Firm (PR), LLC, from pursuing its claims against Mey. And just because the case is filed in Puerto Rico does not mean this Court can—or should—enjoin the P&M Law Firm LLC (in Chicago) or William Pintas (neither of whom are parties to the Puerto

---

[4] Indeed, the United States Court of Appeals for the First Circuit has explained that

[T]he government of the newly created Commonwealth of Puerto Rico is subject to "the applicable provisions of the constitution of the United States." That must mean that *the people of Puerto Rico, who remain United States citizens, are entitled to invoke against the Commonwealth of Puerto Rico the protection of the fundamental guaranty of due process of law, as provided in the federal Constitution.*

…

It is true, the Constitution of the Commonwealth of Puerto Rico contains a due process clause, which will be authoritatively interpreted and applied by the Supreme Court of Puerto Rico as a matter of local law. *But the overriding federal constitutional guaranty of due process of law may be vindicated in the federal courts, and ultimately of course by the Supreme Court of the United States.*

See *Mora v. Mejias*, 206 F.2d 377, 382 (1st Cir. 1953) (emphasis added). The First Circuit ultimately hears appeals from rulings of the United States District Court for the District of Puerto Rico. *See* 28 U.S.C. § 41; 28 U.S.C. § 119, 132.

Rico Lawsuit) based on some abstract and unfounded notion that Mey has advanced to this Court that the Territorial Courts of Puerto Rico are somehow inferior, substandard tribunals.

Mey's second argument for an AIA injunction—that there is a hypothetical risk that her lawyer *might* be deposed, and that the Puerto Rico Lawsuit is "abusive and vexatious litigation"—is not grounds to create a "fourth" exception to the AIA. Nor does it demonstrate irreparable harm under the traditional Rule 65 analysis, or an analysis focused on principles of equity, comity, and federalism. Time and time again, the Supreme Court has said the three explicit § 2283 exceptions are exclusive and narrowly construed. *See, e.g.*, *Vendo Co. v. Lektro-Vend. Corp.,* 433 U.S. 623, 630 (1977) (plurality). Indeed, in *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281 (1970), the Supreme Court resoundingly *rejected* the very argument that Mey advances here: "that in certain circumstances a federal court may enjoin state court proceedings even if that action cannot be justified by any of the three exceptions." *Id.* at 286-87.

As explained in further detail below, this Court should **DENY** Mey's improper Motion for Preliminary Injunction under the AIA and allow the Puerto Rico Lawsuit to continue.

## I.      BACKGROUND

Mey filed her Complaint in this Court on March 19, 2024, alleging claims of intentional infliction of emotional distress and making assertions of fraudulent process and abuse of legal process.  *See* ECF No. 1 (the "Mey Complaint"). The Mey Complaint also seeks to secure a Temporary Restraining Order and Preliminary Injunction under the AIA.  By her Complaint, Mey promotes herself as a "consumer advocate" who—since the 1990s—has filed dozens and dozens

of state and federal court lawsuits and class actions under the Telephone Consumer Protection Act, *see* 47 U.S.C. § 227, *et seq.* (the "TCPA"), and other consumer related laws.[5]

Mey uses pre-litigation threats, complaints to federal agencies (such as the Federal Trade Commission), and reports to state bar associations—in this and many other courts—to make TCPA demands solely to extract settlements. *See, e.g.*, Appendix at 115-119.[6]  Here, Mey lays bare her business model by making candid—and startling—admissions of her own deceptive and fraudulent conduct, which is the subject of the Puerto Rico Lawsuit. For example, Mey admits that in February 2023, she answered telephone calls and filled out forms using fake names, such as "Rhonda Nicholson," when responding to inquires or completing online forms, such as TCPA consent forms. *See* Mey Complaint at ¶¶ 23-24.  Mey does not deny that she filled out forms using her "fake identity," "Rhonda Nicholson." Instead, Mey freely and proudly admits that she used this imposter persona to invite calls to the pretender "Rhonda" on multiple occasions and to solicit the preparation of a retainer agreement.  Even more troubling is the fact that, in utilizing the means of interstate commerce to impersonate "Rhonda Nicholson," Mey sought legal representation to receive benefits illegally from the federal government through the Camp Lejeune Justice Act of 2022. *See* Appendix at 1-14; 24-63; 72-108; 113-114; 129-132; 430-434.[7]

---

[5] A simple Westlaw search uncovered the following 55 cases involving Diana Mey in each respective jurisdiction:  Northern District of West Virginia – 39 lawsuits; Southern District of West Virginia- 1 lawsuit; Eastern District of Michigan – 1 lawsuit;  Middle District of Florida – 3 lawsuits; Southern District of New York – 1 lawsuit.  In addition, Mey has been involved in numerous appeals:  4th Circuit – 9 appeals; and 6th Circuit – 1 appeal.

