IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

DIANA MEY, on behalf of herself
and a class of others similarly situated,

    Plaintiff,

v.

                                  Civil Action No. 5:24-CV-55

WILLIAM PINTAS,
P&M LAW FIRM, LLC,
P&M LAW FIRM (PR), LLC,
RELIANCE LITIGATION LLC, and
JAMES RYDER INTERACTIVE LLC

    Defendants.

## REPLY IN SUPPORT OF MOTION FOR ANTI-SUIT INJUNCTION

Since the last hearing two weeks ago, the Pintas Defendants have filed nearly forty pages of briefs attacking Diana Mey and the Court, misstating the factual record, and advancing erroneous legal theories.

But the Pintas briefs are deafeningly silent on one key point: the illegal, unsolicited calls and texts made to Ms. Mey on February 8, 2023. Those calls indisputably predate any communication whatsoever from Mey to any Pintas-related entity. The Pintas' Defendants' lack of candor about those calls not only establishes the validity of Mey's underlying TCPA claims, but also proves the fundamentally vexatious purpose of the Puerto Rican lawsuit, which falsely asserts that Mey committed fraud by *inviting* the Pintas Defendants' solicitations.

The essential legal issues in this case are clear and undisputed. Under the All-Writs Act, the Court is empowered to enjoin state court proceedings, so long as one of the exceptions to the Anti-Injunction Act applies. At issue in this case is the "in aid of jurisdiction," exception, which authorizes an injunction against state court proceedings when "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." ECF No. 22 at 6 (citing *In re American Honda Motor Co., Inc. Dealership Relations Litig.*, 315 F.3d 417, 439 (4th Cir. 2003)).

To be sure, courts have held the exceptions to the Anti-Injunction Act are to be narrowly construed. But the reason for that narrow construction is to promote the Act's fundamental purpose of ensuring comity between state and federal courts. *See In re MI Windows & Doors, Inc., Prod. Liab. Litig.*, 860 F.3d 218, 224 (4th Cir. 2017); *United States v. Purdue Frederick Co.*, 963 F. Supp. 2d 561, 567 (W.D. Va. 2013) ("notions of comity between federal and state courts require that these 'exceptions should not be enlarged by loose statutory construction.'" (citing *Atl. Coast Line R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 287 (1970)). It follows then, that "to the extent that the impending state court suit[ is] vexatious and harassing, our interest in preserving federalism and comity with the state courts is not significantly disturbed by the issuance of injunctive relief." *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 337 (2d Cir. 1985).

This is not, as the Pintas Defendants argue, a simple case involving an injunction sought against a mere "parallel action" in a state court. In this case, enjoining the Pintas Defendants from employing underhanded procedural chicanery in pursuit of a meritless claim—for the sole purpose of harming Ms. Mey and ending her TCPA advocacy—does no harm to principles of comity between state and federal courts. Accordingly, because the Puerto Rican lawsuit clearly impairs this Court's authority and flexibility to resolve Ms. Mey's claims—and the claims of thousands of other putative class members—the requested injunction is appropriate.

The Court's analysis can and should end there. In order to clarify the record, however, Ms. Mey will briefly address some of the misstatements of fact and erroneous legal arguments contained in the Pintas Defendants' response.

\* \* \*

**There is nothing wrong with Ms. Mey's dogged TCPA advocacy and effectiveness in identifying and holding illegal telemarketers accountable.** As the Court has seen before, the Pintas Defendants spend much of their brief attacking Ms. Mey for her TCPA advocacy. Specifically, they take issue with Ms. Mey's use of a pseudonym, "Rhonda Nicholson," in order to respond to the unsolicited calls in this case. As set forth in Ms. Mey's declaration, however, the use of an assumed identity is often the only way to identify the source of an illegal call.

In the Spring of 2023, Ms. Mey—like so many others who had once lived at Camp LeJeune—was inundated with unwanted calls from plaintiff's attorneys soliciting clients. These cold-callers—including the one in this case—often refused to

3

identify the law firm on whose behalf they were working. As a result, Ms. Mey began using a unique pseudonym for each call. In this way, when a law firm, like Pintas, eventually revealed its identity by reaching out to someone like "Rhonda Nicholson," Mey could make a conclusive link to the earlier uninvited communications.

The Pintas Defendants are undoubtedly frustrated with Mey's effectiveness in identifying and holding them accountable for their unlawful acts, but that doesn't make it wrong. "The TCPA does not merely contemplate self-interested plaintiffs— it encourages them." *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1197 (M.D. Tenn. 2017). Individual litigants such as Ms. Mey are expressly authorized to act as "private attorneys general" enforcing the TCPA. *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 784 (N.D.W. Va. 2017) (quoting *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 881 (8th Cir. 2005). In this context, the Federal Trade Commission and numerous courts have endorsed plaintiffs' posing as interested consumers in order to identify the source of a call. *See, e.g., Fed. Trade Comm'n v. Lifewatch Inc.,* 176 F. Supp. 3d 757, 771 (N.D. Ill. 2016) ("[T]elemarketers' admissions are not rendered invalid just because Mey (successfully) tricked them into (truthfully) revealing that they sold products for Lifewatch.").

