IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**DIANA MEY**, on behalf of herself and a
class of others similarly situated,

                Plaintiff,

v.                                                                          **Civil Action No. 5:24-CV-55**
                                                                             Judge Bailey

**WILLIAM PINTAS, P&M LAW FIRM, LLC,
P&M LAW FIRM (PR), LLC, RELIANCE
LITIGATION LLC**, and **JAMES RYDER
INTERACTIVE LLC**,

                Defendants.

## ORDER GRANTING ANTI-SUIT INJUNCTION

Pending before this Court is Plaintiff's Motion for Anti-Suit Injunction [Doc. 7]. On April 30, 2024, this Court held a hearing and granted a temporary injunction against various parties preventing their continuing to proceed with a civil action in the territorial court of Puerto Rico [Doc. 22]. A hearing on a preliminary injunction was held on May 13, 2024, during which this Court extended the temporary injunction for an additional period of 14 days [Doc. 45]. The Motion is now ripe for decision.

The plaintiff, Diana Mey, is a consumer advocate who has been waging a war against violators of the Telephone Consumer Protection Act ("TCPA") for over two decades.[1] On February 8, 2023, Ms. Mey received an unsolicited telephone call on her

---

[1] While the defendants seek to portray Ms. Mey as a professional plaintiff, "[t]he TCPA does not merely contemplate self-interested plaintiffs—it encourages them." ***Cunningham v. Rapid Response Monitoring Servs., Inc.***, 251 F.Supp. 3d 1187, 1197 (M.D. Tenn. 2017). Individual litigants such as Ms. Mey are expressly authorized to act as "private attorneys general" enforcing the TCPA. ***Mey v. Venture Data, LLC***, 245 F. Supp.

1

residential phone, listed on the Federal Do Not Call list, seeking to sign her up as a plaintiff in the Camp Lejeune water contamination cases. Unable to ascertain the identity of the party or parties responsible for generating the calls, Mey engaged in a subterfuge by using a fictitious identity to gain the information and filled out a form.

On February 10, 2023, one of the callers identified the three law firms on whose behalf the telemarketing calls were being made. This was confirmed by the receipt of an agreement of representation listing the firms as Cohen & Malad, LLP, Pintas & Mullins Injury Lawyers, and Nash & Franciskato Law Firm.

In an effort to resolve the issues without resort to litigation, on March 15, 2023, Mey emailed a demand letter addressed to ilevin@cohenandmalad.com, dcutshaw@cohenandmalad.com, ltoops@cohenandmalad.com, laura@pintas.com, and bill@pintas.com.

The next day, Mey was contacted by Robby Birnbaum and Chris Meier, Florida attorneys associated with the law firm Greenspoon Marder. Between March 16 and April 7, 2023, Mey exchanged numerous emails with Birnbaum and Meier, who offered assurances to Mey that Pintas wanted to settle her claims. It appears in retrospect that Pintas had no intention of settling the claims, but was simultaneously scheming to file a

---

3d 771, 784 (N.D. W.Va. 2017) (quoting **Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.**, 401 F.3d 876, 881 (8th Cir. 2005)). In this context, the Federal Trade Commission and numerous courts have endorsed plaintiffs posing as interested consumers in order to identify the source of a call. *See, e.g.,* **Fed. Trade Comm'n v. Lifewatch Inc.**, 176 F. Supp. 3d 757, 771 (N.D. Ill. 2016) ("[T]elemarketers' admissions are not rendered invalid just because Mey (successfully) tricked them into (truthfully) revealing that they sold products for Lifewatch.").

meritless action in Puerto Rico for the sole purpose of intimidating and coercing Mey into abandoning her claims.

On April 4, 2023—the same day that Birnbaum emailed Mey about setting up a zoom meeting for April 7 "on getting the claim resolved"—Pintas directed the filing of a lawsuit in the Commonwealth of Puerto Rico's Court of First Instance. In that lawsuit, Pintas makes a claim for fraud, asserting that Mey somehow entrapped the firm into violating state and federal telemarketing laws. Among other attacks, Pintas accuses Mey of "extortion" and commiting fraud against the United States government.

Pintas also seeks declaratory relief to the effect that none of the calls to Mey violated the TCPA because (a) Mey allegedly consented to be called; (b) Mey established a business relationship with the caller; (c) Mey is not a "residential subscriber" under the TCPA; and (d) there is no cause of action for a telemarketer's failure to honestly identify itself. In other words, Pintas has invited the Puerto Rican court to resolve Mey's federal claim under the auspices of declaratory judgment.

