IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

DIANA MEY, on behalf of herself
and a class of others similarly situated,

      Plaintiff,

                                    Civil Action No. 5:24-CV-55

v.

WILLIAM PINTAS,
P&M LAW FIRM, LLC,
P&M LAW FIRM (PR), LLC,
RELIANCE LITIGATION LLC, and
JAMES RYDER INTERACTIVE LLC

      Defendants.

## PLAINTIFF'S RESPONSE IN OPPOSITION TO PINTAS DEFENDANTS' MOTION TO DISMISS

Diana Mey alleges that Defendants William Pintas, P&M Law Firm, LLC and P&M Law Firm (PR), LLC (collectively, the "Pintas Defendants") violated the Telephone Consumer Protection Act in an effort to sign her up as a client. And, as a result of the Pintas Defendants' improper efforts obstruct her resulting claims, Mey likewise alleges secondary claims for fraudulent legal process, abuse of process, and intentional infliction of emotional distress. The Pintas Defendants move to dismiss for several reasons, all of which should be rejected.

**First**, the Pintas Defendants urge this Court to surrender its jurisdiction to the Puerto Rican court under *Colorado River* abstention. However, given that this Court recently enjoined the concurrent Puerto Rican lawsuit in aid of its own jurisdiction, there is no justifiable reason for this Court to now yield under

discretionary abstention principles. Even then, *Colorado River* abstention is inappropriate on its own terms.

**Second**, the Pintas Defendants argue that Mey lacks a cognizable harm sufficient to confer Article III standing. But this Court and the Fourth Circuit have already rejected this exact argument. This Court should do so again here.

**Third**, the Pintas Defendants argue that this Court lacks personal jurisdiction. However, as a result of the illegal calls, Mey received a representation agreement on behalf of the Pintas Defendants. In a closely related case concerning nearly identical client solicitations, this Court found that the vendor's contacts with the forum state were sufficient to establish personal jurisdiction over the principal law firm. This Court should do the same here.

**Fourth**, the Pintas Defendants challenge venue. But Mey received the offending calls in this district, meaning a substantial part of the events giving rise to her TCPA claims occurred in this district. This Court may entertain the balance of Mey's claim based on pendent venue.

**Fifth**, the Pintas Defendants—who gamed the service of process rules in their Puerto Rican lawsuit—now claim service of process is insufficient. Merits aside, any challenge to the sufficiency of process is premature. Rule 4 affords plaintiffs 90 days to effectuate service, and that deadline has not yet passed.

<u>OPERATIVE ALLEGATIONS</u>

William Pintas founded P&M Law Firm, LLC, a law firm in Chicago, and P&M Law Firm (PR), LLC, a Puerto Rican offshoot created for the purposes of tax

avoidance. Compl. ¶8. Given that P&M Law (PR) is merely a tax-advantaged carbon copy of P&M Law, the two firms should be treated as a single enterprise for purposes of this motion. *Id*. at ¶9. All acts taken by the two firms in relation to this case were personally directed by Pintas. *Id*.

*TCPA Allegations*

The Pintas Defendants represent clients in the prosecution of mass toxic tort claims against the United States of America. Compl. ¶16. These mass toxic tort claims commonly allege that the drinking water at Camp Lejeune was contaminated between the 1950s and 1980s, exposing millions of service members and their families to toxic chemicals. *Id*. In August 2022, Congress passed the Promise to Address Comprehensive Toxics Act, providing a new private right of action to a class of individuals affected by the tainted water at Camp Lejeune. *Id*. at ¶17. In a race to sign up clients, law firms—including P&M Law—have collectively spent millions of dollars on mass tort ad campaigns seeking to represent Camp Lejeune victims. *Id*. at ¶18. Advertising is the main method to find claimants, and it's handled by an ecosystem of lawyer-specific ad agencies known as lead generators. *Id*.

