IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DIANA MEY, on behalf of herself
and a class of others similarly situated,**

                Plaintiff,

v.                                                          Civil Action No.: 5:24-cv-55

**WILLIAM PINTAS, P&M LAW
FIRM, LLC, P&M LAW FIRM (PR), LLC,
RELIANCE LITIGATION, LLC, and JAMES
RYDER INTERACTIVE, LLC,**

                Defendants.

**P&M DEFENDANTS' REPLY TO PLAINTIFF DIANA MEY'S
RESPONSE IN OPPOSITION TO P&M DEFENDANTS' MOTION TO DISMISS**

      In her Response in Opposition to the P&M Defendants' Motion to Dismiss ("Response"), Plaintiff Diana Mey is unable to show why this Court should not dismiss her claims. Critically, Mey's recharacterization of her own allegations in the Response—especially her "upon information and belief" assertions—simply do not state a plausible claim for relief, as argued more fully in the Motion to Dismiss (the "Motion") filed by William Pintas, P&M Law Firm, LLC, and P&M Law Firm (PR), LLC (collectively referred to as the "P&M Defendants").

      *First*, Mey is unable to get around the fact that this second, later filed federal lawsuit is nothing more than forum shopping, as her argument on the Anti-Injunction Act, 28 U.S.C. § 2283 (the "AIA"), makes clear. This Court does not have inherent power to ignore the limitations of the AIA or to enjoin state court proceedings merely because of the prospect that those proceedings interfere with a protected federal right, even when the interference is unmistakably clear. *See Atlantic Coast Line R. Co. v. Bhd. of Locomotive Engineers*, 398 U.S. 281, 294-96 (1970); *accord Duby v. Moran*, 901 F. Supp. 215, 216 (S.D. W. Va. 1995) (recognizing that "lower federal courts possess no power whatever to sit in direct review of state court decisions.").

*Second*, Mey is unable to—so she does not—respond to several specific Rule 12(b) infirmities identified in the P&M Defendants' Motion to Dismiss, including insufficiency of process, insufficiency of service of process, venue, and failure to state a plausible claim for relief. This Court must dismiss Mey's claims, especially absent a meaningful response of any kind.

I.    ARGUMENT

   A. The Anti-Injunction Act

Mey's Response does not defend what the P&M Defendants pointed out clearly in their Motion to Dismiss: that Mey is using the Anti Injunction Act, 28 U.S.C. § 2283 (the "AIA"), to forum shop. Conspicuously, Mey's Response does not point to *any* allegations showing how or why the second statutory exemption of the AIA—"where necessary in aid of its jurisdiction"— applies here. Other than maligning the P&M Defendants, along with Puerto Rico and its people and judges, Mey makes no attempt to point to any plausible facts suggesting the Puerto Rico Lawsuit "seriously impairs" this Court's flexibility to decide the case now pending before it.[1]

---

[1] On May 13, 2024, this Court heard argument on Plaintiff's preliminary injunction motion, without considering the threshold Rule 12(b) issues, including process and the lack of personal jurisdiction, as raised by the P&M Defendants. The failure to address these issues means this Court lacked jurisdiction over the P&M Defendants. *See, e.g., Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of process and service of summons must be satisfied"). This Court's Order Granting Anti-Suit Injunction drew heavily on Mey's moving papers and echoed her hostility toward Puerto Rico, the Puerto Rico lawyers, and the Puerto Rico Lawsuit. Based on Mey's papers, the Court found that the Puerto Rico Lawsuit is "burdensome, vexatious and intended to deprive [Plaintiff] of her day in court in the proper venue." *See* ECF No. 50, at 13. This Court also reached other conclusions, including (1) that the court in Puerto Rico lacked personal jurisdiction over Mey; (2) that the Puerto Rico Law Firm obtained service of process "through underhanded methods;" and (3) that the court in Puerto Rico has no subject matter jurisdiction over the TCPA. *Id.* at 11. This Court's conclusion about the power and authority (or lack thereof) of the Puerto Rico Court does not show that the injunction entered is in aid of this Court's jurisdiction. For this and other reasons, the P&M Defendants intend to appeal this Court's May 17th Order and file a motion for a stay of these proceedings pending appeal.

