**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling**

**DIANA MEY**, on behalf of herself and a
class of others similarly situated,

                    Plaintiff,

          v.                                        Civil Action No. 5:24-CV-55
                                                    Judge Bailey
**WILLIAM PINTAS**, **P&M LAW FIRM, LLC**,
**P&M LAW FIRM (PR), LLC**, **RELIANCE
LITIGATION LLC**, and **JAMES RYDER
INTERACTIVE LLC**,

                    Defendants.

## ORDER DENYING MOTION TO DISMISS

        Pending before this Court is William Pintas, P&M Law Firm (PR), LLC, and P&M

Law Firm, LLC's Motion to Dismiss [Doc. 31, filed May 6, 2024.  The Motion has been fully

briefed and is now ripe for decision.  Also pending is Plaintiff's Motion for Leave to File

Surreply [Doc. 60], to which the Pintas Defendants have responded.

        This case was filed on March 19, 2024.  *See* [Doc. 1].  On April 30, 2024, this Court

held a hearing and granted a temporary injunction against various parties preventing their

continuing to proceed with a civil action in the territorial court of Puerto Rico [Doc. 22].  A

hearing on a preliminary injunction was held on May 13, 2024, during which this Court

extended the temporary injunction for an additional period of fourteen (14) days [Doc. 45].

By Order entered May 17, 2024, this Court granted the requested preliminary injunction.

*See* [Doc. 50].

1

The moving defendants assert the following grounds for dismissal:

(A)  The Anti–Injunction Act, 28 U.S.C. § 2283, precludes this Court from enjoining the Puerto Rico Lawsuit;

(B)  This Court should surrender its jurisdiction under **Colorado River** abstention;

(C)  Mey lacks Article III standing;

(D)  This Court lacks personal jurisdiction over the P&M defendants;

(E)  Venue is improper in this Court;

(F)  Process is insufficient;

(G)  Service of process is insufficient; and

(H)  Mey's complaint fails to state a plausible claim for relief.

The plaintiff, Diana Mey, is a consumer advocate who has been waging a war against violators of the Telephone Consumer Protection Act ("TCPA") for over two (2) decades.[1]  On February 8, 2023, Ms. Mey received an unsolicited telephone call on her residential phone, listed on the Federal Do Not Call list, seeking to sign her up as a plaintiff in the Camp Lejeune water contamination cases.  Unable to ascertain the identity of the

---

[1] While the defendants seek to portray Ms. Mey as a professional plaintiff, "[t]he TCPA does not merely contemplate self-interested plaintiffs—it encourages them." **Cunningham v. Rapid Response Monitoring Servs., Inc.**, 251 F.Supp.3d 1187, 1197 (M.D. Tenn. 2017).  Individual litigants such as Ms. Mey are expressly authorized to act as "private attorneys general" enforcing the TCPA. **Mey v. Venture Data, LLC**, 245 F.Supp.3d 771, 784 (N.D. W.Va. 2017) (Bailey, J.) (quoting **Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.**, 401 F.3d 876, 881 (8th Cir. 2005)). In this context, the Federal Trade Commission and numerous courts have endorsed plaintiffs posing as interested consumers in order to identify the source of a call. *See, e.g.,* **Fed. Trade Comm'n v. Lifewatch Inc.**, 176 F.Supp.3d 757, 771 (N.D. Ill. 2016) ("[T]elemarketers' admissions are not rendered invalid just because Mey (successfully) tricked them into (truthfully) revealing that they sold products for Lifewatch.").

2

party or parties responsible for generating the calls, Mey engaged in a subterfuge by using a fictitious identity to gain the information and filled out a form.

On February 10, 2023, one of the callers identified the three (3) law firms on whose behalf the telemarketing calls were being made. This was confirmed by the receipt of an agreement of representation listing the firms as Cohen & Malad, LLP, Pintas & Mullins Injury Lawyers, and Nash & Franciskato Law Firm.

In an effort to resolve the issues without resort to litigation, on March 15, 2023, Mey emailed a demand letter addressed to ilevin@cohenandmalad.com, dcutshaw@cohenandmalad.com, ltoops@cohenandmalad.com, laura@pintas.com, and bill@pintas.com.

The next day, Mey was contacted by Robby Birnbaum and Chris Meier, Florida attorneys associated with the law firm Greenspoon Marder. Between March 16 and April 7, 2023, Mey exchanged numerous emails with Birnbaum and Meier, who offered assurances to Mey that Pintas wanted to settle her claims. It appears in retrospect that Pintas had no intention of settling the claims, but was simultaneously scheming to file a meritless action in Puerto Rico for the sole purpose of intimidating and coercing Mey into abandoning her claims.

On April 4, 2023—the same day that Birnbaum emailed Mey about setting up a Zoom meeting for April 7 "on getting the claim resolved"—Pintas directed the filing of a lawsuit in the Commonwealth of Puerto Rico's Court of First Instance. In that lawsuit, Pintas makes a claim for fraud, asserting that Mey somehow entrapped the firm into violating state and federal telemarketing laws. Among other attacks, Pintas accuses Mey of "extortion" and committing fraud against the United States government.

3

Pintas also seeks declaratory relief to the effect that none of the calls to Mey violated the TCPA because (a) Mey allegedly consented to be called; (b) Mey established a business relationship with the caller; (c) Mey is not a "residential subscriber" under the TCPA; and (d) there is no cause of action for a telemarketer's failure to honestly identify itself. In other words, Pintas has invited the Puerto Rican court to resolve Mey's federal claim under the auspices of declaratory judgment.

There can be little doubt that the Puerto Rico court lacked personal jurisdiction over Ms. Mey. It is undisputed that Mey has never been to Puerto Rico, owned any property in Puerto Rico, or transacted any business in Puerto Rico.

