**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**DIANA MEY, on behalf of herself
and a class of others similarly situated,**

Plaintiff,

**v.**                                                      **Civil Action No.: 5:24-cv-55**

**WILLIAM PINTAS, P&M LAW
FIRM, LLC, P&M LAW FIRM (PR), LLC,
RELIANCE LITIGATION, LLC, and JAMES
RYDER INTERACTIVE, LLC,**

Defendants.

---

**<u>P&M-DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES
TO COMPLAINT AND P&M-DEFENDANTS' COUNTERCLAIMS</u>**

Willliam Pintas, P&M Law Firm, LLC, and P&M Law Firm (PR), LLC (the "P&M-Defendants")[1] file their Answer and Affirmative Defenses to Plaintiff, Diana Mey's putative Class Action Complaint, *see* ECF No. 1 (the "Complaint"), and in support thereof state as follows:

**<u>COMPLAINT</u>**

Answering the three unnumbered paragraphs on page 1 of the Complaint, the P&M-Defendants deny the respective immaterial, impertinent, and scandalous matters asserted therein.

**Preliminary Statement**

1.       Each P&M-Defendant denies the allegations in paragraph 1 of the Complaint except each admits that the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, is a federal statute.

2.       Each P&M-Defendant denies the allegations in paragraph 2 of the Complaint.

---

[1] The P&M-Defendants may also from time to time herein be referred to separately as "Pintas," "P&M-Chicago", and "P&M-(PR)."

3.      Each P&M-Defendant denies the allegations in paragraph 3 of the Complaint.

4.      Each P&M-Defendant denies the allegations in paragraph 4 of the Complaint.

5.      Each P&M-Defendant denies the allegations in paragraph 5 of the Complaint.

**Parties and Jurisdiction**

6.      Each P&M-Defendant denies the allegations in paragraph 6 of the Complaint except each admits Mey claims to reside in Wheeling West Virginia, and in Illinois.

7.      Each P&M-Defendant admits the allegations in paragraph 7 of the Complaint.

8.      Each P&M-Defendant denies the allegations in paragraph 8 of the Complaint except each admits Pintas is an individual.

9.      Each P&M-Defendant denies the allegations in paragraph 9 of the Complaint.

10.     Each P&M-Defendant denies the allegations in paragraph 10 of the Complaint except that Reliance Litigation is a California limited liability company.

11.     Each P&M-Defendant denies the allegations in paragraph 11 of the Complaint except each lacks knowledge or information necessary to admit or deny where James Ryder Interactive has a place of business.

12.     Each P&M-Defendant denies the allegations in paragraph 12 of the Complaint.

13.     Each P&M-Defendant denies the allegations in paragraph 13 of the Complaint except that this Court has federal question jurisdiction.

14.     Each P&M-Defendant denies the allegations in paragraph 14 of the Complaint.

**Defendants' Illegal Calling**

15.     Each P&M-Defendant denies the allegations in paragraph 15 of the Complaint except that Mey's business model has been rightly derided by the industry and that this Court heaps praise on Mey, notwithstanding her own underhanded and deceptive methods.

2

16.     Each P&M-Defendant denies the allegations in paragraph 16 of the Complaint except that P&M-Chicago and P&M-PR represent clients in mass tort claims, including those exposed to contaminated water at Camp Lejeune.

17.     Each P&M-Defendant denies the allegations in paragraph 17 of the Complaint except that the Promise to Address Comprehensive Toxics Act ("PACT Act"), among other things, expands VA health care and benefits for Veterans exposed to burn pits and other toxic substances to provide generations of Veterans – and their survivors – with care and benefits they have earned.

18.     Each P&M-Defendant lacks knowledge or information necessary to admit or deny what Mey alleges in paragraph 18 about what "law firms" have "collectively spent" "seeking to represent Camp Lejeune victims" and, therefore, each denies the allegations in paragraph 18 of the Complaint.

19.     Each P&M-Defendant lacks knowledge or information necessary to admit or deny what Mey alleges in paragraph 19 about what Mey knows on "information and belief" and, therefore, denies the allegations in paragraph 19 except that P&M contracted with Reliance Litigation who contracted with James Ryder Interactive.

20.     Each P&M-Defendant lacks knowledge or information necessary to admit or deny what Mey alleges in paragraph 20 about what anyone other than P&M did, therefore, each denies the allegations in paragraph 20.

21.     Each P&M-Defendant denies the allegations in paragraph 21 of the Complaint

22.     Each P&M-Defendant denies the allegations in paragraph 22 except that each lacks knowledge or information necessary to admit or deny what Mey alleges in paragraph 22 about Mark (Mey's husband) or herself, or what is being alleged about the TCPA or the American Bar Association, and what Mey says she was determined to do other than her standard business model.

23.     Each P&M-Defendant denies the allegations in paragraph 23 of the Complaint.

24.     Each P&M-Defendant denies the allegations in paragraph 24 except that each lacks knowledge or information necessary to admit or deny what Mey alleges in paragraph 24 about calls she received.

25.     Each P&M-Defendant denies the allegations in paragraph 25 except that each lacks knowledge or information necessary to admit or deny what Mey alleges in paragraph 25 about calls she received.

26.     Each P&M-Defendant denies the allegations in paragraph 26 except that each lacks knowledge or information necessary to admit or deny Mey's characterizations in paragraph 26.

27.     Each P&M-Defendant denies the allegations in paragraph 27 except that each lacks knowledge or information necessary to admit or deny Mey's characterizations in paragraph 27.

28.     Each P&M-Defendant denies the allegations in paragraph 28 except that each lacks knowledge or information necessary to admit or deny Mey's characterizations in paragraph 28.

29.     Each P&M-Defendant denies the allegations in paragraph 29 except that each lacks knowledge or information necessary to admit or deny Mey's assertions in paragraph 29.

30.     Each P&M-Defendant denies the allegations in paragraph 30.

     a.     Each P&M-Defendant denies the allegations in paragraph 30(a) except that the text messages are the best evidence of what they say.

     b.     Each P&M-Defendant denies the allegations in paragraph 30(b) except that the text messages are the best evidence of what they say.

     c.     Each P&M-Defendant denies the allegations in paragraph 30(c) except that the text messages are the best evidence of what they say.