[6] Citations herein to "Appendix" refer to the Appendix filed along with this Response.

[7] Further, Mey did *not* instruct the caller to stop calling her. Nor did she instruct the caller to place her on a do-not-call list. Nor did Mey make any other statement that would indicate to the caller that it stop calling her. *See Hudson v. Sharp Healthcare*, 2014 WL 2892290, at \*7-8 (S.D. Cal. June 25, 2014) (finding no do not call request where plaintiff "never stated words to the effect of 'don't call me on this cell phone anymore'").  Thus, Mey has no evidence supporting her bare

Additionally, Mey alleges that she answered telephone calls and answered questions in February 2023 as "Rhonda Nicholson." She admits that she invited additional calls where "Rhonda" then allegedly protested the calls that she invited, stating that she, "Rhonda Nicholson," was registered on the National Do Not Call Registry. *See* Mey Complaint at ¶¶ 21-45.

On March 15, 2023, Diana Mey (and not "Rhonda") emailed William Pintas ("Pintas") and the web domain, which included the Puerto Rico Law Firm and P&M Law Firm, LLC (hereinafter, the "Chicago Law Firm"). Specifically, this email correspondence from Mey detailed what she described as "*her* claims under federal and West Virginia telemarketing laws and offering a settlement." *See* Mey Complaint at ¶¶ 46 & 55 (emphasis added); *see also* Appendix at 394-399.

On April 4, 2023, the Puerto Rico Law Firm commenced the Puerto Rico Lawsuit against Mey.[8] Using procedures established and required under Puerto Rican law, the Firm arranged with Legal Process Service & Investigations, LLC  Miami, Florida  (LPSI) for personal service on Mey in her hometown of Wheeling, West Virginia.[9] To that end, LPSI attempted to serve Mey on April

---

assertion she made "a legally sufficient request not to be called," and her do-not-call claim fails. *See Stewart v. Network Cap. Funding Corp.*, 549 F. Supp. 3d 1058, 1060 (C.D. Cal. 2021). Any person or entity making telephone solicitations (or on whose behalf telephone solicitations are made) will *not* be liable for violating the requirement of 47 C.F.R. § 64.1200(c)2, if the person or entity can demonstrate that the alleged violation is the result of error, and that as a part of its routine business practices, it meets the enumerated standards set forth in 47 C.F.R. § 64.1200(c)2.

[8] This Court may take judicial notice of the filings in the Puerto Rico proceedings. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir.1989) (explaining that "[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records" (internal quotation marks omitted)). For a copy of the complaint filed in the Puerto Rico Lawsuit and a translation using an online tool, *see* Appendix at 248-271.

[9] To be sure, the Puerto Rico Law Firm served process on Diana Mey in accordance with the Rules of Civil Procedure of the Commonwealth of Puerto Rico. *See* P.R. Civ. P. R. 4.4 (personal service); P.R. Civ. P. R. 4.6 (service by publication); *see also* Baralt Declaration at ¶ 6. Those rules closely mirror West Virginia's own rules related to service of process, *see* W. Va. R. Civ. P. 4, along with the Federal Rules of Civil Procedure, *see* Fed. R. Civ. P. 4.

6, 2023, twice on April 7, once on April 8, and then twice on April 10 at Diana Mey's address, 114 Applewood Drive, Wheeling, WV 26003. Yet Mey successfully avoided service of process, as reflected in the Verified Return of Non-Service, notarized by Debbie L. Hall of Gold, Khourey & Turak Law, located at 510 Tomlinson Avenue, Moundsville, WV 26041. *See* Appendix 272-273.