**Mey's motion is not a "provincial," "isolationist," or "bias[ed]" attack on Puerto Rican courts, lawyers, or people.** If Mey is casting aspersions on anyone, it's a Chicago law firm and its principal attorney who are taking advantage

4

of the Puerto Rican courts to pursue vexatious litigation. Notably, Mey herself is represented by Puerto Rican lawyers who are well respected in the Puerto Rican legal community, and who share Mey's concerns about the Pintas Defendants' abuse of the Puerto Rican court. ECF No. 36-2. Even the Pintas Defendants' original Puerto Rican lawyer withdrew after Mey's motion to dismiss exposed the fraudulent nature of the Puerto Rican lawsuit. *Id.* at ¶ 5. The Pintas Defendants' feigned offense at imaginary slights is clearly intended to taint Mey and the Court for a future appeal.

**The deposition of Mey's attorney is not hypothetical.** At the TRO hearing, the Pintas Defendants' counsel readily admitted that his clients' efforts to depose Ms. Mey's attorney were "most concerning." TRO Hrg. Tr. at 3:20-24. In their brief, however, the Pintas Defendants attempt to downplay this concern as a "hypothetical risk that [Mey's] lawyer *might* be deposed." ECF No. 42 at 4. Hardly so. The Pintas Defendants have made Ms. Mey's attorney a central figure in their phony fraud case, repeatedly identifying him in filings as a "coconspirador" and asserting that, as a result, the attorney-client privilege does not apply. In another filing little more than month ago, the Pintas Defendants actually set an August 30, 2024 deadline for the attorney's deposition, meaning that the threatened deposition is not only concrete, but imminent. Exhibit A at 6.

Further, the Pintas Defendants argue that the deposition is of no concern because Ms. Mey and her attorney "would not be without recourse or reprieve." *Id.* at 16. If the attorney is ordered to testify, they contend, Ms. Mey could appeal all

5

the way *to the Supreme Court of the United States.* Setting aside the fact that Ms. Mey should not be required to work her way up to the country's court of last resort just to avoid a harrassing deposition, doing so would require her attorney to either first divulge confidential information, or be held in contempt in order to create a basis for an interlocutory appeal. Either course would do irreparable harm to Mey and her counsel.

**The Fourth Circuit "authority" on which the Pintas Defendants rely is inapposite.** The Pintas Defendants misleadingly claim that the Fourth Circuit has "recognized that the in-aid-of-jurisdiction exception is a limited means to avoid 'relitigation' of matters already decided by the federal court." But the Fourth Circuit cases on which the Pintas Defendants rely deal expressly with the third exception to the Anti-Injunction Act—to "protect or effectuate" a judgment—which is not at issue here. *See* ECF No. 42 at 12, citing *Bryan v. Bellsouth Comms,* 492 F.3d 321, 236-37 (4th Cir. 2007) ("The Act's exception for injunctions that are necessary to "protect or effectuate" a court's judgment has come to be known as the relitigation exception."). The fact that those cases are limited to instances in which a judgment has already been rendered has no effect on the Ms. Mey's motion, which seeks relief pursuant to a separate exception—injunctions issued "in aid of" the federal court's jurisdiction. Neither the Fourth Circuit nor any other has held that injunctions issued under that exception require a pre-existing judgment.

**A $130,000 bond is unnecessary.** First, in requesting a bond, the Pintas Defendants cite Federal Rule of Civil Procedure 65(c). But an injunction entered

6

pursuant to the All-Writs Act is not issued under Rule 65, and is therefore not subject to the bond requirement. *See In re Baldwin-United Corp.*, 770 F.2d at 338 (holding that injunctions issued under the All-Writs Act are not required to comply with the requirements of Rule 65). Second, citing only Ms. Mey's initial settlement demand, the Pintas defendants make no effort to tie the amount of the requested bond to any actual harm they would suffer if wrongly enjoined. Even if Ms. Mey were found liable for fraud in Puerto Rico, it's unclear how the amount of Ms. Mey's settlement demand—which the Pintas Defendants never paid—could be claimed as damages. Moreover, if the Pintas Defendants are ultimately found to have been wrongfully enjoined, they will be able to proceed with their case and make any claim for damages—including pre-judgment interest—permitted by law. The injunction will not have cost them a penny. Accordingly, Ms. Mey requests that a bond be set in the nominal amount of $100.

                                                           **DIANA MEY**

                                                           By Counsel:

                                                           /s/ Ryan McCune Donovan
                                                           Ryan M. Donovan (WVSB #11660)
                                                           Andrew C. Robey (WVSB #12806)
                                                           HISSAM FORMAN DONOVAN RITCHIE PLLC
                                                           P.O. Box 3983
                                                           Charleston, WV 25339
                                                           t: 681-265-3802
                                                           f: 304-982-8056
                                                           rdonovan@hfdrlaw.com
                                                           arobey@hfdrlaw.com

## Certificate of Service

I hereby certify that, on May 13, 2024, a copy of the foregoing document was served via the Court's electronic filing system.

/s/ Ryan McCune Donovan
Ryan M. Donovan (WVSB #11660)