There can be little doubt that the Puerto Rico court lacked personal jurisdiction over Ms. Mey. It is undisputed that Mey has never been to Puerto Rico, owned any property in Puerto Rico, or transacted any business in Puerto Rico.

While the defendants point to the March 15 email seeking pre-suit resolution as providing jurisdiction, that claim is wholly unfounded. The proposed agreement of representation identifies the law firm in question as Pintas & Mullins Injury Lawyers. That law firm's internet website states that the firm's principal office is in Chicago, Illinois. It was to that firm in Chicago that Ms. Mey directed her email. While the website does list other locations for the firm, Puerto Rico is not listed.

3

At oral argument on the pending motion, counsel for the defendants represented that the phone calls in question were placed at the direction of P & M Law Firm (PR), LLC, but that representation does not change the facts that the email was sent to the Chicago firm and that the calls in question were received in West Virginia.

It is also telling that the law firm initially sent Mey an email with a copy of the Puerto Rico complaint. Both the email and the complaint were in Spanish. The defendants had no reason to believe that Ms. Mey could speak or read Spanish, which she cannot. Assuming the email was mere spam, Mey deleted it.

The next day, while Mey was away from her home, a process server appeared at Mey's door with what he described to Mey's husband as a lawsuit from Puerto Rico. The server left with the papers in hand, but after speaking with her husband, Mey drew a connection to the Spanish email and retrieved it from her computer's trash folder. Recognizing little more than the name "Pintas," she reached out to Birnbaum, who confirmed that his client had filed the suit.

Thereafter, Mey reached out to her longtime TCPA attorney, who in turn attempted to reach out to Pintas's Puerto Rican counsel. Mey's attorney left multiple voicemails over a period of several days in an attempt to learn what was going on. After nearly a week, Mey's attorney was finally able to reach someone named "Maria Martinez," who claimed she was unable to disclose what the lawsuit was about without first speaking to her boss. Mey's attorney asked Ms. Martinez to have someone call back. No one ever did.

As it turns out, while Mey and her attorney were actively attempting to communicate with Pintas' counsel to learn what the all-Spanish complaint was even about—and receiving only silence in response—Pintas was petitioning the Puerto Rican court for

permission to serve the complaint via publication. A "summons by edict" was subsequently published in the "Primera Hora"—a Puerto Rican publication written in Spanish, of which Mey was obviously not aware and, even then, could not read.

On June 12, 2023—more than a month after Mey's attorney had reached out to Pintas's counsel asking for information about the suit—Mey received what appeared to be an all-Spanish email from a court with the phrase "ANOTACION DE REBELDIA." Mey quickly began reaching out to obtain counsel in Puerto Rico, which she was finally able to retain on June 27, 2023.

Only after receiving translated copies of court filings from her Puerto Rican attorneys, Mey finally realized what had transpired over the past few months. But by then—and very much by design—she was not only in default, but had missed the opportunity to remove the Puerto Rican suit to federal court. Nonetheless, Mey's Puerto Rican counsel was optimistic that the court would quickly dismiss the suit based on an obvious lack of personal jurisdiction, and filed a motion to that effect.

Unfortunately, the Puerto Rican Court failed to rule on the motion for nearly six months. Eventually, the court held a hearing on January 24, 2024. Prior to the hearing, the court convened an off-the-record meeting in chambers and requested that the parties consider agreeing to defer the issue of jurisdiction in exchange for lifting the default judgment. In light of the court's comments during that meeting, and based on her attorneys' advice, Mey was left with the impression that the only way to have the default judgment lifted would be to agree to withdraw the motion to dismiss and defer the jurisdictional question until after a period of full-fledged merits discovery. The parties then went on the record and confirmed that "agreement." The delay in determining jurisdiction

runs contrary to the axiom that jurisdiction should be determined first. ***Combs v. Bakker***, 886 F.2d 673 (4th Cir. 1989).

In the Puerto Rico action, Pintas has served hundreds of interrogatories, demanded production of documents and records far exceeding any relevant purpose, and has demanded that Mey and her husband travel to Puerto Rico, at their own expense, to sit for depositions.