The Pintas Defendants contracted with lead generator Reliance Litigation, who in turn contracted with James Ryder Interactive LLC ("JRI"), to make some or all of the calls at issue in this case. Compl. ¶18. To increase the reach of their efforts to sign up Camp Lejeune victims, the Pintas Defendants and their agents, Reliance Litigation and JRI, used automated technology to place thousands of illegal calls to potential claimants. *Id*. at ¶19. Pintas Defendants have already confirmed that P&M

3

Law (PR) "hired callers to make these phone calls." *See* Exhibit 1, at 23 (hearing transcript).

Despite having her number listed on the National Do Not Call Registry, from February 8 to February 13, 2023, Mey began receiving unwanted calls soliciting legal representation in connection with the Camp Lejeune litigation.[1] Because of the sheer volume of calls she was receiving, Mey eventually began using unique pseudonyms with each new call she received. *Id.* at ¶22. That way, when the unique pseudonym resurfaced at a later date, Mey could make a connection between the two calls, helping to identify the source. *Id.* In this instance, Mey used the pseudonym "Rhonda Nicholson." *Id.* at ¶24.

As a result of these calls, Mey was furnished with a Retainer and Contingency Fee Agreement, contemplating legal representation in the Camp Lejeune litigation. As evidenced by the agreement, one of the firms purporting to represent Mey was "Pintas & Mullins Injury Lawyers." *See* Exhibit 2.[2] Mey never consented to be called by or on behalf of Defendants. *Id.* at ¶44. Nor did Mey have a prior business relationship with Defendants. *Id.*

---

[1] The date, time, and contents of each call are set forth more fully in the Complaint, ECF No. 1.

[2] When defendants make a factual challenge to jurisdiction, courts may consider evidence outside the pleadings to resolve disputed facts necessary for the determination of jurisdiction. Courts have applied this rule to challenges of both subject matter jurisdiction and personal jurisdiction. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). This Court may also consider documents that are incorporated by reference into the complaint without converting the motion to one for summary judgment. *See Johnson v. James B. Nutter & Co.*, 438 F. Supp. 3d 697, 704 (S.D.W. Va. 2020).

4

*Fraudulent Legal Process Allegations*

Anticipating this lawsuit under the TCPA, P&M Law (PR) filed a preemptive lawsuit in the Commonwealth of Puerto Rico's Court of First Instance, accusing Mey of fraud. Compl. ¶¶45-66. That lawsuit is plainly without factual basis or jurisdiction and was filed only as a means to harass and burden Mey with a costly defense. *Id*. Indeed, this Court already found that "the Puerto Rico action is burdensome, vexatious, and intended to deprive Ms. Mey of her day in court in the proper venue." ECF No. 50, at 13.

## ARGUMENT

Adopting a kitchen-sink approach, the Pintas Defendants advance six separate arguments: (1) an anti-suit injunction is inappropriate; (2) this Court should surrender its jurisdiction under *Colorado River* abstention; (3) Mey lacks Article III standing; (4) this Court lacks personal jurisdiction; (5) venue is improper; and (6) service of process is insufficient. With the exception of the first argument, which this Court already resolved in Mey's favor [ECF No. 50], each argument is addressed in turn.

### A. Abstention is Inappropriate

Invoking *Colorado River* abstention, the Pintas Defendants ask this Court to surrender its jurisdiction to the Puerto Rican court. But abstention is only appropriate in "parallel" actions presenting "exceptional circumstances." *vonRosenberg v. Lawrence*, 849 F.3d 163, 168 (4th Cir. 2017). Thus, in deciding whether abstention is appropriate, courts employ a two-step inquiry: first, courts

determine whether the federal and state actions are parallel; and second, if the actions are parallel, courts then determine if exceptional circumstances exist. Here, even if the actions are parallel for purposes of an abstention analysis, the factors relevant to the second inquiry counsel against abstention. *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 526 (7th Cir. 2021) (providing non-exhaustive list of factors).