To the extent Mey continues casting stereotypical aspersions on the proceedings being conducted in Spanish or the Rules of Procedure in the courts of Puerto Rico—and complains about the orders entered there as a way of contesting the authority of those courts—she should take the matter up with the Judge in the Commonwealth of Puerto Rico. A litigant may not use the in "aid of jurisdiction" exception simply because of the *prospect* that a concurrent state proceeding *might* result in a judgment inconsistent with a federal court's decision. *See Atlantic Coast Line R. Co.*, 398 U.S. at 295–96. The AIA *only* allows federal injunctive relief to stay a state court proceeding where necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case. *See e.g., State Farm Mut. Auto. Ins. Co. v. Parisien*, 352 F. Supp. 3d 215, 225 (E.D.N.Y. 2018). The fact that Mey has been an active participant in the Puerto Rico Lawsuit—and is now litigating in this Court—shows that *nothing* in the Puerto Rico Lawsuit has interfered with either this Court's consideration of or authority to decide the claims Mey asserted in her Complaint.

Consider that Mey—for nearly a year—has been aggressively (1) litigating the motion to dismiss she prepared and filed in Puerto Rico; (2) fighting over court ordered discovery that she wants to avoid; and (3) battling the Judge and the Judge's scheduling order, which sets a timeline for progressing the case and maximizing judicial economy. Despite this, Mey argues the Court must stop the P&M Defendants by enjoining them from proceeding with the Puerto Rico Lawsuit. She also tacitly invites the Court to declare that the P&M Defendants have no right to pursue their claims against Mey anywhere other than in West Virginia, for the fraud she perpetrated.

The AIA injunction Mey has obtained, however, is not "in aid of [this Court's] jurisdiction." Rather, Mey not only wants to enjoin the P&M Defendants, but she also asked this Court to declare that the courts in Puerto Rico are illegitimate and do not have jurisdiction over Mey or the claims

she asserts here, in the friendly forum that she prefers. Mey cannot use the AIA to divest the court in Puerto Rico of its authority to adjudicate the TCPA and other claims asserted in the Puerto Rico Lawsuit. Federal and state courts undisputedly have concurrent jurisdiction over private suits arising under the TCPA. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

A federal court does not have inherent power to *ignore* the limitations of 28 U.S.C. § 2283. *See Atlantic Coast Line R. Co.*, 398 U.S. at 294-96; *accord Duby*, 901 F. Supp. at 216 (recognizing that "lower federal courts possess no power whatever to sit in direct review of state court decisions."). A district court cannot issue an injunction under § 2283 to stay another proceeding, be it another federal district court or the court of another sovereign. *Richmond v. Wampanoag Tribal Ct. Cases*, 431 F. Supp. 2d 1159, 1181 (D. Utah 2006). A federal district court also cannot evade the AIA by framing an injunction as a restraint on a party rather than enjoining the state court proceedings directly. *See Atlantic Coast Line*, 398 U.S. at 287. To do either one of these impermissibly enlarges the second §2283 exception "by loose statutory construction." *Id.*

B. *Colorado River* **Abstention applies here.**

Next, Mey argues there is no justifiable reason for this Court to yield under abstention principles enunciated in *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 802 (1976). The gist of Mey's response is that there is no concurrent jurisdiction because this Court alone has subject matter jurisdiction over the claims asserted and Puerto Rico's courts have no personal jurisdiction over her. The allegations and claims filed in this Court somewhat parallel the earlier-filed Puerto Rico Lawsuit, and the claims in each respective action present exceptional circumstances that justify this Court's abstention under *Colorado River*. A decision to abstain under *Colorado River* requires a two-step analysis. First, the Court must decide whether the state

and federal court actions are parallel. Mey concedes the first filed state action is parallel to her federal action. Second, the Court must decide whether exceptional circumstances exist.