While the defendants point to the March 15 email seeking pre-suit resolution as providing jurisdiction, that claim is wholly unfounded. The proposed agreement of representation identifies the law firm in question as Pintas & Mullins Injury Lawyers. That law firm's internet website states that the firm's principal office is in Chicago, Illinois. It was to that firm in Chicago that Ms. Mey directed her email. While the website does list other locations for the firm, Puerto Rico is not listed.

At oral argument on the pending motion, counsel for the defendants represented that the phone calls in question were placed at the direction of P&M Law Firm (PR), LLC, but that representation does not change the fact that the email was sent to the Chicago firm and that the calls in question were received in West Virginia.

It is also telling that the law firm initially sent Mey an email with a copy of the Puerto Rico complaint. Both the email and the complaint were in Spanish. The defendants had no reason to believe that Ms. Mey could speak or read Spanish, which she cannot. Assuming the email was mere spam, Mey deleted it.

4

The next day, while Mey was away from her home, a process server appeared at Mey's door with what he described to Mey's husband as a lawsuit from Puerto Rico. The server left with the papers in hand, but after speaking with her husband, Mey drew a connection to the Spanish email and retrieved it from her computer's trash folder. Recognizing little more than the name "Pintas," she reached out to Birnbaum, who confirmed that his client had filed the suit.

Thereafter, Mey reached out to her longtime TCPA attorney, who in turn attempted to reach out to Pintas's Puerto Rican counsel. Mey's attorney left multiple voicemails over a period of several days in an attempt to learn what was going on. After nearly a week, Mey's attorney was finally able to reach someone named "Maria Martinez," who claimed she was unable to disclose what the lawsuit was about without first speaking to her boss. Mey's attorney asked Ms. Martinez to have someone call back. No one ever did.

As it turns out, while Mey and her attorney were actively attempting to communicate with Pintas' counsel to learn what the all-Spanish complaint was even about—and receiving only silence in response—Pintas was petitioning the Puerto Rican court for permission to serve the complaint via publication. A "summons by edict" was subsequently published in the "Primera Hora"—a Puerto Rican publication written in Spanish, of which Mey was obviously not aware and, even then, could not read.

On June 12, 2023—more than a month after Mey's attorney had reached out to Pintas's counsel asking for information about the suit—Mey received what appeared to be an all-Spanish email from a court with the phrase "ANOTACION DE REBELDIA." Mey quickly began reaching out to obtain counsel in Puerto Rico, which she was finally able to retain on June 27, 2023.

5

Only after receiving translated copies of court filings from her Puerto Rican attorneys, Mey finally realized what had transpired over the past few months. But by then—and very much by design—she was not only in default, but had missed the opportunity to remove the Puerto Rican suit to federal court. Nonetheless, Mey's Puerto Rican counsel was optimistic that the court would quickly dismiss the suit based on an obvious lack of personal jurisdiction, and filed a motion to that effect.

Unfortunately, the Puerto Rican Court failed to rule on the motion for nearly six (6) months. Eventually, the court held a hearing on January 24, 2024. Prior to the hearing, the court convened an off-the-record meeting in chambers and requested that the parties consider agreeing to defer the issue of jurisdiction in exchange for lifting the default judgment. In light of the court's comments during that meeting, and based on her attorneys' advice, Mey was left with the impression that the only way to have the default judgment lifted would be to agree to withdraw the motion to dismiss and defer the jurisdictional question until after a period of full-fledged merits discovery. The parties then went on the record and confirmed that "agreement." The delay in determining jurisdiction runs contrary to the axiom that jurisdiction should be determined first. ***Combs v. Bakker***, 886 F.2d 673 (4th Cir. 1989).

In the Puerto Rico action, Pintas has served hundreds of interrogatories, demanded production of documents and records far exceeding any relevant purpose, and has demanded that Mey and her husband travel to Puerto Rico, at their own expense, to sit for depositions.

6

As noted above, the moving defendants assert that the Anti-Injunction Act prevents this Court from enjoining the defendants from proceeding with the Puerto Rico action. As this Court noted in granting the preliminary injunction:

"In the interest of comity, the Anti-Injunction Act prohibits a federal court from granting an injunction 'to stay proceedings in a State court,' subject to three exceptions: (1) where such an injunction is 'expressly authorized by Act of Congress'; (2) where the injunction is 'necessary in aid of [the federal court's] jurisdiction'; or (3) where the injunction is entered 'to protect or effectuate [the court's] judgments.' 28 U.S.C. § 2283. A injunction issued against parties to a state court proceeding is, for purposes of the Act, considered an injunction to stay the state court proceeding itself. *See Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970)." *In re MI Windows & Doors, Inc., Prod. Liab. Litig.*, 860 F.3d 218, 224 (4th Cir. 2017).

"The All Writs Act grants federal courts the authority to 'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.' 28 U.S.C.A. § 1651(a). Although this language appears to allow for the exercise of broad judicial discretion, the All Writs Act 'has been greatly circumscribed, both by case law and by statute,' and 'generally should only be used "sparingly and only in the most critical and exigent circumstances."' *Gooch v. Life Investors Ins. Co. of Am. (In re Life Investors Ins. Co. of Am.)*, 589 F.3d 319, 330 (6th Cir. 2009)

(quoting *Wis. Right to Life, Inc. v. Fed. Election Comm'n*, 542 U.S. 1305, 1306 (2004) (Rehnquist, C.J., in chambers))."  A court's authority under the All Writs Act is nowhere more limited than when it is asked to enjoin a proceeding in state court. *United States v. Purdue Frederick Co.*, 963 F.Supp.2d 561, 567 (W.D. Va. 2013) (Jones, J.).