31.     Each P&M-Defendant denies the allegations in paragraph 31 except that each lacks knowledge or information necessary to admit or deny Mey's assertions about a weblink, text messages, or originating email address in paragraph 31.

32.     Each P&M-Defendant denies the allegations in paragraph 32 except that each lacks knowledge or information necessary to admit or deny Mey's assertions about the content of a call she received as alleged in paragraph 32.

33.     Each P&M-Defendant denies the allegations in paragraph 33 except that each admits that any quoted email speaks for itself, and each lacks knowledge or information necessary to admit or deny Mey's assertions about the content of a call she received as alleged in paragraph 33.

34.     Each P&M-Defendant denies the allegations in paragraph 34 except that she completed an online form and hid her identity and each lacks knowledge or information necessary to admit or deny Mey's assertions about her intent as alleged in paragraph 34.

35.     Each P&M-Defendant denies the allegations in paragraph 35 except each lacks knowledge or information necessary to admit or deny Mey's assertions about the content of a call she received as alleged in paragraph 35.

36.     Each P&M-Defendant denies the allegations in paragraph 36 except each lacks knowledge or information necessary to admit or deny Mey's assertions about the content of a call she received as alleged in paragraph 36.

37.     Each P&M-Defendant denies the allegations in paragraph 37 except each lacks knowledge or information necessary to admit or deny Mey's assertions about the content of a call she received as alleged in paragraph 37.

38.     Each P&M-Defendant denies the allegations in paragraph 38 except each lacks knowledge or information necessary to admit or deny Mey's assertions about the content of a call she received as alleged in paragraph 38.

39.     Each P&M-Defendant denies the allegations in paragraph 39 except each lacks knowledge or information necessary to admit or deny Mey's assertions about the content of a call she received as alleged in paragraph 39.

40.     Each P&M-Defendant denies the allegations in paragraph 40 except each lacks knowledge or information necessary to admit or deny Mey's assertions about the content of a call she received as alleged in paragraph 40.

41.     Each P&M-Defendant denies the allegations in paragraph 41 except each lacks knowledge or information necessary to admit or deny Mey's assertions about the content of a call she received as alleged in paragraph 41.

42.     Each P&M-Defendant denies the allegations in paragraph 42 except each lacks knowledge or information necessary to admit or deny Mey's assertions about the content of a call she received as alleged in paragraph 42.

43.     Each P&M-Defendant denies the allegations in paragraph 43 except each lacks knowledge or information necessary to admit or deny Mey's assertions about the content of a call she received as alleged in paragraph 43.

44.     Each P&M-Defendant denies the allegations in paragraph 44.

45.     Each P&M-Defendant denies the allegations in paragraph 45.

**Pintas' Fraudulent and Abusive Suit Against Mey**

46.     Each P&M-Defendant denies the allegations in paragraph 46 except each lacks knowledge or information necessary to admit or deny Mey's assertions about when she sent a letter and to what addresses and state the letter is the best evidence of what it says.

47.     Each P&M-Defendant denies the allegations in paragraph 47 except each lacks knowledge or information necessary to admit or deny Mey's assertions about who contacted her and when.

48.     Each P&M-Defendant denies the allegations in paragraph 48 except each lacks knowledge or information necessary to admit or deny Mey's assertions about exchanges of email or offers of assurances and state the email themselves are the best evidence of what they say.

49.     Each P&M-Defendant denies the allegations in paragraph 49 except each lacks knowledge or information necessary to admit or deny Mey's assertions about what she knew or did not know.

50.     Each P&M-Defendant denies the allegations in paragraph 50 except each lacks knowledge or information necessary to admit or deny Mey's assertions about an email and state the email is the best evidence of what it says.

51.     Each P&M-Defendant denies the allegations in paragraph 51 except each admits Mey committed fraud and Mey lied to induce P&M-PR into contacting her.

52.     Each P&M-Defendant denies the allegations in paragraph 52 except each admits Mey consented to be called, had an established business relationship, is not a residential subscriber and provided all the disclosures necessary.

53.     Each P&M-Defendant denies the allegations in paragraph 53.

54.     Each P&M-Defendant denies the allegations in paragraph 54.

55.     Each P&M-Defendant denies the allegations in paragraph 55.

56.     Each P&M-Defendant denies the allegations in paragraph 56.

57.     Each P&M-Defendant denies the allegations in paragraph 57.

58.     Each P&M-Defendant denies the allegations in paragraph 58 except each lacks knowledge or information necessary to admit or deny Mey's assertions about what Mey assumed and about her admission to her destruction of material evidence.

59.     Each P&M-Defendant denies the allegations in paragraph 59.

60.     Each P&M-Defendant denies the allegations in paragraph 60.

61.     Each P&M-Defendant denies the allegations in paragraph 61.

62.     Each P&M-Defendant denies the allegations in paragraph 62.

63.     Each P&M-Defendant denies the allegations in paragraph 63 except each admits Mey is the antithesis of the consumer Congress intended to protect.

64.     Each P&M-Defendant denies the allegations in paragraph 64.

65.     Each P&M-Defendant denies the allegations in paragraph 65.

66.     Each P&M-Defendant denies the allegations in paragraph 66.

67.     Each P&M-Defendant denies the allegations in paragraph 67.

68.     Each P&M-Defendant denies the allegations in paragraph 68 except each lacks knowledge or information  necessary to admit or deny Mey's assertions that she has incurred tens of thousands of dollars in legal fees and suffered severe emotional distress.

**Class Allegations**
**(TCPA Only)**

69.     Each P&M-Defendant denies the allegations in paragraph 69.

70.     Each P&M-Defendant denies the allegations in paragraph 70.

71.     Each P&M-Defendant denies the allegations in paragraph 71.

72.     Each P&M-Defendant denies the allegations in paragraph 72.

73.     Each P&M-Defendant denies the allegations in paragraph 73.

74.     Each P&M-Defendant denies the allegations in paragraph 74.

75.     Each P&M-Defendant denies the allegations in paragraph 75 and each subpart.

76.     Each P&M-Defendant denies the allegations in paragraph 76.

77.     Each P&M-Defendant denies the allegations in paragraph 77.

78.     Each P&M-Defendant denies the allegations in paragraph 78.

79.     Each P&M-Defendant denies the allegations in paragraph 79.

80.     Each P&M-Defendant denies the allegations in paragraph 80.

81.     Each P&M-Defendant denies the allegations in paragraph 81.

**COUNT I**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(All Defendants)**

82.     Each P&M-Defendant denies the allegations in paragraph 82 except each P&M-Defendant incorporates the answers to the allegations from all previous paragraphs as if fully set forth herein.