Furthermore, the complaint filed in the Puerto Rico Lawsuit alleges that Mey committed common-law fraud against the Puerto Rico Law Firm.  For example, in the "FIRST CAUSE OF ACTION," the Puerto Rico Law Firm alleges that Mey made several material and false oral and written representations, solely to induce telephone calls to her. *See* Baralt Declaration, ECF No. 31-1, at Tab C; *see also* Puerto Rico Lawsuit Complaint at ¶¶ 41-46. The remaining claims in the Puerto Rico Lawsuit, styled as the "SECOND" through "FIFTH CAUSES OF ACTION," ask for declaratory relief on the TCPA issues of "consent," "solicitation," "residential subscriber," and "identification requirements," respectively. *See* Appendix at 248-271.

In July 2023, Mey—then represented by counsel in Puerto Rico—filed a motion to dismiss the Puerto Rico Lawsuit for alleged lack of minimum contacts.  *See* Appendix at 307-333.  Notably, Mey did *not* seek to remove the action to the United States District Court for the District of Puerto Rico, as she could have done under 28 U.S.C. § 1441.[10]  Before the Puerto Rico court had a chance to hear the motion, Mey's attorneys agreed not to hold an evidentiary hearing and instead opted to answer the complaint, undertake discovery, and reserve any jurisdictional defenses.[11]  Then, on April 9, 2024, the Judge in the Puerto Rico Lawsuit entered the comprehensive Scheduling Order.

---

[10] Whether or not Mey's attorneys in Puerto Rico recognized that removal would have been proper—*see* ECF No. 36-2, at ¶ 3—does not change the statute's authorization of removal.

[11] Even if Mey was accurate in her assertion that the Puerto Rico court declined to resolve whether it has jurisdiction at the January 24, 2024, hearing on her motion to dismiss, Mey *could* have sought reconsideration of that ruling, or filed a petition for certiorari for interlocutory review by the Puerto Rico Court of Appeals and, if unsuccessful, file a petition before the Puerto Rico Supreme Court. Instead, she waited nearly two months to file this lawsuit. *See* Appendix 334-337.

*See* Baralt Declaration at ¶¶ 11; Puerto Rico Lawsuit Complaint at ¶¶ 40-45.  Around that time, in a rush to undo her consent to the ongoing Puerto Rico proceedings—as well as her Puerto Rico counsel's agreement to a discovery schedule in connection with the Puerto Rico Lawsuit—Mey filed her Complaint in this Court, seeking what is *extraordinary* relief under the AIA.

To be abundantly clear, while Mey cries "foul" on service related to the Puerto Rico Lawsuit, it is worth noting that she *never* effected process or service of process of the litigation here on any one of the P&M Defendants. Instead, Mey's process server left the Summons and complaint on an hourly employee at the Chicago Law Firm's office. No amount of misreading the service of process rules, whether in Illinois or Puerto Rico, can demonstrate that Mey effected service of process on the P&M Defendants. *See* Appendix 368-369; 435-438.

Instead, at 4:12 PM on Friday, April 26, 2024, Mey *emailed* a Motion for Temporary Restraining Order and Preliminary Injunction and supporting memorandum to one of the P&M Defendants' lawyers, Carlos Baralt, who is the lawyer for the Puerto Rico Law Firm in connection with the Puerto Rico Lawsuit. *See* ECF No. 9.  Later in the day on April 26, 2024, the Court entered an Order setting a hearing on Mey's request for a temporary restraining order on Tuesday, April 30, 2024 at 10:30 AM. *See* ECF No. 10. The Court also ordered Mey to effect "actual service" on each defendant—and to file returns showing actual service—by 12:00 PM on Monday, April 30, 2024. Mey did not do so for either Pintas or the Puerto Rico Law Firm, and service on a person identified as a paralegal at the Chicago Law Firm is, at very best, suspect (certainly with respect to the individually named defendant) and hardly constitutes "actual" notice.