As noted above, the plaintiff seeks an order enjoining the Puerto Rico action. "In the interest of comity, the Anti-Injunction Act prohibits a federal court from granting an injunction 'to stay proceedings in a State court,' subject to three exceptions: (1) where such an injunction is 'expressly authorized by Act of Congress'; (2) where the injunction is 'necessary in aid of [the federal court's] jurisdiction'; or (3) where the injunction is entered 'to protect or effectuate [the court's] judgments.' 28 U.S.C. § 2283. A injunction issued against parties to a state court proceeding is, for purposes of the Act, considered an injunction to stay the state court proceeding itself. *See* ***Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs***, 398 U.S. 281, 287 (1970)." ***In re MI Windows & Doors, Inc., Prod. Liab. Litig.***, 860 F.3d 218, 224 (4th Cir. 2017).

"The All Writs Act grants federal courts the authority to 'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.' 28 U.S.C.A. § 1651(a). Although this language appears to allow for the exercise of broad judicial discretion, the All Writs Act 'has been greatly circumscribed, both by case law and by statute,' and 'generally should only be used "sparingly and only in the most critical and exigent circumstances."' ***Gooch v. Life Investors Ins. Co. of Am. (In re***

*Life Investors Ins. Co. of Am.)*, 589 F.3d 319, 330 (6th Cir. 2009) (quoting *Wis. Right to Life, Inc. v. Fed. Election Comm'n*, 542 U.S. 1305, 1306 (2004) (Rehnquist, C.J., in chambers))." A court's authority under the All Writs Act is nowhere more limited than when it is asked to enjoin a proceeding in state court. *United States v. Purdue Frederick Co.*, 963 F. Supp. 2d 561, 567 (W.D. Va. 2013) (Jones, J).

"The Fourth Circuit 'take[s] seriously the mandate in the Anti–Injunction Act and recognize[s] that for over two hundred years, the Act has helped to define our nation's system of federalism.' *Emp'rs Res. Mgmt. Co. v. Shannon*, 65 F.3d 1126, 1130 (4th Cir. 1995); see also *Denny's Inc. v. Cake*, 364 F.3d 521, 531 (4th Cir. 2004) ('[T]he basic harm the statute was intended to prevent was not the liberal granting of protective orders, per se, but the needless friction between state and federal courts.') (internal quotation marks and citation omitted)." *Id*.

"[A]n anti-suit injunction is an 'extraordinary' form of relief. *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1203–04 (7th Cir. 1996); see also *Brown v. Gilmore*, 533 U.S. 1301, 1303 (2001) (Rehnquist, C.J., in chambers) ('[I]njunctive relief under the All Writs Act is to be used "sparingly and only in the most critical and exigent circumstances."' (quoting *Ohio Citizens for Responsible Energy, Inc. v. NRC*, 479 U.S. 1312, 1313 (1986) (Scalia, J., in chambers)))." *In re Jimmy John's Overtime Litig.*, 877 F.3d 756, 762 (7th Cir. 2017).

"For purposes of the Anti–Injunction Act, the term 'proceedings' includes 'all steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process." *Hill v. Martin*, 296 U.S. 393, 403 (1935).

"For over two-hundred years, the Anti–Injunction Act 'has helped to define our nation's system of federalism.' ***Employers Res. Mgmt. Co., Inc. v. Shannon***, 65 F.3d 1126, 1130 (4th Cir.1995). The three exceptions to the Anti–Injunction Act's prohibition against enjoining state court proceedings 'are construed narrowly, ... and are not [to] be enlarged by loose statutory construction.' ***Id***. (internal quotation marks omitted) (alteration in original). The 'necessary in aid of its jurisdiction' exception to the Anti–Injunction Act is widely understood to apply most often when a federal court was the first in obtaining jurisdiction over a res in an in rem action and the same federal court seeks to enjoin suits in state courts involving the same res. ***In re: Prudential Ins. Co. of Am. Sales Practice Litig.***, 261 F.3d 355, 365 (3d Cir. 2001); 17 Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, ***Federal Practice and Procedure 2d***, § 4225 (2d ed.1988). However, support for a broader application of the 'necessary in aid of its jurisdiction' exception can be found in the Supreme Court's statement that both this exception and the third exception to the Anti–Injunction Act allow federal injunctive relief against state court proceedings where it is 'necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.' ***Atlantic Coast Line R.R. Co.***, 398 U.S. at 295. And as some legal scholars have pointed out, '[t]here have been some signs of such flexibility in the recent cases.' ***Federal Practice and Procedure 2d*** § 4225 at 531." ***In re Am. Honda Motor Co., Inc., Dealerships Rels. Litig.***, 315 F.3d 417, 439 (4th Cir. 2003).