**Vexatious Litigation**. Courts should consider the "vexatious or contrived" nature of the concurrent actions. *Id.*; *Nazario-Lugo v. Caribevision Holdings, Inc.*, 670 F.3d 109, 115 (1st Cir. 2012); *Taveras v. Bank of Am., N.A.*, 89 F.4th 1279, 1286 (11th Cir. 2024). In granting the temporary restraining order, this Court already found that the Puerto Rican lawsuit appears to be a "vexatious lawsuit designed to harass Mey." ECF No. 22, at 7. In granting the anti-suit injunction, this Court similarly found that "the Puerto Rico action is burdensome, vexatious, and intended to deprive Ms. Mey of her day in court in the proper venue." ECF No.50, at 13. Thus, it would be inappropriate for this Court to now yield to that same Puerto Rican proceeding.

**Absence of Concurrent Jurisdiction**. Courts should also consider whether there is actually concurrent jurisdiction across the two forums. *Driftless Area Land Conservancy*, 16 F.4th at 526 (weighing the "presence or absence of concurrent jurisdiction" and the "order in which jurisdiction was obtained"). As this Court already found, the Puerto Rican court plainly lacks personal jurisdiction over Mey. ECF No. 36, at 5-6 ("There can be little doubt that the Puerto Rico court lacked

personal jurisdiction over Ms. Mey."). Relatedly, given that this Court recently enjoined the concurrent Puerto Rican lawsuit in aid of its own jurisdiction, there is no reason for this Court to now yield under discretionary abstention principles.

**Federal Law Determinative**. Courts should also consider whether state or federal law will be applied. *Id.* (weighing the "source of governing law—federal or state"). Here, Mey's principal claims arise under the TCPA, and this Court has the greatest interest in deciding those issues of federal law. Moreover, the balance of Mey's claims arise under West Virginia law. A federal court sitting in West Virginia is best suited to resolve these state law claims—not the Puerto Rican Court of First Instance.

**Availability of Removal**. Courts consider whether removal jurisdiction was available in the state court action. *Id.* (weighing the "availability of removal"). As a result of the Pintas Defendants' gamesmanship, Mey was held in default and missed the opportunity to remove the Puerto Rican suit to federal court. ECF No. 36, at 8. The Pintas Defendants should not be rewarded by depriving Mey of a federal forum for her federal claims.

**Relative Progress**. Courts consider the relative progress of the concurrent litigation. *Id.* Though the Puerto Rican lawsuit has been pending for over a year, there has been little to no substantive progress. The Pintas Defendants point to Mey's motion to dismiss, but the court never ruled on it. The Pintas Defendants also point "substantive scheduling orders," for whatever those are worth. But none of this amounts to progress.

For these reasons, *Colorado River* abstention is wholly inappropriate.

**B. Mey Alleges Injury Sufficient to Satisfy Article III Standing**

To establish Article III standing, a plaintiff must plausibly allege that they have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 30, 338 (2016). The Pintas Defendants takes exclusive aim at the first element, injury-in-fact, arguing that the calls at issue do not amount to cognizable injuries for purposes of Article III standing. But that argument—based exclusively on *Spokeo*—has been squarely rejected by both this Court and the Fourth Circuit. *See Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 775 (N.D.W. Va. 2017) (Bailey, J.) (holding that the receipt of unwanted calls is a sufficiently concrete harm to confer standing under *Spokeo*); *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 652-53 (4th Cir. 2019) (same). These decisions are also in line with other courts having decided the same issue. *See, e.g., Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 93 (2d Cir. 2019); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017); *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 690 (5th Cir. 2021). This body of contrary authority goes unmentioned by the Pintas Defendants.

**C. Mey Alleges Contacts Sufficient to Confer Personal Jurisdiction**

Specific jurisdiction permits this Court to exercise jurisdiction over the Pintas Defendants. In determining whether specific jurisdiction exists, this Court must consider: "(1) whether and to what extent the defendant purposely availed itself of

the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally reasonable." *Mey v. Matrix Warranty Solutions, Inc., et al.*, No. 5:21-CV-62, 2021 WL 11421819, at *4 (N.D.W. Va. Sept. 2, 2021) (cleaned up).