In her response, Mey ignores the exceptional circumstances that warrant *Colorado River* abstention, as the P&M Defendants argued. Instead Mey defaults to *ad hominem* attacks to offer conclusions (1) that the Puerto Rico Lawsuit is "vexatious," (2) that there is no concurrent jurisdiction, (3) that federal law is determinative, (4) that Mey could not remove the Puerto Rico Lawsuit to the United States District Court for the District of Puerto Rico, and (5) that the Puerto Rico Lawsuit has not progressed, such that there are no exceptional circumstances that militate in favor of abstention. This faulty reasoning, ironically, shows *why* abstention is appropriate here.

Mey predicates her argument on these conclusions: "the Puerto Rico action is burdensome, vexatious, and intended to deprive Ms. Mey of her day in court in the proper venue"; there is no concurrent jurisdiction because "the Puerto Rican court plainly lacks personal jurisdiction over Mey"; "Mey's principal claims arise under the TCPA, and this Court has the greatest interest in deciding those issues of federal law"; "Mey was held in default and missed the opportunity to remove the Puerto Rican suit to federal court"; and "there has been little to no substantive progress." *See* Mey Response at 6-7. Federal and state courts—without any question—have concurrent jurisdiction over private suits arising under the TCPA. *See Mims,* 565 U.S. at 372.

Mey gave up her right to seek relief in federal court when she did not remove the Puerto Rico Lawsuit to federal court. *See Mims*, 565 U.S. at 376 (federal courts have federal-question jurisdiction over private TCPA suits). There is nothing other than argument of counsel to establish that a default somehow precluded Mey from removing the Puerto Rico Lawsuit to federal court. Likewise, counsel's conclusion—that the Puerto Rico Court's substantive scheduling orders "for whatever those are worth" do not amount to progress—oozes the hostility, prejudice, and disdain

5

Mey continues to air against the courts and people of Puerto Rico. The fact that there is concurrent jurisdiction negates Mey's assertion that declarations in the court in Puerto Rico "seriously impair this Court's flexibility and authority to decide Mey's TCPA claim." *See* Complaint at ¶ 108.

"The principal purpose of a stay under *Colorado River* is judicial economy . . . ." *See Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1157 (7th Cir. 1990). There is "no reason for identical suits to be proceeding in different courts," especially when Mey litigated the first-filed Puerto Rico Lawsuit for nearly a year before bringing suit here. *See U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 750 (7th Cir. 2008). In this situation, judicial economy strongly favors abstention. *See Driftless Area Land Conservancy v. Valcq*, 16 F. 4th 508, 528 (7th Cir. 2021).

## C. Mey Lacks Article III standing to sue in federal court.

Mey's dismissive response on the Article III standing issue is simply one-long string cite used to reach the conclusion that this Court and the Fourth Circuit have somehow rejected the Supreme Court of the United States' holding in *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), on the injury in fact element. Mey offers up no other analysis or argument.

To be sure, Mey claims that various people violated the TCPA by calling and texting *her* multiple times on February 8, 2023, and then again on multiple occasions through the end of February. *See* Mey Complaint at ¶¶ 21, 24-25. Transcripts of the calls, however, do not support her allegation (that is, in Paragraph 30) that she gave the "express instruction to Smith not to text her." No presumptive truthfulness attaches to Mey's allegations, and the existence of disputed material facts will not prevent this Court from evaluating the merits of Mey's threadbare jurisdictional allegation. Couple that fact with Mey's use of a fake identity—i.e., "Rhonda Nicholson"—to speak to the callers and to complete online forms, *see* Mey Complaint ¶ 34, Mey

is unable to allege how she "personally suffered some actual or threatened injury" as opposed to her fictitious Rhonda Nicholson, who initiated and invited the calls, texts, and email.