"The Fourth Circuit 'take[s] seriously the mandate in the Anti–Injunction Act and recognize[s] that for over two hundred years, the Act has helped to define our nation's system of federalism.' *Emp'rs Res. Mgmt. Co. v. Shannon*, 65 F.3d 1126, 1130 (4th Cir. 1995); *see also Denny's Inc. v. Cake*, 364 F.3d 521, 531 (4th Cir. 2004) ('[T]he basic harm the statute was intended to prevent was not the liberal granting of protective orders, per se, but the needless friction between state and federal courts.') (internal quotation marks and citation omitted)." *Id*.

"[A]n anti-suit injunction is an 'extraordinary' form of relief.  *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1203–04 (7th Cir. 1996); *see also Brown v. Gilmore*, 533 U.S. 1301, 1303 (2001) (Rehnquist, C.J., in chambers) ('[I]njunctive relief under the All Writs Act is to be used "sparingly and only in the most critical and exigent circumstances."' (quoting *Ohio Citizens for Responsible Energy, Inc. v. NRC*, 479 U.S. 1312, 1313 (1986) (Scalia, J., in chambers)))." *In re Jimmy John's Overtime Litig.*, 877 F.3d 756, 762 (7th Cir. 2017).

"For purposes of the Anti–Injunction Act, the term 'proceedings' includes 'all steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process." ***Hill v. Martin***, 296 U.S. 393, 403 (1935).

"For over two-hundred years, the Anti–Injunction Act 'has helped to define our nation's system of federalism.' ***Employers Res. Mgmt. Co., Inc. v. Shannon***, 65 F.3d 1126, 1130 (4th Cir.1995). The three exceptions to the Anti–Injunction Act's prohibition against enjoining state court proceedings 'are construed narrowly, ... and are not [to] be enlarged by loose statutory construction.' ***Id***. (internal quotation marks omitted) (alteration in original). The 'necessary in aid of its jurisdiction' exception to the Anti–Injunction Act is widely understood to apply most often when a federal court was the first in obtaining jurisdiction over a res in an in rem action and the same federal court seeks to enjoin suits in state courts involving the same res. ***In re: Prudential Ins. Co. of Am. Sales Practice Litig.***, 261 F.3d 355, 365 (3d Cir. 2001); 17 Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, ***Federal Practice and Procedure 2d***, § 4225 (2d ed.1988). However, support for a broader application of the 'necessary in aid of its jurisdiction' exception can be found in the Supreme Court's statement that both this exception and the third exception to the Anti–Injunction Act allow federal injunctive relief against state court proceedings where it is 'necessary to prevent a state court from so interfering

9

with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.' **Atlantic Coast Line R.R. Co.**, 398 U.S. at 295.  And as some legal scholars have pointed out, '[t]here have been some signs of such flexibility in the recent cases.' **Federal Practice and Procedure 2d** § 4225 at 531." **In re Am. Honda Motor Co., Inc., Dealerships Rels. Litig.**, 315 F.3d 417, 439 (4th Cir. 2003).

The Seventh Circuit has stated:

More recently, however, we interpreted "in aid of jurisdiction" narrowly.  See **Adkins** [**v. Nestle Purina PetCare Co.**, 779 F.3d 481, 483–84 (7th Cir. 2015)].  In **Adkins**, we said that "[m]any decisions by the Supreme Court over the last 30 years tell us that 'jurisdiction' means adjudicatory competence." **Id**. at 484.  And we explained that "[w]e have never viewed parallel in personam actions as interfering with the jurisdiction of either court." **Id**. (quoting **Vendo Co. v. Lektro-Vend Corp.**, 433 U.S. 623, 642 (1977) (plurality opinion)). At the same time, we acknowledged that there might be "extreme situations in which a state court could imperil a federal court's adjudicatory power over in personam actions," citing our prior decision in **Winkler** as an example. **Id**. at 485.  We also recognized that state litigation can affect federal litigation if the state court

reaches a final decision first, thus potentially resulting in claim and issue preclusion. *Id*. at 484.  However, we clarified that "the potential effect of one suit on the other does not justify an injunction." *Id*.  Thus, although the parties argued that ending the parallel state litigation would be "prudent, beneficial, [and] helpful," we rejected "the unstated premise ... that [the Anti-Injunction Act] allows whatever a federal court thinks is good litigation management." *Id*. at 485.

*In re Jimmy John's Overtime Litig.*, 877 F.3d 756, 764–65 (7th Cir. 2017).

In *Winkler v. Eli Lilly & Co.*, the Court noted that the "necessary in aid of jurisdiction" exception "should be construed 'to empower the federal court to enjoin a concurrent state proceeding that might render the exercise of the federal court's jurisdiction nugatory[.]'" 101 F.3d 1196 (7th Cir. 1997) (citing Martin H. Redish, *The Anti–Injunction Statute Reconsidered*, 44 U. Chi. L.Rev. 717, 754 (1977)).  *See also*, *In re Prudential Ins. Co. of America Sales Practice Litigation*, 261 F.3d 355, 365 (3d Cir. 2001).

"Even before a federal judgment is reached, however, the preservation of the federal court's jurisdiction or authority over an ongoing matter may justify an injunction against actions in state court. Such 'federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'

11

*Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295 (1970)." *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 335 (2d Cir. 1985).

"To the extent that the impending state court suits were vexatious and harassing, our interest in preserving federalism and comity with the state courts is not significantly disturbed by the issuance of injunctive relief. *See In re: Corrugated Container Antitrust Litigation*, 659 F.2d at 1335 [(5th Cir. 1981), *cert. denied,* 456 U.S. 936]." *Id*. at 337.