83.     Each P&M-Defendant denies the allegations in paragraph 83 except each admits Mey consented to receiving calls and text messages.

84.     Each P&M-Defendant denies the allegations in paragraph 84 except each admits Mey consented to and received calls.

85.     Each P&M-Defendant denies the allegations in paragraph 85.

86.     Each P&M-Defendant denies the allegations in paragraph 86.

## COUNT II
### Fraudulent Legal Process, W. Va. Code § 61-5-27a(h)
### (William Pintas and P&M Law (PR))

87.   Pintas and P&M-PR deny the allegations in paragraph 87 except each incorporates the answers to the allegations from all previous paragraphs as if fully set forth herein.

88.   Pintas and P&M-PR deny the allegations in paragraph 88 and states the West Virginia Code is the best evidence of what it creates.

89.   Pintas and P&M-PR deny the allegations in paragraph 89 and states the West Virginia Code is the best evidence of what it makes unlawful.

90.   Pintas and P&M-PR deny the allegations in paragraph 90 and states the West Virginia Code is the best evidence of what it makes unlawful.

91.   Pintas and P&M-PR deny the allegations in paragraph 91 and states the document is the best evidence.

92.   Pintas and P&M-PR deny the allegations in paragraph 92.

93.   Pintas and P&M-PR deny the allegations in paragraph 93.

## COUNT III
### Abuse of Process
### (William Pintas and P&M Law (PR))

94.   Pintas and P&M-PR deny the allegations in paragraph 94 except each incorporates the answers to the allegations from all previous paragraphs as if fully set forth herein.

95.   Pintas and P&M-PR deny the allegations in paragraph 95.

96.   Pintas and P&M-PR deny the allegations in paragraph 96.

97.   Pintas and P&M-PR deny the allegations in paragraph 97.

98.   Pintas and P&M-PR deny the allegations in paragraph 98.

**COUNT IV**
**Intentional Infliction of Emotional Distress**
**(William Pintas)**

99.     Pintas denies the allegations in paragraph 99 except he incorporates the answers to

the allegations from all previous paragraphs as if fully set forth herein.

100.    Pintas denies the allegations in paragraph 100.

101.    Pintas denies the allegations in paragraph 101.

102.    Pintas denies the allegations in paragraph 102.

103.    Pintas denies the allegations in paragraph 103.

104.    Pintas denies the allegations in paragraph 104.

**COUNT V**
**Injunctive Relief**
**(Pintas and P&M Firm (PR))**

105.    Pintas and P&M-PR deny the allegations in paragraph 105 except each incorporates

the answers to the allegations from all previous paragraphs as if fully set forth herein.

106.    Pintas and P&M-PR deny the allegations in paragraph 106 and states that the AIA

itself and the U.S. Supreme Court in *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive*

*Eng'rs*, 398 U.S. 281, 286 (1970) are the best evidence of what defines the limits on a district

court's power.

107.    Pintas and P&M-PR deny the allegations in paragraph 107.

108.    Pintas and P&M-PR deny the allegations in paragraph 108.

109.    Pintas and P&M-PR deny the allegations in paragraph 109.

110.    Pintas and P&M-PR deny the allegations in paragraph 110.

Answering the Wherefore clause following paragraph 110 of the Complaint, Pintas and

P&M-PR deny the Wherefore clause and each subpart A through L and each denies that Mey is

11

entitled to judgment, that Mey suffered damages of any kind, that Mey is entitled to punitive damages, that Mey is entitled to certification of a class, that Mey is an adequate class representative, that Mey will fairly and adequately represent the interests of any class, and that Mey is entitled to an injunction

## AFFIRMATIVE DEFENSES

Pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, each P&M-Defendant, pleading in the alternative and without prejudice to the general denials in its Answer to Mey's putative Class Action Complaint, for Affirmative Defenses hereby states as follows:

### FIRST AFFIRMATIVE DEFENSE
### Mey Lacks Article III Standing

111.    As a First Affirmative Defense, the P&M-Defendants state that Mey lacks standing to assert the claims alleged in the Complaint. Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy.

112.    The "irreducible constitutional minimum" of standing consists of three elements: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.

113.    To establish an injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical.

114.    To establish the injury in fact element, Mey had, but failed, to show *she* suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical. *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1548 (2016).

115.    Mey's bare statutory violations are insufficient to confer standing absent actual injuries. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426, 141 S. Ct. 2190, 2205 (2021).

116.    Mey used a pseudonym – "Rhonda Nicholson" – to invite at least 19 separate communications she alleges are TCPA violations, but which Mey concedes "Nicholson" invited.

117.    To be sure, the "Rhonda Nicholson" persona received all the calls about which Mey complains. But any alleged injury "Rhonda" allegedly suffered cannot have affected Mey "in a personal and individual way," would not have been "particularized" as to Mey, and would not have actually existed and so could not be "concrete," as to Mey. *Spokeo*, 578 U.S. at 339; (standing requires that plaintiff "personally has suffered some actual or threatened injury")(internal citation and quotations omitted). "Rhonda," after all, never lived at Camp Lejeune, was never married to a marine who was stationed at Camp Lejeune at the relevant time and possible eligible for compensation. Using the pseudonym is inherently fraudulent and especially because "Rhonda" Nicholson claimed she live at Camp Lejeune in the early 1980s, but that is untrue.

118.    "Rhonda," Mey's false persona, never said on the calls on February 8 and 9, 2023 for example, the calls about which Mey now complains, "don't call, text, or email me."

119.    Mey did not (and cannot) allege facts showing each of the three elements of Article III standing, that the *Spokeo* Court explained are necessary to bring claims in federal court.

### SECOND AFFIRMATIVE DEFENSE
### Consent; Claims not Properly Certifiable under Fed. R. Civ. P. Rule 23

120.    As a Second Affirmative Defense, each P&M Defendant states that Mey's claims are barred, in whole or in part, because Mey (and one or more of the purported members of the putative class) provided express or implied consent to the conduct as described in Mey's Complaint including, but not limited to, by providing a cellular telephone number and agreeing to receive text messages and calls.