Even assuming that notice was proper—which it was not—the P&M Defendants otherwise did not have a fair opportunity to oppose Mey's improper application for a TRO. Indeed, the P&M Defendants had insufficient time in advance of the TRO hearing to prepare witnesses or

declarations, or to prepare a written response in opposition to Mey's then-filed papers. With that in mind, the Supreme Court has long explained that Rule 65 "implies a hearing in which the defendant is given a *fair opportunity* to oppose the application and to prepare for such opposition." *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 433, n.7 (1974) (emphasis added). Suffice it to say, one business day of notice of Mey's application for a temporary restraining order is no notice at all.

Notwithstanding these notice-related issues, this Court conducted a hearing on Mey's TRO request on Tuesday, April 30, 2024. Lawyers for the P&M Defendants appeared at the hearing. But without the ability to prepare any meaningful opposition, the outcome was *fait compli*.[12] The Court then entered the TRO Ruling based solely on Mey's papers and her self-serving declaration, issuing a nine (9) page written decision the next day, May 1, 2024. *See* ECF No. 22.

By its TRO Ruling, this Court enjoined the P&M Defendants from "proceeding in any way with the lawsuit in the Commonwealth of Puerto Rico Court of First Instance until a hearing on the Preliminary Injunction is heard on Monday[,] May 13, 2024, at 10:00 a.m." *See* ECF No. 22, at 9.[13] In the Order, the Court also set a briefing schedule. Mey initially had five (5) days—until 5:00 pm on Monday, May 6, 2024—to file an opening brief. The P&M Defendants had four days

---

[12] That is only confirmed by the fact that, although the P&M Defendants were the non-moving party with respect to Mey's TRO request under the AIA, the Court commenced the substantive portion of the TRO hearing by asking the P&M Defendants' counsel, "why shouldn't I grant a TRO?" *See* TRO Hearing Transcript, at 3:19.

[13] At the request of the P&M Defendants, the TRO Ruling was modified to allow the P&M Defendants to "file non-substantive motions in the Commonwealth of Puerto Rico Court of First Instance to obtain hearing[] records and transcripts." *See* ECF No. 28, at 2.

thereafter, or until 5:00 PM on Friday, May 10, 2024, to file a response. Mey now has until 9:00 AM on May 13, 2024, to file a reply prior to the hearing on Monday at 10:00 AM.[14]

## II.   LAW AND ARGUMENT

Although there are many separate bases showing *why* a preliminary injunction under the AIA is improper on these facts, Mey's attempt to enjoin the P&M Defendants fails under both the AIA and Rule 65. Before reaching these injunction-related issues, however, there are other threshold matters that permeate at the outset of this litigation, as raised and discussed in the P&M Defendants' Motion to Dismiss.[15] The P&M Defendants submit the following arguments in opposition to Mey's improper request for a preliminary injunction pursuant to the AIA.

### A.   This Court should not enjoin the Puerto Rico Lawsuit under the All Writs Act or the Anti-Injunction Act, insofar as neither statue permits the relief that Mey seeks.

This Court's authority to enjoin pending state proceedings—including proceedings in the Commonwealth of Puerto Rico—is sharply circumscribed by the AIA, which provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except [1] as expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate its judgments." *See* 28 U.S.C. § 2283; *see also Casa Marie, Inc. v. Superior Court of Puerto Rico for Dist. of Arecibo*, 988 F.2d 252, 261 (1st Cir. 1993) ("The three

---

[14] Mey did not file her opening brief on Monday, May 6, 2024, at 5:00 PM. Instead, just before close-of-business and without conferring with counsel for the P&M Defendants, Mey sought a one-day enlargement of time to file her opening brief by Tuesday at 5:00 PM. The Court granted Mey the extension of time—even though doing so short-changed the P&M Defendants by reducing their amount of time to respond by an entire day.

[15] More specifically, there are threshold issues of Article III standing, subject matter jurisdiction, and personal jurisdiction, along with questions of venue, process, and service of process and whether Mey has stated a plausible claim for relief, as briefed in the P&M Defendants' Motion to Dismiss and Memorandum in Support. *See* ECF Nos. 31 & 32. Those arguments are incorporated by reference and should be resolved before this Court entertains any AIA-based preliminary injunction motion, as any one of these bases to dismiss alone disposes of this case.

exceptions enumerated in the [AIA] must be narrowly construed."). As federal courts have explained, the central purpose of the AIA is "to forestall the inevitable friction between the state and federal courts that ensues from the injunction of state judicial proceedings by a federal court." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977) (Rehnquist, J., plurality); *accord Standard Microsystems Corp. v. Texas Instruments Inc.*, 916 F.2d 58, 60 (2d Cir. 1990). However, "[i]f an injunction falls within one of these three exceptions, the All-Writs Act provides the positive authority for federal courts to issue injunctions of state court proceedings." *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 134 F.3d 133, 143 (3d Cir. 1998).