The Seventh Circuit has stated:

8

> More recently, however, we interpreted "in aid of jurisdiction" narrowly. *See* ***Adkins*** [***v. Nestle Purina PetCare Co.***, 779 F.3d 481, 483–84 (7th Cir. 2015)]. In ***Adkins***, we said that "[m]any decisions by the Supreme Court over the last 30 years tell us that 'jurisdiction' means adjudicatory competence." *Id*. at 484. And we explained that "[w]e have never viewed parallel in personam actions as interfering with the jurisdiction of either court." *Id*. (quoting ***Vendo Co. v. Lektro-Vend Corp.***, 433 U.S. 623, 642 (1977) (plurality opinion)). At the same time, we acknowledged that there might be "extreme situations in which a state court could imperil a federal court's adjudicatory power over in personam actions," citing our prior decision in ***Winkler*** as an example. *Id*. at 485. We also recognized that state litigation can affect federal litigation if the state court reaches a final decision first, thus potentially resulting in claim and issue preclusion. *Id*. at 484. However, we clarified that "the potential effect of one suit on the other does not justify an injunction." *Id*. Thus, although the parties argued that ending the parallel state litigation would be "prudent, beneficial, [and] helpful," we rejected "the unstated premise ... that [the Anti-Injunction Act] allows whatever a federal court thinks is good litigation management." *Id*. at 485.

*In re Jimmy John's Overtime Litig.*, 877 F.3d 756, 764–65 (7th Cir. 2017).

In ***Winkler v. Eli Lilly & Co.***, the Court noted that the "necessary in aid of jurisdiction" exception "should be construed 'to empower the federal court to enjoin a concurrent state proceeding that might render the exercise of the federal court's jurisdiction

9

nugatory[.]'" 101 F.3d 1196 (7th Cir. 1997) (citing Martin H. Redish, *The Anti–Injunction Statute Reconsidered*, 44 U. Chi. L.Rev. 717, 754 (1977)). See also, **In re Prudential Ins. Co. Of America Sales Practice Litigation**, 261 F.3d 355, 365 (3d Cir. 2001).

"Even before a federal judgment is reached, however, the preservation of the federal court's jurisdiction or authority over an ongoing matter may justify an injunction against actions in state court. Such 'federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.' **Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers**, 398 U.S. 281, 295 (1970)." **In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)**, 770 F.2d 328, 335 (2d Cir. 1985).

"To the extent that the impending state court suits were vexatious and harassing, our interest in preserving federalism and comity with the state courts is not significantly disturbed by the issuance of injunctive relief. See **In re: Corrugated Container Antitrust Litigation**, 659 F.2d at 1335 [(5th Cir. 1981), *cert. denied,* 456 U.S. 936]." *Id*. at 337.

A factor that many courts, including the Fourth Circuit, have considered is whether the state court plaintiff has exhibited any bad faith with regard to the federal action. In **Miller v. Brooks**, the Fourth Circuit held, among other things, that the district court did not abuse its discretion in enjoining a state court proceeding "to rectify the injustice [it] found [the plaintiffs] had perpetrated by engaging in misconduct in order to defeat such jurisdiction." 315 F.3d at 437; *accord,* **Diet Drugs II**, 369 F.3d at 301 (3d Cir. 2004) (district court's finding that plaintiff's counsel had showed bad faith and conduct supported

injunction). *United States v. Purdue Frederick Co.*, 963 F. Supp. 2d 561, 574 (W.D. Va. 2013) (Jones, J.).

The facts of this case establish that the Puerto Rico action is tantamount to a SLAPP proceeding, which is a version of intimidation litigation in which a plaintiff files a defamation action not necessarily to win but to intimidate and discourage present and future participation in public discourse through prolonged litigation. *MRR Southern, LLC v. Citizens for Marlboro County*, 2013 WL 97793 (D.S.C. Jan. 8, 2013) (Childs, J.). "Generally speaking, a SLAPP suit is an invalid, abusive action based on spurious allegations, brought by a disproportionately well-financed plaintiff seeking to intimidate and dissuade citizens or classes of individuals from exercising their First Amendment or statutory rights to seek redress by petitioning federal agencies or by initiating court proceedings. A SLAPP suit seeks to burden defendants by the cost of a legal defense and the fear of civil liability, until they abandon their claims or cease to bring such claims." *Secretary of Labor, Mine Safety and Health Administration (MSHA), On Behalf of Reuben Shemwell, Complainant v. Armstrong Coal Co., Inc. & Armstrong Fabricators, Inc., Respondents*, 35 FMSHRC 726, 728, 2013 WL 1856604, at *2 (Mar. 14, 2013).