### *The Pintas Defendants Purposely Availed Themselves*

As this Court has recognized, "[e]ven a single contact with the forum state can constitute purposeful availment sufficient to satisfy due process requirements." *See Matrix Warranty Solutions*, 2021 WL 11421819, at *4 (citing *Hardy v. Pioneer Parachute Co.*, 531 F.2d 193, 195 (4th Cir. 1976)). The Pintas Defendants' contacts with the State far exceed what is constitutionally required.

**First**, as a direct result of the illegal solicitations, Mey received a representation agreement on behalf of "Pintas & Mullins Injury Lawyers." Compl. ¶39; *see also* Exhibit 2. By agreeing to represent a West Virginia resident, the Pintas Defendants necessarily contemplated a substantial, profitable, and continuing relationship with a resident of the forum state. And because the Pintas Defendants purposely availed themselves of the privilege of representing a West Virginia resident, they necessarily availed themselves of the privilege of doing business in the State. Indeed, the firm's website proudly provides that "our personal injury lawyers serve all 50 states." *See* www.pintas.com (last visited May 20, 2024).

**Second**, given the nature of *en masse* telemarketing campaigns, this Court can also reasonably infer that the Pintas Defendants' contacts with the State extend

beyond Mey. Notably, the Pintas Defendants do not suggest that their contacts with this State are exclusive to Mey. Nor do they suggest that the firm's marketing efforts stopped at the West Virginia border or that the firm is without a single West Virginia client for the Camp Lejeune litigation. Though Mey has the burden of establishing personal jurisdiction, the Pintas Defendants' motion does not actually argue the absence of any such contacts. Taken together, this Court can reasonably infer that the Pintas Defendants' contacts with the State extend beyond Mey.

By directing its marketing efforts into West Virginia, the Pintas Defendants hope to secure West Virginia clients for the Camp Lejeune litigation. And with each West Virginia client, the Pintas Defendants expect to profit from the provision of legal services, which will necessarily be rendered over a significant period of time. *See Johnson v. Diamond Shine, Inc.*, 890 F. Supp. 2d 763, 770 (W.D. Ky. 2012) (finding that out-of-state defendant purposely availed itself of forum state when contract with forum resident contemplated substantial and continuing relationship within forum state); *Southwest Research Inst. v. California Fueling, LLC*, 509 F. Supp. 3d 656, 665 (W.D. Tex. 2020) ("Where the defendant deliberately has engaged in significant activities within a State or has created continuing obligations between himself and residents of the forum, he has availed himself of the privilege of conducting business there"). Because the "Pintas & Mullins Injury Lawyers" have agreed to represent a West Virginia resident and have exploited the West Virginia market for commercial gain, the Pintas Defendants have purposely availed themselves of the privilege of conducting business in the State.

*There is a Sufficient Nexus to the Pintas Defendants' Forum-Based Activities*

The second element "demands that the suit arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). A plaintiff may satisfy the nexus requirement by showing that the lawsuit either "arises out of" or "relates to" the defendant's contacts with the forum state. *See Bradley v. DentalPlans.com.*, 617 F. Supp. 3d 326, 336 (D. Md. 2022). Here, specific personal jurisdiction can be established based on two forms of contact with the forum state: (1) The Pintas Defendants' offer of legal services to a West Virginia resident; and (2) the forum-based contacts of their agents, Reliance Litigation and JRI.

**First**, as evidenced by the representation agreement, the Pintas Defendants offered their legal services to Mey, a West Virginia resident. This engagement was only made possible by the illegal calls that are the subject of this lawsuit. Though this lawsuit does not "arise out of" the provision of legal services, the contacts incidental to representing West Virginia residents in the Camp Lejeune litigation plainly "relate to" the subject matter of this lawsuit, which is the illegal solicitation of those services.

**Second**, this Court may exercise specific jurisdiction over the Pintas Defendants based on the forum-based acts of their agents, Reliance Litigation and JRI. *See Matrix Warranty Solutions, Inc.,* 2021 WL 11421819, at *5-6 (exercising personal jurisdiction based on an agent's contacts with the forum state); *Bilek v. Nat'l Cong. of Emps., Inc.*, 470 F. Supp. 3d 857, 861-62 (N.D. Ill. 2020) (same); *Bradley*, 617 F. Supp. 3d at 337-338 (same). Here, Mey alleges a series of unwanted calls from

Reliance Litigation and JRI. *See infra*, OPERATIVE ALLEGATIONS. Each of these calls was placed for the purposes of promoting services of the Pintas Defendants. The Pintas Defendants have already admitted that the calls at issue were placed at the specific direction of P&M Law (PR), which is a mere alter ego of P&M Law and both of which are controlled by William Pintas. Because Reliance Litigation and JRI's forum-based contacts plainly "relate to" the subject matter of this litigation, and they were acting as agents of the Pintas Defendants, the nexus requirement is satisfied.

This Court recently exercised personal jurisdiction over similar defendant law firms based on nearly identical claims and circumstances. *See Mey v. Levin, Papantonio, et al.*, No. 5:23-cv-46, ECF No. 33 (N.D.W. Va.) ("plaintiff has provided sufficient facts for this Court to reasonably infer that the calls were made by an agent under Levin Law's control"); *id*. at ECF No. 32 ("At this stage of litigation, plaintiff has provided sufficient facts for this Court to reasonably infer that Principal Law is directly responsible for the telemarketing calls or that the calls were made by a vendor under Principal Law's control. Based on a review of the pleadings and briefing in this case, the allegations made by the plaintiff plausibly connect Principal Law to the alleged calls and therefore are sufficient to state a claim under the TCPA."). A similar result is appropriate here.

<u>*Jurisdiction Is Constitutionally Reasonable*</u>

Aside from stating the general principle of law, the Pintas Defendants do not otherwise explain how this Court's exercise of jurisdiction would be constitutionally unreasonable. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)

(providing that the defendant has the burden to "present a compelling case" that jurisdiction is unreasonable). Because the Pintas Defendants have failed to identify any potential for prejudice or inconvenience, there is no basis for this Court to presume that jurisdiction would be constitutionally unreasonable.

### D. Venue Properly Lies in this District

Venue is proper in any district "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b). Mey's principal claims arise under the TCPA, alleging the receipt of numerous unlawful solicitations. Because Mey is a resident of Ohio County, West Virginia and she received the offending calls in this district, venue properly lies in this district. *See Mey v. Castle L. Grp., PC*, 416 F. Supp. 3d 580, 586 (N.D.W. Va. 2019).

Pintas, however, agues a nexus to Puerto Rico, claiming "Mey used a deceptive fake identify to contact the Puerto Rico Law Firm to invite telephone and online contact with her." ECF No. 32, at 17. Not so. Mey provided a pseudonym only *in response* to unsolicited calls, which predated any contact she might have had with the Pintas Defendants. ECF 7-1, at ¶ 15. Even then, Mey did not receive the calls in Puerto Rico. Nor is there any indication that the calls were placed from Puerto Rico. Though P&M Law (PR) is based in Puerto Rico, Puerto Rico has no discernable nexus to Mey's TCPA claims. But, even if some of those events occurred in Puerto Rico, the venue statute allows for the possibility that a plaintiff will have a choice of venue among multiple districts where a substantial portion of the events giving rise to his claims occurred. *Treppel v. Reason*, 793 F. Supp. 2d 429, 435 (D.D.C. 2011); *Setco*

*Enterprises Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir.1994) ("[W]e ask whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts.").

This Court may resolve the balance of Mey's claims under the doctrine of pendent venue.[3] Under that doctrine, "a federal court may in its discretion hear pendent claims which arise out of the same nucleus of operative facts as a properly venued federal claim, even if venue of the pendent claim otherwise would not lie." *Mahmood v. Nielsen*, 312 F. Supp. 3d 417, 423 (S.D.N.Y. 2018); *High River Ltd. P'ship v. Mylan Lab'ys, Inc.*, 353 F. Supp. 2d 487, 493 (M.D. Pa. 2005); *Nine Point Mesa of Nashville, Inc. v. Nine Point Mesa of Lexington, Inc.*, 769 F.Supp. 259, 263 (M.D.Tenn.1991); *Pacer Glob. Logistics, Inc. v. Nat'l Passenger R.R. Corp.*, 272 F. Supp. 2d 784, 789 (E.D. Wis. 2003); *Basile v. Walt Disney Co.*, 717 F. Supp. 2d 381, 387 (S.D.N.Y. 2010). In deciding whether to exercise pendent venue, "a court must consider factors such as judicial economy, convenience to the parties and the court system, avoidance of piecemeal litigation and fairness to the litigants." *Hsin Ten Enterprise USA, Inc. v. Clark Enterprises*, 138 F.Supp.2d 449, 462 (S.D.N.Y.2000).

Here, the balance of Mey's claims share common parties and the same nucleus of operative facts. Indeed, those claims arise from the Pintas Defendants' efforts to intimidate Mey out of bringing her TCPA claims and to preempt this Court's ability to resolve those claims. Though many of the acts giving rise to these claims occurred

---

[3] In addition to her TCPA claims, Mey also alleges claims for fraudulent legal process, abuse of process, and intentional infliction of emotional distress.

outside of this district, they are intimately related to Mey's properly-venued TCPA claims and the resulting harms occurred in this district. In addition to the relatedness of claims, equitable concerns also counsel in favor of pendent venue. Most critically, it would obviate the need for piecemeal litigation in a Puerto Rican court. Additionally, this Court recently enjoined the Pintas Defendants from furthering their sham lawsuit in Puerto Rico. It would make little sense to now defer to the Puerto Rican court to decide Mey's resulting claims for fraudulent legal process, abuse of process, and intentional infliction of emotional distress.

### E. Defendants' Arguments Concerning Insufficient Service

The Pintas Defendants—who served Mey by publication in a Puerto Rican newspaper—challenge both the form and manner in which they were served in this case. In particular, they complain that (1) the summons lacked an "embossed" seal from the clerk's office,[4] and (2) service was effectuated on a receptionist in their Chicago office. Regardless of merit, the Pintas Defendants' arguments are premature, as the 90-day deadline for service of process has not yet passed. Fed. R. Civ. P. 4(m) (granting plaintiffs 90 days to effectuate service of process). Mey filed her complaint on March 19, 2024, meaning she has until June 17, 2024 to effectuate service of process. Until that time, any motion to dismiss for insufficient process is premature.

---

[4] Each summons is signed and stamped by the clerk's office. Those are available for inspection and/or production should Pintas wish to confirm. As permitted by the rules, the Pintas Defendants were provided scanned and printed copies of each summons, which do not capture the embossed stamp. *See* Fed. R. Civ. P. 4 (contemplating, in repeated instances, the use of copies).

The Pintas Defendants have otherwise refused to accept or waive service. And even though they insist on personal service, the Pintas Defendants have refused to provide Mey an address at which Mr. Pintas can be served. Mey will nonetheless endeavor to effect service of process on the Pintas Defendants, if not already waived.[5]

## CONCLUSION

For the foregoing reasons, the Pintas Defendants' motion to dismiss should be denied in its entirety.

**DIANA MEY**

By Counsel:


/s/ Andrew C. Robey
Ryan M. Donovan (WVSB #11660)
Andrew C. Robey (WVSB #12806)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
t: 681-265-3802
f: 304-982-8056
rdonovan@hfdrlaw.com
arobey@hfdrlaw.com

---

[5] Prior to challenging the sufficiency of service, attorneys for the Pintas Defendants filed appearances, moved for *pro hac vice* admissions, and appeared without reservation for a hearing on Mey's motion for temporary restraining order.

**Certificate of Service**

I hereby certify that, on May 20, 2024, a copy of the foregoing document was served via the Court's electronic filing system.

/s/ Andrew C. Robey
Andrew C. Robey (WVSB #12806)