Mey's use of a fake pseudonym to invite at least 19 separate communications she alleges are TCPA violations—which she nevertheless *concedes* she invited— shows that her alleged injury did not affect her "in a personal and individual way," was not "particularized," and did not actually exist and so was not "concrete." *See Spokeo*, 578 U.S. at 339.  Article III standing requires that plaintiff "*personally* has suffered some actual or threatened injury." *Id.* Not one of these contacts—as the transcripts of her telephone calls reveal, contacts which she invited—can be fairly traceable to the P&M Defendants. Even Mey's false persona "Rhonda" never said to any caller, "don't call, text, or email me." Mey did not and cannot allege facts showing each of the three elements of Article III standing, which the *Spokeo* Court explained are all strictly necessary in order for a party to bring claims in federal court in the first place.  Mey therefore lacks Article III standing to sue.

### D. The Complaint lacks the required statutory and constitutional due process allegations to establish personal jurisdiction.

Moving on, armed with *ipse dixit*, Mey argues that there is specific jurisdiction over each of the P&M Defendants.  Mey rests her entire argument on Paragraph 39 of her Complaint and Exhibit 2 to her Response.  Unwittingly, Mey substantially undercuts her own argument.

Start with Exhibit 2. The unsigned document is between "Rhonda Nicholson" and the identified entities. "Rhonda Nicholson," identified as the client in Exhibit 2, lives in Bensenville, Illinois—not West Virginia, where Mey claims that she lives. Likewise, Paragraph 39 of the Mey Complaint alleges someone "emailed Mey a representation agreement," but that is untrue and directly contradicted by Mey's Exhibit 2, which unquestionably identifies to whom it was sent: "Rhonda Nicholson<lincolnwva@gmail.com>." All of Mey's huffing-and-puffing about "illegal solicitations" and "*en masse* telemarketing campaigns," based on Paragraph 39 of the Complaint

and Exhibit 2 (the "representation agreement"), do not change the reality that there is no personal jurisdiction over any one of the three P&M Defendants.

Furthermore, a law firm does not purposefully avail itself of doing business in a state or create a sufficient nexus with the forum simply because a website states that firm "lawyers serve all 50 states." Mey still had to, but did not, show that the exercise of personal jurisdiction satisfied the statutory and constitutional requirements of due process, as to *each* defendant challenging personal jurisdiction. *See, e.g.*, *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 268 (2017) (specifying that"[t]he requirements of *International Shoe* . . . must be met as to each defendant."). As the party inviting the Court's exercise of personal jurisdiction, Mey bears the burden of showing that it is statutorily authorized and constitutionally permissible. *See Box Alarm Leather, LLC v. Manuel*, 2023 WL 7391867, at *1 (N.D. W. Va. Sept. 14, 2023). She has failed to do so. This fact is especially compelling when a dishonest individual and her cohorts use false identities and fraudulent statements to induce contacts across the country, based on a fabrication, to later argue the fabrication is sufficient to establish personal jurisdiction.

**E. The bulk of the harms Mey alleges she suffered occurred in Puerto Rico.**

Mey continues to advance the notion that she (1) can generate fabrications about her identity; (2) can use those fabrications to solicit services originating outside of West Virginia under here false identity; (3) claim she was the victim of unlawful solicitation when she receives a response Rhonda Nicholson solicited; (4) can have that fake person transfer legal claims for "unlawful solicitations" to Mey, who then (5) can use those so called unlawful solicitations of the false identity to justify venue in the state where she lives (not her fake persona's home state).

The immutable facts are that Mey used a deceptive, fake identity to reach the Puerto Rico Law Firm to invite telephone and online contact with her fake identity. The fact of Mey's use of a

8

false identity gave rise to the fraud claims that the Puerto Rico Law Firm filed against Mey in Puerto Rico. That is where the substantial part of Mey's fraud leading to the Puerto Rico Law Firm's claims occurred. As Mey further admits, this also gives rise to her state law claims before this Court. Venue here is based on 28 U.S.C. § 1391(b)(2), the general venue statute.[2] In the Puerto Rico Lawsuit, she made an appearance, filed papers (a motion to dismiss and an answer), attended hearings, sought rulings, and resisted discovery. A year later, Mey launched an all-out counter-offensive in this Court and sued Pintas, the managing member of the Puerto Rico Law Firm and named separately the Puerto Rico Firm and the Chicago Firm.  Yet venue requirements, just like jurisdictional requirements, must be satisfied as to *each* defendant. *See Harrison Prosthetic Cradle Inc. v. Roe Dental Lab'y, Inc.*, 608 F. Supp. 3d 541, 546 (N.D. Ohio 2022).  Put simply, Mey has not shown venue is proper in West Virginia for each respective P&M Defendant.

### F. Sufficient service is at the core of a court's exercise of jurisdiction over a defendant.

Next, Mey argues that neither deficient process nor service of such deficient process is objectionable *until* the deadline to effect service has passed.  Rule 4, however, does not yield such a tortured reading. Indeed, in *Weese v. Savicorp, Inc.*, WL 6007499, at *2 (N.D. W. Va. Nov. 13, 2013), this Court held that, "[b]efore a court may exercise personal jurisdiction over an individual, the procedural requirement of service of process must be met; thus, there is a close connection

---

[2] Mey devotes thirty-four (34) paragraphs in her Complaint (¶¶ 5, 46-68, 92, 96-98, 101-104), and 08-109), each incorporated into her state law statutory and tort law claims, but not her federal TCPA claim. In these paragraphs, Mey complains she was the victim of fraudulent and abusive conduct directed at her from the Commonwealth of Puerto Rico.  She uses the questionable common law theory of "pendent venue" trying to get around the fact that the substantial part of the events giving rise to her claims (as alleged in these 34 paragraphs) occurred in Puerto Rico. Pendent venue only applies where one of the claims has a "special" venue provision (e.g., patent claims or environmental law claims), at odds with the general venue statute for the other claims. But such is not the case here. So proper venue is in the Commonwealth of Puerto Rico.

between a defendant's amenability to service of process and a federal court's ability to assert personal jurisdiction over him." *Id.* (quoting *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104 (1987)). So, despite what Mey argues here, service of the summons and complaint is a prerequisite to the district court's exercise of jurisdiction over a defendant. *See BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402 (2017) ("[A]bsent consent, a basis for service of a summons on the defendant is prerequisite to the exercise of personal jurisdiction"); *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of process and service of summons must be satisfied").[3]

At bottom, for this Court to have personal jurisdiction over each of the P&M Defendants, Mey must demonstrate that (1) the exercise of personal jurisdiction comports with the Fifth Amendment Due Process Clause, and (2) that each one of them is subject to service of process under a federal statute or rule. *See Goya Foods Inc. v. Golla Oy*, 959 F. Supp. 2d 206, 212 (D.P.R. 2013). Yet Mey cannot make that requisite showing. Accordingly, this Court lacks personal jurisdiction over the P&M Defendants and claims asserted against them by Mey. *See United States v. Hobbs,* 2018 WL 1368325, at *4 (N.D. W. Va. Mar. 16, 2018) ("As prerequisites to exercising personal jurisdiction over a defendant, a federal court must have [1] jurisdiction over the subject matter of the suit, [2] venue, [3] 'a constitutionally sufficient relationship between the defendant and the forum,' and [4] 'authorization for service of a summons on the person'.").

---

[3] A summons that has not been issued, signed, and sealed by the clerk of court is a nullity and cannot confer personal jurisdiction over the defendant; this defect is fundamental and cannot be waived. *See Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 569 (3d Cir. 1996).

### G. Mey did not respond to the remainder of the bases in the P&M Defendants' Motion to Dismiss, and her claims should accordingly be dismissed.

*First*, Mey does not deny that she filed a classic shotgun complaint. Instead, she completely ignores this basis to dismiss. Federal courts—including this Court—disfavor such pleadings. *See, e.g.*, *Weller v. JP Morgan Chase Bank, Nat'l Ass'n*, 2017 WL 5158681, at *2 (N.D. W. Va. Jan. 30, 2017) (citing *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295-97 (11th Cir. 2002)). Mey's Complaint must be dismissed on this ground alone.

*Second*, Mey's TCPA claim is merely a thinly disguised effort to concoct a reason to enjoin the court in Puerto Rico. Mey was bound to—but did not—nudge her bare claims of intentional and knowing TCPA violations where she consented to and invited calls, texts, and email across the line from conceivable to plausible violations of the TCPA.

*Third*, West Virginia's fraudulent legal process statute—by its plain terms—does not have extraterritorial reach. *See* W. Va. Code Ann. § 61-5-27. The offenses of which Mey complains did *not* occur in this state. This claim also fails as a matter of law.

*Fourth*, Mey's abuse of process claim is nothing but a bare legal conclusion drowning in self-righteous indignation. Neither Pintas nor the Chicago Law Firm are parties to the Puerto Rico Lawsuit. Mey does not (nor can she) offer any plausible facts to support the claim that they are because "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *See Ballock v. Costlow*, 430 F. Supp. 3d 146, 158 (N.D. W. Va. 2019). This claim fails against the P&M Defendants on the law.

*Fifth*, Mey offers not a single allegation from which to glean what Pintas (the individual) or either of the Law Firms intentionally did that is atrocious and utterly intolerable in a civilized community. *See, e.g., Bourne v. Mapother & Mapother, P.S.C.*, 998 F. Supp. 2d 495, 507 (S.D. W. Va. 2014)(recognizing the extreme and outrageous requirement is a notoriously high burden to

11

meet). The calls about which Mey complained were invited by and were directed to Rhonda Nicholson, not Mey. IIED is a personal tort; the doctrine of transferred intent is inapplicable in an IIED case. *See generally* William L. Prosser, *Insult and Outrage,* 44 CAL. L. REV. 40, 56–59 (1956). This claim, too, fails on the law and should be dismissed.

## II.　CONCLUSION

Pursuant to the foregoing, this Court should grant the P&M Defendants' Motion to Dismiss.

Respectfully submitted,

*/s/ Blake N. Humphrey*
Jared M. Tully (WV Bar No. 9444)
Blake N. Humphrey (WV Bar No. 14132)
FROST BROWN TODD LLP
500 Virginia Street E, Suite 1100
Charleston, WV 25301
Telephone: 304-345-0111
jtully@fbtlaw.com
bhumphrey@fbtlaw.com

Richard W. Epstein*
Jeffrey Gilbert*
GREENSPOON MARDER LLP
200 East Broward Blvd, Suite 1800
Fort Lauderdale, FL 33301
Telephone: 954-491-1120
richard.epstein@gmlaw.com
jeffrey.gilbert@gmlaw.com

Carlos R. Baralt Suárez*
BARALT LAW LLC
P.O. Box 190751
San Juan, PR 00919
Telephone: 939-625-3712
cbaralt@baraltlaw.com

*Admitted pro hac vice

**Counsel for William Pintas, P&M Law Firm LLC, & P&M Law Firm (PR), LLC**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**DIANA MEY, on behalf of herself**
**and a class of others similarly situated,**

       Plaintiff,

v.                                                                                            Civil Action No.: 5:24-cv-55

**WILLIAM PINTAS, P&M LAW**
**FIRM, LLC, P&M LAW FIRM (PR), LLC,**
**RELIANCE LITIGATION, LLC, and JAMES**
**RYDER INTERACTIVE, LLC,**

       Defendants.

## CERTIFICATE OF SERVICE

    I, Blake N. Humphrey, certify that on Monday, May 27, 2024, the foregoing ***P&M Defendants' Reply to Plaintiff Diana Mey's Response in Opposition to P&M Defendants' Motion to Dismiss*** was filed via the Court's CM/ECF filing system.

                                      */s/ Blake N. Humphrey*
                                      Blake N. Humphrey (WV Bar No. 14132)