A factor that many courts, including the Fourth Circuit, have considered is whether the state court plaintiff has exhibited any bad faith with regard to the federal action. In *Miller v. Brooks*, the Fourth Circuit held, among other things, that the district court did not abuse its discretion in enjoining a state court proceeding "to rectify the injustice [it] found [the plaintiffs] had perpetrated by engaging in misconduct in order to defeat such jurisdiction." 315 F.3d at 437; *accord, Diet Drugs II*, 369 F.3d at 301 (3d Cir. 2004) (district court's finding that plaintiff's counsel had showed bad faith and conduct supported injunction). *United States v. Purdue Frederick Co.*, 963 F. Supp. 2d 561, 574 (W.D. Va. 2013) (Jones, J.).

The facts of this case establish that the Puerto Rico action is tantamount to a SLAPP proceeding, which is a version of intimidation litigation in which a plaintiff files a defamation action not necessarily to win but to intimidate and discourage present and future participation in public

12

discourse through prolonged litigation. *MRR Southern, LLC v. Citizens for Marlboro County*, 2013 WL 97793 (D.S.C. Jan. 8, 2013) (Childs, J.). "Generally speaking, a SLAPP suit is an invalid, abusive action based on spurious allegations, brought by a disproportionately well-financed plaintiff seeking to intimidate and dissuade citizens or classes of individuals from exercising their First Amendment or statutory rights to seek redress by petitioning federal agencies or by initiating court proceedings. A SLAPP suit seeks to burden defendants by the cost of a legal defense and the fear of civil liability, until they abandon their claims or cease to bring such claims." *Secretary of Labor, Mine Safety and Health Administration (MSHA), On Behalf of Reuben Shemwell, Complainant v. Armstrong Coal Co., Inc. & Armstrong Fabricators, Inc., Respondents*, 35 FMSHRC 726, 728, 2013 WL 1856604, at *2 (Mar. 14, 2013).

The Puerto Rico litigation was instituted even though personal jurisdiction was lacking in a jurisdiction far from the situs of the alleged illegal phone calls and texts. Service of process was allegedly obtained through underhanded methods. The suit, inter alia, seeks to have the Puerto Rico court determine the legality of the calls, and involves the TCPA, a subject matter over which the Puerto Rico court has no jurisdiction.

With respect to the issue of having the Puerto Rico court determine the legality of the calls, "[w]hen a lawsuit 'seeks a declaration of non-liability to preemptively defeat actions grounded on tort claims involving rights

13

already accrued by reason of alleged wrongful conduct, various courts have held [such an] application is not a warranted purpose of the [declaratory judgment action].' *Dow Jones & Co., Inc. v. Harrods, Ltd.*, 237 F.Supp.2d 394, 426 (S.D. N.Y. 2002).  As in those cases, Plaintiffs essentially ask the Court 'to rule on the viability of a hypothetical claim which may never be brought, and an affirmative defense that may never be asserted.' *Transamerica Life Ins. Co. v. Daibes Gas Holdings Atlanta, L.L.C.*, 2018 WL 5033755, at *5 (D. N.J. Oct. 17, 2018). 'This ruling would constitute an advisory opinion.' *Id.*; *see also* *Progressive Mountain Ins. Co. v. MJ Night Rider Transp. LLC*, 2019 WL 5295797, at *3 (N.D. Ga. Oct. 3, 2019) (quoting *Atlanta Gas Light Co.* [*v. Aetna Cas. and Sur. Co.*], 68 F.3d 409, 414 [11th Cir. 1995] and dismissing action seeking a declaratory judgment)." *Balarezo Fam. Chiropractic, LLC v. State Farm Mut. Auto. Ins. Co.*, 2024 WL 1343178, at *14 (S.D. Fla. Feb. 12, 2024).

It also appears that the Puerto Rico territorial court lacks the subject matter jurisdiction to handle and decide TCPA cases.   The statute, 47 U.S.C. § 227(c)(5) provides that a person may bring a TCPA action in an appropriate court of that state.  It goes without saying that Puerto Rico is not a state.

The Second Circuit has determined that when a statute says "state," it does not include Puerto Rico:

14

We do note, however, that in numerous other statutes when Congress has intended the term state to apply to Puerto Rico, it has done so explicitly and expressly. *See, e.g.,* 15 U.S.C. § 1171(b) (1976) (transportation of gambling devices); 16 U.S.C. § 3371(h) (transportation of illegally taken wildlife); 18 U.S.C. § 891(8) (1976) (extortionate credit transactions); 18 U.S.C. § 921(a)(2) (jurisdictional requirement for firearms violation); 18 U.S.C. § 1953(d)(1) (1976) (interstate transportation of wagering paraphernalia); 18 U.S.C. § 1955(b)(3) (1976) (illegal gambling); 18 U.S.C. § 1961(2) (1976) (racketeering influenced and corrupt organizations); 28 U.S.C. § 1332(d) (1976) (defining "state" for purposes of diversity jurisdiction). Significantly, too, in ***Fornaris v. Ridge Tool Co.***, 400 U.S. 41 (1970), the Supreme Court refused to include Puerto Rico within the term "state" for purposes of a direct appeal under 28 U.S.C. § 1254(2).

***United States v. Diaz***, 712 F.2d 36, 39 (2d Cir. 1983).

While the great majority of cases certainly discourage an anti-suit injunction, none of those cases dealt with cases where there is no basis for personal jurisdiction, underhanded strategies, and improper subject matter. This Court finds that the Puerto Rico action is burdensome, vexatious, and intended to deprive Ms. Mey of her day in court in the proper venue.

15

[Doc. 50 at 6–13].

Based upon the above authority, this Court finds that the Anti-Injunction Act does not prevent and this Court has issued a preliminary injunction.

The second argument raised by the moving defendants is that this Court should yield its jurisdiction under the doctrine established in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). "'The rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.' *McClellan v. Carland*, 217 U.S. 268, 282 (1910). However, under the *Colorado River* doctrine, a federal court may abstain from exercising jurisdiction over a duplicative federal action for purposes of 'wise judicial administration.' 424 U.S. at 818. But a court must apply *Colorado River* abstention 'parsimoniously.' *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005). This requires recognizing that our task is not 'to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," that can suffice under *Colorado River* to justify the surrender of that jurisdiction.' *Moses H. Cone* [*Mem. Hosp. v. Mercury Const. Corp.*], 460 U.S. [1,] 25–26 [(1983)]." *vonRosenberg v. Lawrence*, 849 F.3d 163, 167 (4th Cir. 2017).

In deciding whether such exceptional circumstances exist, a court must first determine whether the federal and state actions are parallel. State and federal suits are parallel only "if substantially the same parties litigate substantially the same issues in different forums." *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of*

16

*Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991).  It is not enough for parties in the state and federal actions to be merely aligned in interest.

"'[W]e have strictly construed the requirement of parallel federal and state suits, requiring that the parties involved be almost identical.' *Chase Brexton*, 411 F.3d at 464. For example, in *McLaughlin v. United Virginia Bank*, we found the state and federal actions not parallel where the state suit involved claims by several corporations and the federal suit involved personal claims by the president of those corporations. 955 F.2d 930, 934–35 (4th Cir. 1992).  We held *Colorado River* abstention not proper even though resolution of the state suit might have had a *res judicata* effect on some of the claims in the federal action. *See id.* at 934 n.*." *vonRosenberg*, 849 F.3d at 168.

"In addition, even state and federal claims arising out of the same factual circumstances do not qualify as parallel if they differ in scope or involve different remedies. *See, e.g., Chase Brexton*, 411 F.3d at 464; *New Beckley*, 946 F.2d at 1074 ('[S]ome factual overlap does not dictate that proceedings are parallel.').  Rather, a federal court may abstain under *Colorado River* only if it 'concludes that the parallel state-court litigation will be an adequate vehicle for the *complete* and prompt resolution of the issues between the parties.' *Moses H. Cone*, 460 U.S. at 28 (emphasis added).  If there is any serious doubt that the state action would resolve *all* of the claims, 'it would be a serious abuse of discretion' to abstain. *Id.*" *Id.*

"Finally, even if the federal and state suits are duplicative, *Colorado River* requires a court to balance carefully several other factors before abstaining:

17

(1) whether the subject matter of the litigation involves property where the

first court may assume *in rem* jurisdiction to the exclusion of others; (2)

whether the federal forum is an inconvenient one; (3) the desirability of

avoiding piecemeal litigation; (4) the relevant order in which the courts

obtained jurisdiction and the progress achieved in each action; (5) whether

state law or federal law provides the rule of decision on the merits; and (6)

the adequacy of the state proceeding to protect the parties' rights.

**Chase Brexton**, 411 F.3d at 463–64.  A court must look at these factors holistically, 'with

the balance heavily weighted in favor of the exercise of jurisdiction.' **Moses H. Cone**, 460

U.S. at 16." **Id**.

In fact, Federal courts have an "virtually unflagging obligation of the federal courts

to exercise the jurisdiction given them." **Colorado River**, 424 U.S. at 817.

This Court finds that the two (2) proceedings are not parallel.  The Puerto Rico

action seeks relief that is different from that sought before this Court, the action was

brought in a forum having no jurisdiction over the plaintiff here, the Puerto Rico court lacks

subject matter to address certain of the claims.

In considering whether exceptional circumstances exist, this Court finds that the

exceptional circumstances demand that this Court not surrender jurisdiction.    Courts

should consider the "vexatious or contrived" nature of the concurrent actions.  **Driftless

Area Land Conservancy v. Valcq**, 16 F.4th 508, 526 (7th Cir. 2021); **Nazario-Lugo

v. Caribevision Holdings, Inc.**, 670 F.3d 109, 115 (1st Cir. 2012); **Taveras v. Bank of

Am., N.A.**, 89 F.4th 1279, 1286 (11th Cir. 2024).  In granting the temporary restraining

order, this Court already found that the Puerto Rican lawsuit appears to be a "vexatious lawsuit designed to harass Mey." [Doc. 22 at 7].  In granting the anti-suit injunction, this Court similarly found that "the Puerto Rico action is burdensome, vexatious, and intended to deprive Ms. Mey of her day in court in the proper venue." [Doc. 50 at 13].  Thus, it would be inappropriate for this Court to now yield to that same Puerto Rican proceeding.

Courts should also consider whether there is actually concurrent jurisdiction across the two forums.  ***Driftless Area Land Conservancy***, 16 F.4th at 526 (weighing the "presence or absence of concurrent jurisdiction" and the "order in which jurisdiction was obtained").  As this Court has found, the Puerto Rican court plainly lacks personal jurisdiction over Mey.  [Doc. 50 at 3] ("There can be little doubt that the Puerto Rico court lacked personal jurisdiction over Ms. Mey.").  Relatedly, given that this Court recently enjoined the concurrent Puerto Rican lawsuit in aid of its own jurisdiction, there is no reason for this Court to now yield under discretionary abstention principles.

Courts should also consider whether state or federal law will be applied.  ***Driftless Area Land Conservancy***, 16 F.4th at 526  (weighing the "source of governing law—federal or state").  Here, Mey's principal claims arise under the TCPA, and this Court has the greatest interest in deciding those issues of federal law.  Moreover, the balance of Mey's claims arise under West Virginia law.  A federal court sitting in West Virginia is best suited to resolve these state law claims—not the Puerto Rican Court of First Instance.

Courts also consider whether removal jurisdiction was available in the state court action.  ***Id.*** (weighing the "availability of removal").  As a result of the Pintas Defendants' gamesmanship, Mey was held in default and missed the opportunity to remove the Puerto

Rican suit to federal court.  The moving defendants should not be rewarded by depriving Mey of a federal forum for her federal claims.

For all these reasons, *Colorado River* abstention is unwarranted.

Next, the moving defendants argue that the plaintiff lacks standing to assert her claims.  To establish Article III standing, a plaintiff must plausibly allege that they have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  The moving defendants takes exclusive aim at the first element, injury-in-fact, arguing that the calls at issue do not amount to cognizable injuries for purposes of Article III standing.  That argument—based exclusively on *Spokeo*—has been squarely rejected by both this Court and the Fourth Circuit.  *See Mey v. Venture Data, LLC*, 245 F.Supp.3d 771, 775 (N.D. W.Va. 2017) (Bailey, J.) (holding that the receipt of unwanted calls is a sufficiently concrete harm to confer standing under Spokeo); *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 652–53 (4th Cir. 2019) (same). These decisions are also in line with other courts having decided the same issue. *See, e.g., Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 93 (2d Cir. 2019); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017); and *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 690 (5th Cir. 2021).

Moving defendants next argue that this Court lacks personal jurisdiction over them. This Court finds that it has specific jurisdiction over the moving defendants.

In determining whether specific jurisdiction exists, this Court must consider: "(1) whether and to what extent the defendant purposely availed itself of the privileges of

conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally reasonable." **Mey v. Matrix Warranty Solutions, Inc.**, 2021 WL 11421819, at *4 (N.D. W.Va. Sept. 2, 2021) (Bailey, J.) (cleaned up).

As this Court has previously recognized, "[e]ven a single contact with the forum state can constitute purposeful availment sufficient to satisfy due process requirements." **Id.** (citing **Burger King Corp. v. Rudzewicz**, 471 U.S. 462, 475 n.18 (1985)).  The moving defendants' contacts with the State far exceed what is constitutionally required.

First, as a direct result of the illegal solicitations, Mey received a representation agreement on behalf of "Pintas & Mullins Injury Lawyers."  By agreeing to represent a West Virginia resident, the Pintas Defendants necessarily contemplated a substantial, profitable, and continuing relationship with a resident of the forum state.  Because the Pintas Defendants purposely availed themselves of the privilege of representing a West Virginia resident, they necessarily availed themselves of the privilege of doing business in the State.  Indeed, the firm's website proudly provides that "our personal injury lawyers serve all 50 states." *See* www.pintas.com (last visited May 20, 2024).

Second, given the nature of en masse telemarketing campaigns, this Court can also reasonably infer that the Pintas Defendants' contacts with the State extend beyond Mey. Notably, the Pintas Defendants do not suggest that their contacts with this State are exclusive to Mey.  Nor do they suggest that the firm's marketing efforts stopped at the West Virginia border or that the firm is without a single West Virginia client for the Camp Lejeune litigation.  Though Mey has the burden of establishing personal jurisdiction, the

Pintas Defendants' motion does not actually argue the absence of any such contacts. Taken together, this Court can reasonably infer that the Pintas Defendants' contacts with the State extend beyond Mey.

By directing its marketing efforts into West Virginia, the moving defendants hope to secure West Virginia clients for the Camp Lejeune litigation. And with each West Virginia client, the Pintas Defendants expect to profit from the provision of legal services, which will necessarily be rendered over a significant period of time. *See Johnson v. Diamond Shine, Inc.*, 890 F.Supp.2d 763, 770 (W.D. Ky. 2012) (finding that out-of-state defendant purposely availed itself of forum state when contract with forum resident contemplated substantial and continuing relationship within forum state); *Southwest Research Inst. v. California Fueling, LLC*, 509 F.Supp.3d 656, 665 (W.D. Tex. 2020) ("[W]here the defendant deliberately has engaged in significant activities within a State or has created continuing obligations between himself and residents of the forum, he has availed himself of the privilege of conducting business there"). Because the "Pintas & Mullins Injury Lawyers" have agreed to represent a West Virginia resident and have exploited the West Virginia market for commercial gain, the Pintas Defendants have purposely availed themselves of the privilege of conducting business in the State.

The second element "demands that the suit arise out of *or relate to* the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021) (quotations and citations omitted). A plaintiff may satisfy the nexus requirement by showing that the lawsuit either "arises out of" or "relates to" the defendant's contacts with the forum state. *Bradley v. DentalPlans.com.*, 617 F.Supp.3d 326, 336 (D. Md. 2022) (Blake, J.). Here, specific personal jurisdiction can be established based on two (2)

22

forms of contact with the forum state: (1) The Pintas Defendants' offer of legal services to a West Virginia resident; and (2) the forum-based contacts of their agents, Reliance Litigation and JRI.

First, the Pintas Defendants directed their agents to place telephone calls into West Virginia in thier effort to secure clients for the Camp Lejeune litigation.

Second, as evidenced by the representation agreement, the Pintas Defendants offered their legal services to Mey, a West Virginia resident.  This engagement was only made possible by the illegal calls that are the subject of this lawsuit.  Though this lawsuit does not "arise out of" the provision of legal services, the contacts incidental to representing West Virginia residents in the Camp Lejeune litigation plainly "relate to" the subject matter of this lawsuit, which is the illegal solicitation of those services.

Third, this Court may exercise specific jurisdiction over the Pintas Defendants based on the forum-based acts of their agents, Reliance Litigation and JRI. ***Matrix Warranty Solutions, Inc.***, 2021 WL 11421819, at *5-6 (exercising personal jurisdiction based on an agent's contacts with the forum state); ***Bilek v. Nat'l Cong. of Emps., Inc.***, 470 F.Supp.3d 857, 861–62 (N.D. Ill. 2020) (same); ***Bradley***, 617 F.Supp.3d at 337–338 (same).  Here, Mey alleges a series of unwanted calls from Reliance Litigation and JRI.  Each of these calls was placed for the purposes of promoting services of the Pintas Defendants. The Pintas Defendants have already admitted that the calls at issue were placed at the specific direction of P&M Law (PR), which is a mere alter ego of P&M Law and both of which are controlled by William Pintas.  Because Reliance Litigation and JRI's forum-based contacts plainly "relate to" the subject matter of this litigation, and they were acting as agents of the Pintas Defendants, the nexus requirement is satisfied.

23

This Court recently exercised personal jurisdiction over similar defendant law firms based on nearly identical claims and circumstances. *See **Mey v. Levin, Papantonio, et al.***, Civil Action No. 5:23-CV-46, [Doc. 33 at 12] (N.D. W.Va. July 18, 2023) (Bailey, J.) ("plaintiff has provided sufficient facts for this Court to reasonably infer that the calls were made by an agent under Levin Law's control"); Civil Action No. 5:23-CV-46 [Doc. 32 at 15] (N.D. W.Va. July 18, 2023) (Bailey, J.) ("At this stage of litigation, plaintiff has provided sufficient facts for this Court to reasonably infer that Principal Law is directly responsible for the telemarketing calls or that the calls were made by a vendor under Principal Law's control. Based on a review of the pleadings and briefing in this case, the allegations made by the plaintiff plausibly connect Principal Law to the alleged calls and therefore are sufficient to state a claim under the TCPA.").

Aside from stating the general principle of law, the Pintas Defendants do not otherwise explain how this Court's exercise of jurisdiction would be constitutionally unreasonable. ***Burger King Corp. v. Rudzewicz***, 471 U.S. 462, 477 (1985) (providing that the defendant has the burden to "present a compelling case" that jurisdiction is unreasonable). Inasmuch as the moving defendants have failed to identify any potential for prejudice or inconvenience, there is no basis for this Court to presume that jurisdiction would be constitutionally unreasonable.

The moving defendants' next argument is that venue does not lie in this District. Venue is proper in any district "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b). Mey's principal claims arise under the TCPA, alleging the receipt of numerous unlawful solicitations. Because Mey is a resident of Ohio County, West Virginia, and she received the offending calls in this district, venue

24

properly lies in this District.  *See Mey v. Castle L. Grp., PC*, 416 F.Supp.3d 580, 586 (N.D.
W.Va. 2019).

The moving defendants, however, argue a nexus to Puerto Rico, claiming "Mey
used a deceptive fake identify to contact the Puerto Rico Law Firm to invite telephone and
online contact with her." [Doc. 32 at 17].  This is a misrepresentation of the facts in this
case.  Mey provided a pseudonym only in response to unsolicited calls, which predated any
contact she might have had with the Pintas Defendants.  Even then, Mey did not receive
the calls in Puerto Rico, nor is there any indication that the calls were placed from Puerto
Rico.

Though P&M Law (PR) is based in Puerto Rico, Puerto Rico has no discernable
nexus to Mey's TCPA claims.  But, even if some of those events occurred in Puerto Rico,
the venue statute allows for the possibility that a plaintiff will have a choice of venue among
multiple districts where a substantial portion of the events giving rise to his claims occurred.
*Treppel v. Reason*, 793 F.Supp.2d 429, 435 (D.D.C. 2011) (Bates, J.); *Setco Enterprises
Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir.1994) ("[W]e ask whether the district the
plaintiff chose had a substantial connection to the claim, whether or not other forums had
greater contacts.").

This Court may resolve the balance of Mey's claims under the doctrine of pendent
venue.  Under that doctrine, "a federal court may *in its discretion* hear pendent claims
which arise out of the same nucleus of operative facts as a properly venued federal claim,
even if venue of the pendent claim otherwise would not lie."  *Mahmood v. Nielsen*, 312
F.Supp.3d 417, 423 (S.D. N.Y. 2018); *High River Ltd. P'ship v. Mylan Lab'ys, Inc.*, 353
F.Supp.2d 487, 493 (M.D. Pa. 2005); *Nine Point Mesa of Nashville, Inc. v. Nine Point*

*Mesa of Lexington, Inc.*, 769 F.Supp. 259, 263 (M.D. Tenn. 1991); ***Pacer Glob. Logistics, Inc. v. Nat'l Passenger R.R. Corp.***, 272 F.Supp.2d 784, 789 (E.D. Wis. 2003); ***Basile v. Walt Disney Co.***, 717 F.Supp.2d 381, 387 (S.D. N.Y. 2010).  In deciding whether to exercise pendent venue, "a court must consider factors such as judicial economy, convenience to the parties and the court system, avoidance of piecemeal litigation and fairness to the litigants."   ***Hsin Ten Enterprise USA, Inc. v. Clark Enterprises***, 138 F.Supp.2d 449, 462 (S.D. N.Y.2000) (quotations and citations omitted).

Here, the balance of Mey's claims share common parties and the same nucleus of operative facts, which arise from the moving defendants' apparent efforts to intimidate Mey out of bringing her TCPA claims and to preempt this Court's ability to resolve those claims. Though many of the acts giving rise to these claims occurred outside of this district, they are intimately related to Mey's properly-venued TCPA claims and the resulting harms occurred in this district.  In addition to the relatedness of claims, equitable concerns also counsel in favor of pendent venue.  Most critically, it would obviate the need for piecemeal litigation in a Puerto Rican court.  This Court recently enjoined the moving defendants from proceeding with their vexatious lawsuit in Puerto Rico.  It would make little sense to now defer to the Puerto Rican court to decide Mey's resulting claims for fraudulent legal process, abuse of process, and intentional infliction of emotional distress.

The moving defendants next seek dismissal on the ground that the summons served upon them lacked the court's seal, making service defective and objectionable.  While it may appears that the summons are in fact missing the court seal, this would constitute a technical deficiency which does not support a dismissal.  The defendants have received

notice of the proceeding, have made a general appearance, and have demonstrated no prejudice.

As the Southern District of New York has held:

The primary function of Fed. R. Civ. P. 4, which governs the service of process in federal court actions, is to "provide the mechanism for bringing notice of the commencement of an action to defendant's attention . . . ." Wright & Miller, **Federal Practice and Procedure**, § 1063, at 225.  The principle of due process, which underpins the mechanisms of Rule 4, requires "the giving of notice in such a manner that there can be little doubt that the party has actual notice of the claims in order to appear and defend." **S.E.C. v. Tome**, 833 F.2d 1086, 1092 (2d Cir. 1987) (citing **Wuchter v. Pizzutti**, 276 U.S. 13, 24 (1928)).  The "liberal amendment of process policy" of Rule 4(h) indicates that when a defendant receives actual notice of a lawsuit brought against him, technical imperfections with service will rarely invalidate the service. See Wright & Miller, supra, § 1088, at 31–32.2.

Fed. R. Civ. P. 4(b) requires that "[t]he summons shall be signed by the clerk [and] be under the seal of the court."  In the case at bar, there is no dispute that these requirements were missing from the five summons served upon Onitiri on December 22, 1988.  The Court has determined, however, that these defects did not cause substantial prejudice to defendants, and did not preclude sufficient notice of the lawsuit from being given to defendants consistent with the underlying policy considerations relating to Rule 4. Plaintiffs' position is strengthened by the fact that the current lawsuit was

27

brought as an ancillary action to a dispute previously before this Court where plaintiffs acted as legal counsel for all five defendants. For these reasons, defendants have little argument that they did not receive the requisite notice under the circumstances of this case.

***Durant v. Traditional Invs., Ltd.***, 1990 WL 33611, at *3–4 (S.D. N.Y. Mar. 22, 1990) (footnote omitted).

In ***Gottfried v Frankel***, 818 F.2d 485, 493 (6th Cir. 1987), the Sixth Circuit held that "Rule 4 is a flexible rule which principally requires sufficient notice to the party of claims brought against it, and dismissal is not appropriate unless the party has been prejudiced." (citing ***United Food and Commercial Workers Union v. Alpha Beta Co.***, 736 F.2d 1371, 1382 (9th Cir. 1984)); ***People of State of Illinois ex rel. Hartigan v. Peters***, 871 F.2d 1336, 1340 (7th Cir. 1989) ("As other courts have suggested, one circumstance [which] we may consider in evaluating the sufficiency of notice is whether the alleged inadequacies in the notice prejudiced the [defendant]." (citations omitted)).

In fact, however, the original and one copy of the summons did bear the Court's embossed seal, which sometimes does not show up when the summons is copied. In today's electronic age, summons are photocopies or scanned and emailed to other persons. This Court is not aware of a communication system which would reproduce embossing - a design which stands out in relief.

This Court will not dismiss this action on the basis of a missing seal.

The next argument brought forward by the moving defendants is that the service of process is insufficient. Since the filing of the motion to dismiss, the plaintiff has completed what appears to be proper service on the moving parties. *See* [Docs. 59, 64 & 65].

28

Finally, the moving defendants contend that the complaint herein fails to state a plausible claim for relief.  In doing so, the moving defendants trot out their misleading refrain that the plaintiff invited the telephone calls.  After receiving the initial telephone to plaintiff's "do not call" phone number, she provided false information and received a proposed contract of representation from the Chicago law firm, of which the principal is William Pintas.  When she emailed the counsel for the law firm in an effort to resolve the matter short of litigation, she was sued in Puerto Rico by the Puerto Rico law firm, of which the principal is William Pintas.  These allegations are sufficient to nudge the complaint over the line to plausible.

With respect to the state law claims, the moving defendants contend that the statute lacks extraterritorial reach.  The fraudulent legal process statute, W.Va. Code § 61-5-27a, punishes fraudulent "official proceeding[s]," defined as "a proceeding involving a legal process or other process of a tribunal of this state or of the United States," W.Va. Code § 61-5-27.  A "tribunal" is further defined as "a court or other judicial or quasi-judicial entity, or an administrative, legislative, or executive body, or that of a political subdivision, created or authorized under the constitution or laws of this state or of the United States."  Id.  As the Pintas Defendants recognize, "Congress even ratified Puerto Rico's Constitution, under which Puerto Rico courts operate." [Doc. 42 at 2].  Thus, the Puerto Rican Court of First Instance is a "tribunal" within the meaning of the fraudulent legal process statute.  In addition to pendant venue, venue for this claim is otherwise proper because the harm was directed at and suffered by a West Virginia resident.

For the reasons discussed above, William Pintas, P&M Law Firm (PR), LLC, and P&M Law Firm, LLC's Motion to Dismiss, filed May 6, 2024 **[Doc. 31]** is **DENIED**. Plaintiff's Motion for Leave to File Surreply **[Doc. 60]** is **GRANTED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: June 14, 2024.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

30