121.    Mey purports to represent a class of individuals allegedly contacted in violation of the TCPA.

13

122.     Mey further alleges that there are common questions of law and fact, which predominate over questions affecting any individual member of the class, but such is simply not the case.

123.     Mey's claims based on her subterfuge in the absence of an injury in fact mean she cannot properly be certified as a class representative or that her claims are typical of the purported members of the putative class, under Federal Rule of Civil Procedure 23 because, among other reasons, questions of fact relating to each individual putative class member predominate over the questions relating to the class.

124.     The Class Action Complaint, and each claim contained therein, is barred as a matter of law.

### THIRD AFFIRMATIVE DEFENSE
### Fraud

125.     As a Third Affirmative Defense, P&M Defendants state that Mey knowingly or recklessly made false and material representations,

126.     For example, Mey engaged in deceit and fraud by creating and using a false identity and name and a false address, and by lying about her state of residence – that is, Illinois,

127.     Mey also committed fraud by making an invitation or giving permission to the callers to receive additional informational calls about the Camp Lejeune Water Contamination litigation with no intent other than to add calls about that subject to her claims of TCPA violations alleged against the P&M-Defendants.

128.     Mey engaged in deceit and fraud by feigning interest in the informational call about Camp Lejeune as a complete ruse to get affiliates to rely and act on those false representations to respond to her invitation to continue making calls.

129.    Mey does not deny that she answered calls and does not deny filling out forms online, feigning interest and using a "fake identity." Mey used her "imposter persona" Rhonda who gave *consent* for calls to the imposter and to ask that a retainer agreement be prepared for "Rhonda Nicholson," the fictional character central to this litigation drama.

130.    In February 2023, Mey answered an informational telephone call and during the call answered questions using a false identity, "Rhonda Nicholson."

131.    "Nicholson" did not say the telephone number called was on the National "Do-Not-Call" Registry, nor did "Rhonda" instruct the caller to *stop* calling.

132.    Instead, Mey consented to and knowingly invited in-bound informational calls about the same subject, *i.e.,* the Camp Lejeune Water Contamination Compensation Claim.

133.    At some point, "Rhonda" admits she advanced another lie when she alleges she protested receiving the same calls she invited and when she advanced another lie – that "Rhonda" registered her telephone number on the National "Do Not Call" Registry.

134.    "Rhonda Nicholson," as it turns out, neither has a telephone of any kind nor does she have a number registered on the National "Do-Not-Call" Registry.

135.    The P&M-Defendants reasonably relied on Mey's misrepresentations and suffered damages as a result thereof.

### FOURTH AFFIRMATIVE DEFENSE
### Estoppel

136.    As a Fourth Affirmative Defense, the P&M Defendants incorporate paragraphs 124 through 135 by reference, and state that Mey is estopped from bringing any claims or from claiming any damages or Mey has otherwise waived any such claims or damages in part because she engaged in deception and fraud by using a false identity and address and feigned interest.

15

137.    Mey actively, and with the intent to deceive and defraud, assisted, directed, ordered, approved, and/or ratified the conduct about what she complains by specifically requesting that the affiliate caller contact Mey on a phone and the P&M-Defendants relied on Mey's deceptive actions to their detriment.

## FIFTH AFFIRMATIVE DEFENSE
### Unclean Hands; Mey is not a Residential Subscriber

138.    As a Fifth Affirmative Defense, the P&M-Defendants state that Mey's claims are barred by the doctrine of unclean hands and thee doctrine of *in pari delicto* because, *inter alia*, Mey attempted to and did in fact induce the P&M-Defendants to violate the TCPA specifically by expressing "feigned interest" and requesting that the P&M-Defendants contact Rhonda Nicholson on what Rhonda Nicholson represented was her cell phone as alleged in part in paragraphs 124 through 137 *supra* and incorporated herein by reference.

139.    The TCPA only applies to telephone solicitations, which are calls made to residential telephone subscribers who registered their telephone numbers on the National "Do-Not-Call" Registry, pursuant to 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2).

140.    Mey claims that uninvited calls were made to her telephone number of "304-242-XXXX." But that number does not qualify as a residential subscription.

141.    Mey uses that telephone number primarily for business purposes.

142.    In particular, as Mey is fond of pointing out in her papers, she dedicates herself to waging war on those who might call her.

143.    Mey's business of waging war consists of making threatening settlement demands and orchestrating lawsuits, including class action TCPA lawsuits.

144.    Mey's business model includes making numerous false statements and misrepresentations to induce a business to call her, and to continue calling her, with the purpose of

16

inviting what she contends are multiple violations of the TCPA, violations which she adds to her running tally, as alleged in her Complaint.

145.    Furthermore, Mey uses a telephone answering and recording system and multiple other sophisticated tools, which are more elaborate and purposed than anything an average consumer would ever use in the normal course.

## SIXTH AFFIRMATIVE DEFENSE
### Failure to Mitigate the alleged Damages

146.    As a Sixth Affirmative Defense, the P&M-Defendants state that the Complaint and each claim contained therein is barred because Mey and the purported class members had a duty to take reasonable steps to mitigate and/or avoid their alleged damages.

147.    Had Mey (or the purported-class members) timely and diligently taken reasonable steps in the first call to mitigate and/or avoid the alleged damages, such alleged damages, if any, would have been reduced or avoided altogether.

## SEVENTH AFFIRMATIVE DEFENSE
### Failure to Exercise Reasonable Care

148.    As a Seventh Affirmative Defense, the P&M-Defendants state that Mey, by her own actions and conduct, failed to exercise reasonable care and diligence on her own behalf, thereby causing or contributing to the alleged injury and damages.

149.    Any recovery therefore must be reduced or eliminated altogether by the proportion of damages caused by her own acts and misconduct, which are set forth in part herein at paragraphs 124 through 134.

## EIGHTH AFFIRMATIVE DEFENSE
### No Punitive Damages

150.    As an Eighth Affirmative Defense, the P&M-Defendants state that Mey's Complaint seeks punitive class damages for the putative class.

151.     The aggregated statutory damages sought, if any, may result in potential ruinous liability for each P&M-Defendant and may constitute excessive fines in violation of the United States Constitution, Eighth Amendment.

## NINTH AFFIRMATIVE DEFENSE
### Safe Harbor

152.     As a Ninth Affirmative Defense, the P&M-Defendants state that they understood that the entity placing calls had established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under the TCPA.

153.     These established and reasonable practices and procedures in place included, *e.g.*, written policies and procedures; employee training in procedures; scrubbing in-house DNC, National Call Lists, and Suppression Lists, to prevent telephone solicitation calls that may constitute violations of the TCPA.

154.     The P&M-Defendants did not initiate or authorize any communication to anyone using a telephone facsimile machine, nor did they make or authorize any telephone call using any automatic telephone dialing system, to their best knowledge and belief that does not comply with the technical and procedural standards prescribed under the TCPA, nor did they use or authorize the use of any telephone facsimile machine or automatic telephone dialing system in a manner that does not comply with the TCPA.

155.     Any call, email, or text was placed in error and the content of the call did not constitute a "telephone solicitation." Mey's claims are therefore barred, in whole or in part, by the TCPA's "safe harbor provisions." 47 C.F.R. § 64.1200.

## TENTH AFFIRMATIVE DEFENSE
### Independent, Intervening and Proximate Cause

156.    As a Tenth Affirmative Defense, the P&M-Defendants state that no act or omission of theirs was a substantial factor in bringing about the damages alleged, nor was any act or omission a contributing cause thereof.

157.    Any alleged acts or omissions of the P&M-Defendants were superseded by the acts or omissions of others, including Mey (or members of the putative class), or other third parties named or not named in the Complaint, which were the independent, intervening, and proximate cause of the damage or loss Mey allegedly sustained.

## ELEVENTH AFFIRMATIVE DEFENSE
### No Vicarious Liability

158.    As an Eleventh Affirmative Defense, each P&M-Defendant states that Mey cannot hold any one of them liable for the alleged violations of the TCPA arising from the alleged conduct of a third party or third parties, as not one of the P&M-Defendants is vicariously liable for such conduct.

159.    Not one of the P&M-Defendants initiated a call placed by a third-party.

160.    Not one of the P&M-Defendants allowed anyone access to information and systems, which would be ordinarily within the P&M-Defendants' control.

161.    Not one of the P&M-Defendants wrote, reviewed, or approved a script used by anyone.

162.    Not one of the P&M-Defendants knew or reasonably should have known that anyone acting on their behalf violated the TCPA and each is entitled to safe Harbor as stated in paragraphs 142-145, which are incorporated herein by reference.  *See* 47 C.F.R. § 64.1200(d)(3); 47 C.F.R. § 64.1200(c)(2)(i)(A) & (B).

## TWELFTH AFFIRMATIVE DEFENSE
### Constitution prohibits awards that would result in a defendant's insolvency

163.    As a Twelfth Affirmative Defense, the P&M-Defendants state that the TCPA allows a person to recover statutory damages for a violation of the statute ranging from $500.00 to $1,500 per violation and actual damages.

164.    The TCPA also provides for higher damages if the violation was willful.

165.    If, and only for the sake of argument here, a TCPA class is certified and the class contains several thousand people, the P&M-Defendants' liability for aggregated damages to the class could potentially be so great as to result in insolvency.

166.    The due process clause of the Fifth Amendment to the U.S. Constitution prohibits awards that would result in a defendant's insolvency, especially where, as here, Mey invited the conduct that allegedly violated the TCPA, and no alleged act caused Mey actual injury or damages of any kind.

## THIRTEENTH AFFIRMATIVE DEFENSE
### Ratification

167.    As a Thirteenth Affirmative Defense, the P&M-Defendants state that Mey's claims are barred, in whole or in part, by ratification (express and implied) of each P&M-Defendant's alleged conduct, which she invited through subterfuge and fraudulent conduct and deceptive actions or inaction and fully accepted.

168.    Mey does not deny that Rhonda invited and answered calls and does not deny that Rhonda filled out forms online using the name – Rhonda Nicholson, which is the name Rhonda gave and at her direction was put on the retainer agreement that contained Rhonda's home address Rhonda said is in the state of Illinois where she is a resident.

169.    Mey used her "imposter persona" Rhonda to engage with callers. Rhonda gave the necessary *consent* to receive those calls. Consent is tied to the called party and not the phone number.

170.    Plain and simple, Rhonda spoke to the callers to make the decision to request that a retainer agreement be prepared for "Rhonda Nicholson," the fictional character central to this litigation drama.

171.    In February 2023, Mey answered a telephone call and questions where she identified herself as Rhonda Nicholson. In doing so Mey lied about her identity.

172.    Rhonda consented to in-bound calls. But in a purely underhanded way, "Rhonda" then ultimately and allegedly protested the very same calls she invited, claiming that "Rhonda" registered her telephone number on the National "Do Not Call" Registry. Mey lied again.

173.    Mey's allegations and storytelling  cannot get around one immutable fact: Rhonda Nicholson has no telephone  and so there isn't a number for her listed on the DNC Registry. Rhonda tacitly admits and concedes that Rhonda's purpose for engaging in lies, deceit, and deception is for the business purpose of gathering information to use in lawsuits, which Mey brings in her name – not in the name of Rhonda Nicholson.

174.    Mey ratified the conduct about which she complains.

### FOURTEENTH AFFIRMATIVE DEFENSE
### Adequate Remedy at Law

175.    As a Fourteenth Affirmative Defense, the P&M-Defendants state that Mey's request for injunctive relief is barred because Mey has an adequate remedy at law.

176.    The request for an Anti-Suit Injunction is likewise defective because there is concurrent jurisdiction under the TCPA.

**FIFTEENTH AFFIRMATIVE DEFENSE**
**No Class Claims**

177.     As a Fifteenth Affirmative Defense, the P&M-Defendants state that Mey's claims, and the claims of putative class members, are barred or limited because they cannot satisfy some or all the requirements for certifying and maintaining a class action under Federal Rule of Civil Procedure 23.

**SIXTEENTH AFFIRMATIVE DEFENSE**
**Established Business Relationship**

178.     As a Sixteenth Affirmative Defense, the P&M-Defendants state that where, as here, the parties – the P&M-Defendants and Ronda Nicholson – had an "established business relationship," the TCPA's prohibitions do not apply.

179.     The actions of an affiliate or the P&M-Defendants cannot – as a matter of law – violate the TCPA. 47 C.F.R. § 64.1200(f)(5) & § 64.1200(f)(15)(ii).

**SEVENTEENTH AFFIRMATIVE DEFENSE**
**Good Faith Compliance**

180.     As a Seventeenth Affirmative Defense, P&M-PR and P&M-Chicago each state that the actions, practices, and procedures of the P&M-Defendants were reasonable and taken in good-faith and with the well-founded belief that any such conduct was always in compliance with applicable law, regulations, and rules.

181.     The entity or affiliate responsible for any of the alleged calls has established and implemented, and entered into an assurance of compliance, with all due care, reasonable practices, and procedures to prevent communications that may be in violation of the statute and the rules and regulations prescribed under the TCPA. 47 U.S.C. § 227(C)(5).

182.     Under regulations issued by the Federal Communications Commission, a "telephone solicitation" for purposes of the TCPA does not include a call or message "[t]o any

person with whom the caller has an established business relationship." 47 C.F.R. 64.1200(f)(15)(ii).

183.    An "established business relationship" includes "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of . . . the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call . . . ."  47 C.F.R. 64.1200(f)(5).

184.    To the extent the alleged conduct may be actionable, the conduct was unintentional and occurred despite good-faith efforts to be compliant.

### EIGHTEENTH AFFIRMATIVE DEFENSE
#### No basis for Individual Liability against William Pintas

185.    As an Eighteenth Affirmative Defense, the P&M-Defendants state that William Pintas has no individual liability.

186.    Pintas never personally participated in or personally authorized the conduct alleged to be a violation of either the TCPA or any one of the state law claims asserted.

187.    Pintas never knowingly authorized or participated, directly or indirectly, in any alleged TCPA violation.

188.    Whether individually or as a corporate officer, or for any contractor or vendor, Pintas acted in accordance with the law.

189.    As Mey's unrelenting condemnation and her direct and very personal assault on Pintas illustrates, TCPA litigation in the hands of the Professional TCPA Plaintiff and such a plaintiff's predatory litigators – as here, relies heavily on the plaintiff (such as Mey) setting traps and using tricks and baseless allegations to ensnare innocent individuals into the costly defense of litigation solely so the plaintiff can gain leverage in a push for an extortionate settlement.

23

190.    The use of the litigation sword of personal liability for corporate officers is one of the most dangerous tools and underhanded tricks in the serial TCPA plaintiff's  bag of tricks.

191.    Mey has shown she is adept at and willing to use these dirty tricks to target Pintas individually, wrongly, and unfairly.

192.    Pintas never personally spoke to or met Mey.

193.    Pintas never placed a call to Mey.

194.    Pintas neither personally participated nor personally authorized the conduct Mey alleges caused her harm.

## NINETEENTH AFFIRMATIVE DEFENSE
### Statute of Limitations

195.    As a Nineteenth Affirmative Defense, the P&M-Defendants state that Mey's claims are barred, in whole and material part, by the applicable statute of limitations.

## TWENTIETH AFFIRMATIVE DEFENSE
### Failure to Exercise Reasonable Care

196.    As a Twentieth Affirmative Defense, the P&M-Defendants state that Mey's failure to exercise reasonable care and diligence caused or contributed to any alleged injury or damages.

197.    Any recovery, therefore, must be eliminated or reduced proportionately.

## TWENTY-FIRST AFFIRMATIVE DEFENSE
### No statutory deceptive or unfair practices

198.    As a Twenty-First Affirmative Defense, the P&M-Defendants state that, to the extent Mey is trying to assert a claim based on the West Virginia Consumer Credit and Protection Act ("CCPA") by basing her claims on the existence of a lawsuit or her characterization of the lawsuit in Puerto Rico, any such claims is barred by the CCPA, W. Va. Code Ann. § 46A-2-140.

**WHEREFORE**, Defendants, Willliam Pintas, P&M Law Firm, LLC, and P&M Law Firm (PR), LLC, respectfully pray for judgment against Mey as follows:

A.  That Diana Mey takes nothing by virtue of this Complaint;

B.  That Diana Mey's Complaint be dismissed with prejudice;

C.  For costs, expenses, and reasonable attorneys' fee; and

D.  For such other relief as the Court may deem appropriate.

**THE P&M-DEFENDANTS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

## COUNTERCLAIMS

P&M Law Firm (PR) LLC, P&M Law Firm, LLC, and William Pintas[2] file the following counterclaims against Plaintiff, Counterclaim-Defendant Diana Mey:

## JURISDICTION, PARTIES, AND VENUE

1.     This Court has original jurisdiction over the federal question Mey alleged and jurisdiction over P&M's counterclaims because the counterclaims arise out of the transaction or occurrence that is the subject matter of Mey's claim and does not require adding another party over whom the court cannot acquire jurisdiction.

2.     Counterclaim-defendant Diana Mey ("Mey"), on information and belief, claims in the original action to be an individual residing in Wheeling, West Virginia.

3.     Mey also claims to be Rhonda Nicholson who is alleged to be a resident of the State of Illinois.

4.     William Pintas ("William Pintas") is an individual and resident of Puerto Rico.

5.     P&M Law Firm, LLC is an Illinois limited liability company with a principal place of business in Chicago, Illinois ("P&M-Chicago").

6.     P&M Law Firm (PR) is a limited liability company organized under the laws of the Government of Puerto Rico with a principal place of business in San Juan, Puerto Rico ("P&M-PR").

7.     Venue for this counterclaim lies in the same venue as the original action because the counterclaims arise out of the transaction or occurrence that is the subject matter of Mey's claim and does not require adding another party over whom the court cannot acquire jurisdiction.

---

[2] P&M Law Firm (PR) LLC, P&M Law Firm, LLC, and William Pintas are referred to collectively as "P&M."

8.   Personal jurisdiction exists over Mey because she filed the original action in this court.

**GENERAL FACTUAL ALLEGATIONS**

9.   Mey is a self-proclaimed consumer litigant who willingly tells anyone who does-not-ask that she has been waging a successful war shaking-down businesses of all kinds for violations, among other things, of the Telephone Consumer Protection Act ("TCPA"), claims which she concocts using deceit and false representations as facts.

10.   Mey claims she received several unsolicited telephone calls from P&M on her residential phone on February 8, 2024.

11.   Mey alleges the caller gave her information about the Camp Lejeune Water Contamination Compensation Claims litigation.

12.   Mey claims she could not establish the identity of the party or parties responsible for generating the calls.

13.   Mey engaged in deceitful acts, conduct, and representations as a subterfuge to gain additional information about the caller.

14.   In particular, Mey used a fictitious identity – "Rhonda Nicholson" – and feigned interest in the Camp Lejeune Water Contamination Claims litigation to invite more calls about the litigation so she could generate more calls and gather more information about the caller, her true intent for continue to engage the callers.

15.   Shortly after receiving the calls in February 2023, and after receiving the information calls about the Camp Lejeune Water Contaminatioin Compensation Claims, Mey seized the opportunity to use the calls to demand $130,000.00 from Pintas and two law firms, where Pintas is one of the founding members.

16.   Mey demanded the money or else – she threatened – Pintas and P&M-PR and P&M-Chicago would face a costly lawsuit from her where she would make claims of numerous TCPA violations.

17.   When P&M did not accede to Mey's demands, Mey made good on her threat to sue the P&M-Defendants for calls made to and answered by Rhonda Nicholson.

18.   Based on invited communications and consent, Mey claims to have amassed at least 19 calls to her cellular telephone, calls she claims violated the TCPA.

19.   Mey claims the number Rhonda Nicholson claimed as her own is listed on the National Do-Not-Call Registry.

20.   Undisputedly, "Rhonda Nicholson" is not a subscriber to that number.

21.   Mey engaged in deceit and fraud by creating and using the false identity "Rhonda Nicholson" at a false address, and by lying about her state of residence – Illinois – as the vehicle for Mey's demands and lawsuit.

22.   Mey also committed fraud by inviting or giving permission to caller affiliates to receive additional informational calls about the Camp Lejeune Water Contamination Compensation Claims – with no intent other than to add calls about that subject to her claims of TCPA violations against P&M.

23.   Mey engaged in deceit and fraud by feigning interest in the informational call about Camp Lejeune Water Contamination Compensation claims as a complete ruse to get P&M to rely and act on those false representations, that is, to continue to respond to her invitation and to continue making calls to her.

24.   Mey answered calls and filled out forms online, and feigned interest and used a "fake identity" to lure and entice follow-up calls about the Camp Lejeune Water Contamination Claims.

28

25.  Mey used her "imposter persona" Rhonda Nicholson to invite and so *consented* to receiving additional calls directed to Rhonda the imposter.

26.  Mey continued her deceit by agreeing to have a retainer agreement prepared under the name "Rhonda Nicholson," the fictional character central to Mey's fraudulent acts, conduct, and representations.

27.  Mey had no intention of signing the retainer agreement Rhonda Nicholson invited be sent to her because the true motive and intent was behind asking for the retainer agreement was to use the retainer to generate more calls and to gain more information to use in her lawsuit.

28.  Rhonda Nicholson is not a residential telephone subscriber.

29.  Rhonda Nicholson lives in Illinois, not West Virginia.

30.  Rhonda Nicholson as it turns out neither has a telephone of any kind nor does she have a number registered on the National Do-Not-Call Registry.

31.  The caller affiliates and hence the P&M-Defendants reasonably relied on the deceitful acts, conduct, and representations alleged herein and suffered damages as a result.

**COUNT I**
**OBTAINING SERVICES UNDER FALSE PRETENSES**

32.   P&M-PR incorporates the allegations in paragraphs 1 through 31 as if set forth herein.

33.  As set forth herein, Mey had the requisite intent to defraud P&M-PR and others.

34.  Mey's intent is manifest in the fact that she obtained from another – P&M-PR – by false pretenses and representations, solely with the intent to defraud, a promise from P&M-PR to undertake the representation of the imposter – "Rhonda Nicholson" – in the Camp Lejeune Water Contamination litigation, *see* W. Va. Code Ann. § 61-3-24.

35.  Mey's use of false pretense (*e.g.,* feigned interest in retaining P&M-PR to represent her) to accomplish her objective to learn more about who potential might be a target of what she

29

believed was her TCPA claim, induced the preparation of and led directly to her receiving a retainer agreement for the representation she requested.

36.   Accomplishment of fraud in some degree by means of the false pretense is unlawful.

37.   Prosecution for an offense of false pretense does not bar or otherwise affect adversely any right or liability to damages, forfeiture or other civil remedy arising from any or all elements of the criminal offense. *See* W. Va. Code Ann. § 61-3-24.

**WHEREFORE**, P&M Law Firm (PR), LLC, respectfully prays (A) for judgment and all damages against Mey; (b) for costs, expenses, and reasonable attorney's fees; and (C) for such other relief as the Court may deem appropriate.

## COUNT II
## FRAUDULENT LEGAL PROCESS, W. Va. Code § 61-5-27a(h)

38.   P&M incorporate the allegations in paragraphs 1 through 8 as if set forth herein.

39.   Mey sued P&M on March 19, 2024, by filing a lawsuit in the United States District Court for the Northern District of West Virginia.

40.   Rule 4 of the Federal Rules of Civil Procedure sets out the procedure to follow for process and service of process.

41.   For example, a summons must bear, among other things, "the court's seal." *See* Fed. R. Civ. P. 4(a)(1)(G).

42.   Mey had someone prepare three summons – one  for Pintas, P&M-Chicago, and P&M-PR each.

43.   Not one of these summons was embossed with either the court or clerk's seal.

44.   On March 19, 2024, Mey sued P&M in the United States District Court for the Northern District of West Virginia.

45.   Then, Mey waited thirty-eight (38) days and late on Friday 26, 2024, and before securing sufficient process, before effecting service of process, and without considering personal jurisdiction over P&M, Mey's lawyer emailed a Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction and supporting memorandum to Carlos Baralt, who is the lawyer for P&M-PR in the Puerto Rico Lawsuit.

46.   Shortly after sending the email, Mey's lawyer sent a second email to Baralt.

47.   The second email forwarded an Order also dated April 26, 2024 where the District Court entered setting a hearing on the TRO for just one business day later – at 10:30 am on Tuesday, April 30, 2024.

48.   The Order directed Mey to cause "actual" service on each of the P&M-Defendants and file proof of such service before the hearing at 10:00 am, the following Tuesday.

49.   Mey neither effectuated service nor filed proof of actual service.

50.   Despite the patent defects in, for example, the summons, Mey proceeded as if she had followed the Rules and had effected service on P&M, but in fact she did not actually serve Pintas, P&M-Chicago, or P&M-PR before two hearings on Mey's application for injunctive relief.

51.   West Virginia Code § 61-5-27a(h) states, in part, that: "A person who violates this section is liable in a civil action to any person harmed by the violation for injury or loss to person or property incurred as a result of the commission of the offense and for reasonable attorney's fees, court costs and other expenses incurred."

52.    Some of the offenses are set forth in West Virginia Code § 61-5-27a(b), which states that: "(b) *Fraudulent official proceedings.*- It is unlawful for a person to knowingly engage in a fraudulent official proceeding or legal process."

31

53.  West Virginia Code § 61-5-27a(c) also states that: "(c) *Fraudulent filings.-* It is unlawful for a person to knowingly cause a public official or employee to file, record or deliver a fraudulent claim of indebtedness, common law lien or other lien, financial statement, complaint, summons, judgement, warrant or other legal process, including those issued as the result of a fraudulent official proceeding."

54.  No one left a copy of the summons or complaint or other case-initiating documents at Pintas' usual place of abode with a person who is: age 13 or older or with a family member, or with a person residing there. Moreover, the "Affidavit of Special Process Server" signed by an Illinois process server Mey hired, claims to have made "CORPORATE SERVICE" on Pintas by leaving process with "Rachael Vanderstarre" at 360 W. Huron Street, Suite 100, Chicago, IL 60654-3424. Pintas, however, does not live in Illinois and does not have an abode at the Huron Street address. Moreover, Rachael Vanderstarre does not live with Pintas. She has never been, and is not, authorized to accept service of process for Pintas. The "Affidavit of Special Process Server" Mey hired does not say that the attesting process server hand delivered the papers to Pintas because they were not, and the Affidavit does not say such papers were left at Pintas' abode because they were not.

55.  Likewise, no one has served process in Puerto Rico on P&M-PR; that is, no one delivered a copy of the summons and of the complaint to an officer, managing or general agent, or to any other agent authorized by appointment or designated by law to receive service of process. Moreover, the "Affidavit of Special Process Server" is not signed by a Puerto Rican process server. The "Affidavit of Special Process Server" claims to have been made as "CORPORATE SERVICE" on P&M-PR by leaving process with "Rachael Vanderstarre" at 360 W. Huron Street, Suite 100, Chicago, IL 60654-3424. P&M-PR does not have an office or agents in Illinois and so is not found

in Chicago at the Huron Street address. Rachael Vanderstarre is not an officer, managing or general agent, authorized by appointment or designated by law to receive service of process for the Firm.

56.   Mey did not initially serve P&M-Chicago, having totally ignored the Business Entity information made freely available to all by the Office of the Illinois Secretary of State names the Registered Agent for P&M-Chicago by name and provides the agent's address in Illinois. *See* Business Entity Search (ilsos.gov) last visited April 29, 2024. No one served process in this matter on P&M-Chicago's Registered Agent; that is, no one delivered a copy of the summons and of the complaint to the Registered Agent, an officer, managing or general agent, or to any other agent authorized by appointment or designated by law to receive service of process. The "Affidavit of Special Process Server" Mey had prepared claims to have been made as "CORPORATE SERVICE" on P&M-Chicago by leaving process with "Rachael Vanderstarre" at 360 W. Huron Street, Suite 100, Chicago, IL 60654-3424. Rachael Vanderstarre is not an officer, managing or general agent, authorized by appointment or designated by law to receive service of process for P&M-Chicago.

57.   As detailed herein, Mey tries to justify her acts, conduct, and false representations calculated to entrap P&M's agent by claiming she only wished to learn who made the calls.

58.   Mey violated provisions of the West Virginia Code, for example,

    a.   § 61-5-27a(h), by directing the filing of and prosecuting the original and fraudulent action.

    b.   § 61-5-27a(b), by knowingly engaging in a fraudulent official proceeding or legal process (*e.g.*, insufficient process and service of process); and

    c.   § 61-5-27a(c), by knowingly causing a public official to file, record, or deliver a fraudulent complaint, defective summons, or other legal process.

59. Mey's violations are the direct and proximate cause of damages to the P&M-Defendants, including statutory and reasonable attorney's fees, court costs and other expenses.

**WHEREFORE**, Counterclaim Plaintiffs Willliam Pintas, P&M Law Firm, LLC, and P&M Law Firm (PR), LLC, pray (a) for judgment and all damages against Mey, (b) for costs, expenses, and reasonable attorney's fee; and (b) for such other relief as the Court may deem appropriate.

**P&M DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

*/s/ Jared M. Tully*
Jared M. Tully (WV Bar No. 9444)
Blake N. Humphrey (WV Bar No. 14132)
FROST BROWN TODD LLP
500 Virginia Street E, Suite 1100
Charleston, WV 25301
Telephone: 304-345-0111
jtully@fbtlaw.com
bhumphrey@fbtlaw.com

Richard W. Epstein*
Jeffrey Gilbert*
GREENSPOON MARDER LLP
200 East Broward Blvd, Suite 1800
Fort Lauderdale, FL 33301
Telephone: 954-491-1120
richard.epstein@gmlaw.com
jeffrey.gilbert@gmlaw.com

Carlos R. Baralt Suárez*
BARALT LAW LLC
P.O. Box 190751
San Juan, PR 00919
Telephone: 939-625-3712
cbaralt@baraltlaw.com

*Admitted pro hac vice*

**Counsel for William Pintas, P&M Law Firm LLC, & P&M Law Firm (PR), LLC**

34

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**DIANA MEY, on behalf of herself
and a class of others similarly situated,**

       Plaintiff,

**v.**                                     **Civil Action No.: 5:24-cv-55**

**WILLIAM PINTAS, P&M LAW
FIRM, LLC, P&M LAW FIRM (PR), LLC,
RELIANCE LITIGATION, LLC, and JAMES
RYDER INTERACTIVE, LLC,**

       Defendants.

_____

## CERTIFICATE OF SERVICE

       I, Jared M. Tully, certify that on June 28, 2024, the foregoing ***P&M Defendants' Answer and Affirmative Defenses to Complaint*** and ***Counterclaims*** was filed via the Court's CM/ECF filing system.

                                       */s/ Jared M. Tully*_____
                                       Jared M. Tully (WV Bar No. 9444)