The second AIA exception (the "in-aid-of-jurisdiction exception")—the only exception Mey raises as a basis for this Court to grant a preliminary injunction—permits injunctive relief where "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line R.R. Co.*, 398 U.S. at 295. To that end, "the law is clear that the mere pendency of a parallel proceeding in state court, in and of itself, is insufficient grounds to invoke the exception." *See State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 225 (E.D.N.Y. 2018). "This is so even where the state proceeding threatens to preclude the federal court from reaching the same issue through res judicata or collateral estoppel." *Id.*; *Atlantic Coast Line*, 398 U.S. at 295-296 ("In short, the state and federal courts had concurrent jurisdiction in this case, and neither court was free to prevent either party from simultaneously pursuing claims in both courts . . . . Therefore the state court's assumption of jurisdiction over the state law claims . . . did not hinder the federal court's jurisdiction so as to make an injunction necessary to aid that jurisdiction"); *Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 386 F.3d 419, 429 (2d Cir. 2004) ("[A] federal district court, even assuming it has some interest in avoiding delay in its own proceedings,

has no interest—no interest that can be vindicated by the exercise of the federal injunction power—in being the *first* court to hold a trial on the merits"); *In re Baldwin-United Corp.*, 770 F.2d 328, 338-339 (2d Cir. 1985) ("[T]he mere existence of a parallel lawsuit in state court that seeks to adjudicate the same *in personam* cause of action does not in itself provide sufficient grounds for an injunction against a state action in favor of a pending federal action").[16]

What's more, the Fourth Circuit has also recognized that the in-aid-of-jurisdiction exception is a limited means to avoid "relitigation" of matters already decided by the federal court, which is the exact opposite of what is happening here. *See Abella Owners' Ass'n v. MI Windows & Doors, Inc. (In re MI Windows & Doors, Inc., Prods. Liab. Litig.)*, 860 F.3d 218, 224 (4th Cir. 2017) ("Thus, the exception is founded on concepts of res judicata and collateral estoppel, and it permits an injunction where either of these doctrines would preclude the state court action to which the injunction is directed.") (internal quotation marks omitted); *see also Bryan v. Bellsouth Comms*, 492 F.3d 231, 236-37 (4th Cir. 2007) ("An injunction may issue under the relitigation exception only if the claims or issues subject to the injunction have actually been decided by the federal court; the exception is inapplicable where an injunction is sought to prevent the litigation of claims or issues that could have been decided in the original action but were not."); *In re Am. Honda Motor Dealerships Relations*, 315 F.3d 417, 439 (4th Cir. 2003) ("The 'necessary in aid of its jurisdiction' exception to the Anti-Injunction Act is widely understood to apply most often when a federal court was the first in obtaining jurisdiction over a res in an in rem action and the same federal court seeks to enjoin suits in state courts involving the same res.").

---

[16] The in-aid-of-jurisdiction exception has the same language as the All-Writs Act, inasmuch as it allows a federal court to issue an injunction "where necessary in aid of its jurisdiction." But a threat to the court's jurisdiction, however, occurs only in *limited* circumstances, such as where a state proceeding threatens to dispose of property that forms the basis for federal *in rem* jurisdiction. *See, e.g.*, *Signal Properties, Inc. v. Farha*, 482 F.2d 1136, 1140 (5th Cir. 1973).

Against this backdrop of legal principles, Mey waited a *year* after the case had been filed in Puerto Rico to file this lawsuit in West Virginia. She cannot demonstrate that the circumstances are critical or exigent. The circumstances of the Puerto Rico Lawsuit do not satisfy the second AIA exception. And speculation and hypothetical musings about what *might* happen in discovery in the Puerto Rico Lawsuit is insufficient to invoke the AIA's second narrow exception.

### 1.  Mey cannot show that the circumstances here are critical or exigent.

First off, the facts underlying this case simply do *not* support using the AIA to circumvent the clear legal principle that the All Writs Act is to be used "sparingly and only in the most critical and exigent circumstances." *See Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1203–04 (7th Cir. 1996). And that basic principle has been further narrowed by the Supreme Court's ruling in *Atlantic Coast Line R. Co.*, 398 U.S. at 294–95, which stands for the proposition that a federal court does *not* have inherent power to *ignore* the limitations of 28 U.S.C. § 2283 (i.e., the AIA), or to enjoin state court proceedings merely because they interfere with a protected federal right or invade an area preempted by federal law, even when interference is unmistakably clear.

Mey tries to stretch this principle significantly by citing to the Seventh Circuit's decision in *In re Jimmy John's Overtime Litig.*, 877 F.3d 756, 762 (7th Cir. 2017).  Without critical analysis, Mey urges this Court to adopt a broader view of the All Writs Act and the AIA.  In a sweeping fashion, Mey suggests that this Court can simply "enjoin parties from engaging in litigation in another court." *See* Mey Memorandum, ECF No. 36 at p. 10.  But to advance such a remarkable argument, Mey necessarily ignores the widely understood principle that an "anti-suit injunction" is an "extraordinary" form of relief. *See Brown v. Gilmore*, 533 U.S. 1301, 1303 (2001) (Rehnquist, C.J., in chambers) ("[I]njunctive relief under the All Writs Act is to be used 'sparingly and only in the most critical and exigent circumstances'" (quoting *Ohio Citizens for Responsible Energy, Inc.*

13

*v. NRC*, 479 U.S. 1312, 1313 (1986) (Scalia, J., in chambers))).  Simply put, as is certainly the case here, the AIA does not support enjoining the Puerto Rico Lawsuit.[17]

### 2. The circumstances of the Puerto Rico Lawsuit do not satisfy the second AIA exception, the only statutory exception that Mey relies on here.

Moving on, Mey contends that the in-aid-of-jurisdiction exception is satisfied in this situation because, by its TRO Ruling, this Court "found" that "the Puerto Rican lawsuit was a vexatious lawsuit designed to harass Ms. Mey." *See* Mey Memorandum, ECF No. 36 at pp. 12-13. There are at least two glaring problems with Mey's argument on this front, however.

First, as discussed *supra*, this Court entered the TRO and made findings based *solely* on Mey's papers and submissions. The P&M Defendants were deprived of due process or a meaningful opportunity to prepare for the TRO hearing. Second, speculating that Pintas "hopes that the Puerto Rican commonwealth court will preemptively extinguish Mey's federal claims under the guise of declaratory judgment," Mey says that "threatens to deprive this Court of jurisdiction." *See* Mey Memorandum, ECF No. 36, at pp. 12-13. Yet the AIA prohibits a federal injunction based on speculation and threats, arguments that could be made in literally every case where concurrent jurisdiction between a state and federal court may properly exist. *See Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1204 (7th Cir. 1996) ("[A]n injunction based on nothing but speculation and conjecture is as much an abuse of discretion as an injunction based on clearly erroneous facts."); *Greyhound Corp. v. Leadman*, 112 F. Supp. 237, 239 (E.D. Ky. 1953) ("Since the basis of plaintiff's claim is an exception to the statute [i.e., the AIA], the burden rests upon [the plaintiff] to establish the facts necessary to bring itself within the exception relied upon.").

---

[17] This conclusion is especially compelling because it is improper for a federal court to enjoin, in aid of its own jurisdiction, enforcement of a state court judgment rendered before the federal case was even filed.  *See Millonzi v. Bank of Hillside*, 605 F. Supp. 140 (N.D. Ill 1985).

Certainly, Mey is aware that she cannot use the in-aid-of-jurisdiction exception because of the *prospect* that a concurrent state proceeding *might* result in a judgment inconsistent with a federal court's decision. *See Atlantic Coast Line R.R. Co.*, 398 U.S. at 295 (recognizing that, "[w]hile this language [of the in-aid-of-jurisdiction exception] is admittedly broad," it "it implies something similar to the concept of injunctions to 'protect or effectuate' judgments."). Rather, the AIA *only* allows federal injunctive relief to stay a state court proceeding when "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Id*; *see also Parisien*, 352 F. Supp. 3d at 225. Whether Mey likes it or not, the existence of a parallel action in Puerto Rico is *insufficient* to invoke the second exception and to stay the Puerto Rico Lawsuit. *Id.* And that is true even where the state court proceedings threaten to prevent the federal court from reaching the same issue through res judicata or collateral estoppel. *Id.*[18]

### 3. Speculation and hypothetical musings about what *might* happen in discovery in the Puerto Rico Lawsuit is insufficient to invoke the AIA.

Third, Mey offers another hypothetical—what if "the territorial court force (sic) Mey's attorney to disclose . . . privileged communications," which she wraps in stereotypes about Puerto Rico and its courts. *See* Mey Memorandum, ECF No. 36 at pp. 13-14. Yet speculation about what *might* happen in discovery in the Puerto Rico Court is not enough to establish the second exception to the AIA. That is especially so because federal district courts have *no power* to sit in direct review of state court decisions. *See Atlantic Coast Line*, 398 U.S. at 297 (recognizing that "lower federal courts possess no power whatever to sit in direct review of state court decisions"); *accord Duby v.*

---

[18] Mey's requested relief will also obliterate the narrow scope of the AIA. That is, after defending a matter in state court (and if dissatisfied with the rulings therein rendered), a defendant will be able to file a federal court action and seek protection under the guise of the AIA.

*Moran*, 901 F. Supp. 215, 216 (S.D. W. Va. 1995) (recognizing that "lower federal courts possess no power whatever to sit in direct review of state court decisions").

Of course, any doubts as to the propriety of a federal district court injunction against state court proceedings are resolved in favor of *allowing* the state courts to proceed in an orderly fashion to finally decide the controversy. *See Atlantic Coast Line*, 398 U.S. at 297. Undeniably, a federal court does not have inherent power to *ignore* the limitations of 28 U.S.C. § 2283 or to enjoin state court proceedings because those proceedings interfere with a protected federal right or invade an area preempted by federal law, even when the interference is unmistakably clear. *Id.* at 294–95.

Likewise, in the event the Puerto Rico court rules against Mey in connection with discovery-related issues (or any other merits issue, for that matter), Mey would not be without recourse or reprieve.  Indeed, she could lodge challenges in the Puerto Rico appellate courts, or, if the judgment stands on federal law grounds, to the United States Supreme Court.  *See Atlantic Coast Line R. Co.*, 398 U.S. at 287 (recognizing that, in light of the AIA's narrow exceptions, state courts "should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately this Court").

**B.  A preliminary injunction is likewise not proper pursuant to Federal Rule of Civil Procedure 65, or by resort to the equities.[19]**

Mey's conclusion that the Puerto Rico Lawsuit is "illegally improper" and is a "ploy" to preempt this Court on the question of TCPA liability does not tip the equities in her favor.

---

[19] Mey intimates that she is *not* seeking an injunction under Rule 65. Even if she is, however, preliminary injunctions "are extraordinary remedies involving the exercise of a very far-reaching power to be granted only sparingly and in limited circumstances." *See Columbia Gas Transmission, LLC v. RDFS, LLC*, 2024 WL 992937, at *2 (N.D.W. Va. Feb. 28, 2024) (internal citation omitted). To that end, a party seeking a preliminary injunction must establish that (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest. *Id.* (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).

Mey argues that the P&M Defendants "are attempting to *preempt* this Court on the question of TCPA liability." *See* Mey Memorandum, ECF No. 36 at pp. 14-15 (emphasis added). But preemption simply does not apply to the facts here. The law is well-settled in this regard: there is concurrent jurisdiction in TCPA cases. *See, e.g.*, *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012). A pending state court action—such as the Puerto Rico Lawsuit—cannot and does not bar a party (such as Mey) from bringing a parallel federal court action. Whether construed in the Puerto Rico Litigation or in an action in this Court, the TCPA is still the TCPA.

   Harm allegedly caused by defending a so-called "fraudulent lawsuit" is something that can be equally said about Mey's claims in this case and does not support an injunction.

Mey also relies heavily on *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 336 (2d Cir. 1985), for the proposition—found in *dicta*—that vexatious and harassing suits can be enjoined as a matter of equity. *See* Mey Memorandum, ECF No. 36 at pp. 15-16. *Baldwin-United*, however, makes clear that the mere existence of a parallel lawsuit in state court that seeks to adjudicate the same *in personam* cause of action does not itself provide sufficient grounds for an injunction against a state action in favor of a pending federal action. *See also Vendo Co. v. Lektro-Vend Corp.,* 433 U.S. 623, 642 (1977) ("We have never viewed parallel *in personam* actions as interfering with the jurisdiction of either court."). Mey's ongoing attacks on the P&M Defendants, the "far flung jurisdiction," and the "territorial court of Puerto Rico" and her claim to harm in defending against "this fraudulent lawsuit and underhanded tactics" does little, if anything, to support injunctive relief. *See* Mey Memorandum, ECF No. 36 at pp. 15-16.

   The prospect of a discovery dispute in the Puerto Rico Lawsuit does not cause irreparable harm or tip the equities in Mey's favor.

Mey's final "red-herring" argument—that the court in Puerto Rico is being asked to dissolve the attorney-client privilege—does not offer a viable basis on which to conclude an

injunction is necessary to balance the equities.  Even if this notion were real, there is nothing in the record that shows the Puerto Rico court is incapable of resolving a discovery dispute.

### C. If this Court decides to issue a preliminary injunction by way of the AIA, then Mey should be required to post a bond or security.

Finally, if this Court decides to issue a preliminary injunction, Mey should be required to post a bond, pursuant to Rule 65(c) of the Federal Rules of Civil Procedure. *See Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 424 (4th Cir. 1999) (recognizing that posting bond is "required by Rule 65(c)"). Rule 65(c) is unequivocal in its terms: "Security. The court may issue a preliminary injunction or a temporary restraining order *only* if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." *See* Fed. R. Civ. P. 65(c) (emphasis added).  Mey demanded $130,000.00 from one of the P&M Defendants. So, they submit that, at minimum, that Mey should post a bond or security in that amount in order to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

### III. CONCLUSION

Pursuant to the foregoing, this Court should **DENY** Mey's request for a preliminary injunction under the AIA and allow the Puerto Rico Lawsuit to proceed on the merits.

Respectfully submitted,

*/s/ Blake N. Humphrey*

| | | |
|---|---|---|
| Jared M. Tully (WVSB 9444) | Richard W. Epstein* | Carlos R. Baralt Suárez* |
| Blake N. Humphrey (WVSB 14132) | Jeffrey Gilbert* | BARALT LAW LLC |
| FROST BROWN TODD LLP | GREENSPON MARDER LLP | P.O. Box 190751 |
| 500 Virginia Street E, Suite 1100 | 200 E. Broward Blvd | San Juan, PR 00919 |
| Charleston, WV 25301 | Fort Lauderdale, FL 33301 | Telephone: 939-625-3712 |
| Telephone: 304-345-0111 | Telephone: 954-491-1120 | cbaralt@baraltlaw.com |
| jtully@fbtlaw.com | richard.epstein@gmlaw.com | |
| bhumphrey@fbtlaw.com | jeffrey.gilbert@gmlaw.com | *Admitted pro hac vice |

***Counsel for William Pintas, P&M Law Firm LLC, & P&M Law Firm (PR), LLC***

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**DIANA MEY, on behalf of herself
and a class of others similarly situated,**

        Plaintiff,

**v.**                                                    **Civil Action No.: 5:24-cv-55**

**WILLIAM PINTAS, P&M LAW
FIRM, LLC, P&M LAW FIRM (PR), LLC,
RELIANCE LITIGATION, LLC, and JAMES
RYDER INTERACTIVE, LLC,**

        Defendants.

## <u>CERTIFICATE OF SERVICE</u>

I, Blake N. Humphrey, certify that on Friday, May 10, 2024, the foregoing ***P&M Defendants' Response in Opposition to Plaintiff's Motion for Preliminary Injunction*** was filed via the Court's CM/ECF filing system.

                          */s/ Blake N. Humphrey*
                          Blake N. Humphrey (WV Bar No. 14132)