The Puerto Rico litigation was instituted even though personal jurisdiction was lacking in a jurisdiction far from the situs of the alleged illegal phone calls and texts. Service of process was allegedly obtained through underhanded methods. The suit, inter alia, seeks to have the Puerto Rico court determine the legality of the calls, and involves the TCPA, a subject matter over which the Puerto Rico court has no jurisdiction.

With respect to the issue of having the Puerto Rico court determine the legality of the calls, "[w]hen a lawsuit 'seeks a declaration of non-liability to preemptively defeat actions grounded on tort claims involving rights already accrued by reason of alleged wrongful conduct, various courts have held [such an] application is not a warranted purpose of the [declaratory judgment action].' **Dow Jones & Co., Inc. v. Harrods, Ltd.**, 237 F.Supp.2d 394, 426 (S.D. N.Y. 2002). As in those cases, Plaintiffs essentially ask the Court 'to rule on the viability of a hypothetical claim which may never be brought, and an affirmative defense that may never be asserted.' **Transamerica Life Ins. Co. v. Daibes Gas Holdings Atlanta, L.L.C.**, 2018 WL 5033755, at *5 (D. N.J. Oct. 17, 2018). 'This ruling would constitute an advisory opinion.' **Id.**; see also **Progressive Mountain Ins. Co. v. MJ Night Rider Transp. LLC**, 2019 WL 5295797, at *3 (N.D. Ga. Oct. 3, 2019) (quoting **Atlanta Gas Light Co. [v. Aetna Cas. and Sur. Co.**], 68 F.3d 409, 414 [11th Cir. 1995] and dismissing action seeking a declaratory judgment)." **Balarezo Fam. Chiropractic, LLC v. State Farm Mut. Auto. Ins. Co.**, 2024 WL 1343178, at *14 (S.D. Fla. Feb. 12, 2024).

It also appears that the Puerto Rico territorial court lacks the subject matter jurisdiction to handle and decide TCPA cases. The statute, 47 U.S.C. § 227(c)(5) provides that a person may bring a TCPA action in an appropriate court of that state. It goes without saying that Puerto Rico is not a state.

The Second Circuit has determined that when a statute says "state," it does not include Puerto Rico:

> We do note, however, that in numerous other statutes when Congress has intended the term state to apply to Puerto Rico, it has done so explicitly and expressly. *See, e.g.*, 15 U.S.C. § 1171(b) (1976) (transportation of gambling devices); 16 U.S.C. § 3371(h) (transportation of illegally taken wildlife); 18 U.S.C. § 891(8) (1976) (extortionate credit transactions); 18 U.S.C. § 921(a)(2) (jurisdictional requirement for firearms violation); 18 U.S.C. § 1953(d)(1) (1976) (interstate transportation of wagering paraphernalia); 18 U.S.C. § 1955(b)(3) (1976) (illegal gambling); 18 U.S.C. § 1961(2) (1976) (racketeering influenced and corrupt organizations); 28 U.S.C. § 1332(d) (1976) (defining "state" for purposes of diversity jurisdiction). Significantly, too, in **Fornaris v. Ridge Tool Co.**, 400 U.S. 41 (1970), the Supreme Court refused to include Puerto Rico within the term "state" for purposes of a direct appeal under 28 U.S.C. § 1254(2).

**United States v. Diaz**, 712 F.2d 36, 39 (2d Cir. 1983).

While the great majority of cases certainly discourage an anti-suit injunction, none of those cases dealt with cases where there is no basis for personal jurisdiction, underhanded strategies, and improper subject matter. This Court finds that the Puerto Rico action is burdensome, vexatious, and intended to deprive Ms. Mey of her day in court in the proper venue.

For the reasons discussed above, Plaintiffs Motion for Anti-Suit Injunction [**Doc. 7**] is hereby **GRANTED**. This Court hereby issues an injunction and hereby **ORDERS** that the

parties are **ENJOINED** and **PROHIBITED** from proceeding in any way with the underlying lawsuit in the Commonwealth of Puerto Rico Court of First Instance.

Security will not be required as William Pintas, P&M Law, LLC, and P&M Law (PR), LLC will not suffer financial burden in compliance with such injunctive relief.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: May 17, 2024.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE