IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DIANA MEY, on behalf of herself
and a class of others similarly situated,

     *Plaintiff-Counterclaim Defendant,*

v.                                     Civil Action No.: 5:24-cv-55

WILLIAM PINTAS, P&M LAW
FIRM, LLC, P&M LAW FIRM (PR), LLC,

     *Defendants-Counterclaim Plaintiffs,*

**and**

**RELIANCE LITIGATION, LLC, and JAMES
RYDER INTERACTIVE, LLC,**

     *Defendants.*

---

## FIRST AMENDED COUNTERCLAIM

     Defendants-Counterclaim Plaintiffs P&M Law Firm (PR), LLC ("P&M-PR"), P&M Law Firm, LLC ("P&M-Chicago"), and William Pintas ("Pintas") (collectively, "P&M"), by and through undersigned counsel, file the following First Amended Counterclaim against Plaintiff-Counterclaim Defendant Diana Mey ("Mey"):

### JURISDICTION, PARTIES, AND VENUE

     1.  This Court has original jurisdiction over the federal question Mey alleged and jurisdiction over P&M's counterclaims because the counterclaims arise out of the transaction or occurrence that is the subject matter of Mey's claim and does not require adding another party over whom the court cannot acquire jurisdiction.

**EXHIBIT A**

2.   Counterclaim-Defendant Diana Mey ("Mey"), on information and belief, claims in the original action to be an individual residing in Wheeling, West Virginia.

3.   Mey also claims to be Rhonda Nicholson who is alleged to be a resident of the State of Illinois.

4.   William Pintas ("William Pintas") is an individual and resident of Puerto Rico.

5.   P&M Law Firm, LLC is an Illinois limited liability company with a principal place of business in Chicago, Illinois ("P&M-Chicago").

6.   P&M Law Firm (PR), LLC, is a limited liability company organized under the laws of the Commonwealth of Puerto Rico with a principal place of business in San Juan, Puerto Rico ("P&M-PR").

7.   Venue for this counterclaim lies in the same venue as the original action because the counterclaims arise out of the transaction or occurrence that is the subject matter of Mey's claim and does not require adding another party over whom the court cannot acquire jurisdiction.

8.   Personal jurisdiction exists over Mey because she filed the original action in this court.

## GENERAL FACTUAL ALLEGATIONS

9.   Mey is a self-proclaimed consumer litigant who willingly tells anyone who does-not-ask that she has been waging a successful war shaking-down businesses of all kinds for violations, among other things, of the Telephone Consumer Protection Act ("TCPA"), claims which she concocts using deceit, concealment, and false representations.

10. Mey *claims* she received several unsolicited telephone calls from P&M on her residential phone on February 8, 2024.

2

**EXHIBIT A**

11. Mey alleges the caller gave her information about the Camp Lejeune Justice Act of 2022, the Camp Lejeune Water Contamination Compensation Claims litigation ("Camp Lejeune").

12. Mey claims she could not establish the identity of the party or parties responsible for generating the calls.

13. Mey engaged in concealment, deceitful acts, fraudulent conduct, and representations as a subterfuge to invite telemarketing calls about Camp Lejeune, which she recorded because she claims she needed to gain more information about the caller.

14. Mey used a fictitious identity – "Rhonda Nicholson" – and feigned interest in the Camp Lejeune Water Contamination Claims litigation to invite more calls about the litigation so she could generate more calls about which to complain, her true intentions for continuing to engage the callers.

15. Shortly after receiving the first calls in February 2023, and after receiving the information calls about the Camp Lejeune Water Contamination Compensation Claims, Mey seized the opportunity to use the calls to demand more than $130,000.00 from Pintas and two law firms, where Pintas is one of the founding members.

16. Mey demanded the money or else – she threatened – Pintas and P&M-PR and P&M-Chicago would face a costly lawsuit from her where she would make claims of numerous TCPA violations.

17. When P&M did not accede to Mey's demands, Mey made good on her threat to sue the P&M Defendants for calls made to and answered by Rhonda Nicholson, not by Diana Mey.

18. Based on these invited communications and consent, Mey claims Rhonda amassed at least 21 calls and three text messages from telemarketers about Camp Lejeune, calls she claims violated the TCPA.

**EXHIBIT A**

19. Mey claims the telephone number Rhonda Nicholson claimed as her own is listed on the National Do-Not-Call Registry.

20. "Rhonda Nicholson" is not a subscriber to that number.

21. Mey engaged in deceit and fraud by creating and using the false identity "Rhonda Nicholson" at a false address, and by lying about her state of residence – Illinois – as the vehicle for Mey's demands, bar complaints, and lawsuit.

22. Mey also committed fraud by inviting or giving permission to caller affiliates to receive more informational calls about the Camp Lejeune Water Contamination Compensation Claims – with no intent other than to add calls about that subject to her claims of TCPA violations against P&M.

23. Mey engaged in deceit and fraud by feigning interest in the informational call about Camp Lejeune Water Contamination Compensation claims as a complete ruse to get P&M-(PR) to rely and act on those false representations, that is, to continue to respond to Rhonda's invitation and to continue making calls to Rhonda.

24. Mey, as Rhonda, answered calls and filled out forms online, and feigned interest and used her "fake identity" to lure and entice follow-up calls about the Camp Lejeune Water Contamination Claims.

25. Mey used her "imposter persona" Rhonda Nicholson to invite and so *consented* to receiving more calls directed to Rhonda the imposter.

26. Mey continued Rhonda's deceit by agreeing to have a retainer agreement prepared under the name "Rhonda Nicholson," the fictional character central to Mey's fraudulent acts, conduct, and representations.

4

**EXHIBIT A**

27. Rhonda Nicholson had no intention, but acted as if she did, of signing the retainer agreement she invited be sent to her because the true motive and intent behind asking for the retainer agreement was so Mey could use the retainer to generate more in-bound calls as TCPA violations in Mey's lawsuit.

28. Rhonda Nicholson is not a residential telephone subscriber.

29. Rhonda Nicholson claims to live in Illinois, not West Virginia.

30. Rhonda Nicholson as it turns out neither has a telephone of any kind nor does she have a number registered on the National Do-Not-Call Registry.

31. The caller affiliates and hence the P&M-Defendants relied on Mey's fraudulent concealment, deceitful acts, conduct, and representations alleged herein and the Defendants suffered damages as a result.

<u>**COUNT I**</u>
**OBTAINING SERVICES UNDER FALSE PRETENSES**

32.  P&M Law Firm (PR), LLC, incorporates the preceding paragraphs 1-31 as if set forth fully herein.

33. As set forth here, Mey had the requisite intent to defraud P&M-PR and others, principally to obtain valuable legal claims.

34. Mey's intent is manifest in the fact that she invited and obtained from P&M-PR, by false pretenses and representations (*e.g.*, feigned interest) information about the Camp Lejeune Water Contamination litigation. Mey used the information to secure a promise from P&M-PR to undertake the representation of the imposter "Rhonda Nicholson" based on Rhonda's false eligibility (*e.g.*, lived at Camp Lejeune during the relevant period and contracted cancer years later) to obtain the benefits and compensation available under the Camp Lejeune Justice Act of 2022,

5

**EXHIBIT A**

*see* W. Va. Code Ann. § 61-3-24, when all Mey really wanted was to use Rhonda to lure P&M-PR into making multiple telephone calls and call-backs to support Mey's claim for damages in various causes of action she asserted, including the TCPA claims.

35. Mey used false pretenses (*e.g.,* that Rhonda Nicholson lived at Camp Lejeune at the relevant time, that Rhonda was married to someone who also lived at Camp Lejeune at the relevant time, that Rhonda suffered from a compensable injury, that Rhonda agreed to be represented in the process of obtaining benefits and compensation under the Camp Lejeune Justice Act of 2022, and that she and consented to be called and contacted on the subject) to accomplish Mey's objective of turning permissible conduct into impermissible conduct, and to create a valuable cause of action – a TCPA claim.

36. Mey made misrepresentations of material facts to secure a contract with P&R-PR. Accomplishment of fraud to any degree by means of the false pretense is unlawful.

37. Prosecution for an offense of false pretense does not bar or otherwise affect adversely any right or liability to damages, forfeiture or other civil remedy arising from any or all elements of the criminal offense. *See* W. Va. Code Ann. § 61-3-24.

**WHEREFORE**, P&M Law Firm (PR), LLC, respectfully prays (A) for judgment and all damages against Mey; (B) for costs, expenses, and reasonable attorney's fees; and (C) for such other relief as the Court may deem proper.

<u>COUNT II</u>
**FRAUDULENT LEGAL PROCESS, W. Va. Code § 61-5-27a(h)**

38. William Pintas, P&M Law Firm (PR), LLC, and P&M Law Firm, LLC, incorporate the preceding paragraphs 1-31 as if set forth fully herein.

**EXHIBIT A**

39. Mey sued the P&M Defendants on March 19, 2024, by filing a lawsuit in the United States District Court for the Northern District of West Virginia. West Virginia Code § 61-5-27a(b), states that: "(b) Fraudulent official proceedings. - It is unlawful for a person to knowingly engage in a fraudulent official proceeding or legal process." West Virginia Code § 61-5-27a(c) also states that: "(c) Fraudulent filings.- [make it] unlawful for a person to knowingly cause a public official or employee to file, record or deliver a fraudulent . . . complaint, summons, . . . or other legal process, including those issued as the result of a fraudulent official proceeding." Mey filed a fraudulent complaint, summons, or other legal process as alleged here.

40. On March 19, 2024, Mey sued P&M in the United States District Court for the Northern District of West Virginia.

41. Rule 4 of the Federal Rules of Civil Procedure sets out the procedure to follow for process and service of process.

42. Process is used for an impermissible purpose where, as here, Mey filed and eventually served the Complaint, which is fraudulent on the facts and the law. Under all circumstances a summons must comply with the contents; amendments; issuance; and service provisions of the Rule. *See* Fed. R. Civ. P. 4(a), (b) & (c).

43. Mey had someone prepare three summons – one for Pintas, P&M-Chicago, and P&M-PR each on multiple occasions, which on each occasion were based on an impermissible purpose.

44. These summons emailed to the lawyer in Puerto Rico were not properly served before the first hearing, even if later corrected, because they were offered as a substitute for proper actual service to gain an advantage.

**EXHIBIT A**

45. For instance, Mey waited thirty-eight (38) days and late on Friday 26, 2024, even before securing sufficient process, before effecting service of process, and without considering personal jurisdiction over any defendant, Mey's lawyer emailed a Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction and supporting memorandum to Carlos Baralt, who is the lawyer for P&M-PR.

46. Shortly after sending the email, Mey's lawyer sent a second email to Baralt.

47. The second email sent an Order also dated April 26, 2024 where the District Court entered setting a hearing on the TRO for just one business day later – at 10:30 am on Tuesday, April 30, 2024.

48. The Order directed Mey to cause "actual notice" service on each of the P&M-Defendants and file proof of such service before the hearing at 10:00 am, the following Tuesday.

49. Mey neither effectuated service nor filed proof of service before the hearing

50. Despite Mey's failures regarding Rule 4(a)(b) and (c), Mey proceeded as if she had followed the Rules and statues, but in fact she did not actually serve Pintas, P&M-Chicago, or P&M-PR before the hearings on Mey's application for injunctive relief.

51. West Virginia Code § 61-5-27a(h) states, in part, that: "A person who violates this section is liable in a civil action to any person harmed by the violation for injury or loss to person or property incurred as a result of the commission of the offense and for reasonable attorney's fees, court costs and other expenses incurred."

52. Some of the offenses are in West Virginia Code § 61-5-27a(b), which states that: "(b) *Fraudulent official proceedings.-* It is unlawful for a person to knowingly engage in a fraudulent official proceeding or legal process."

8

**EXHIBIT A**

53. West Virginia Code § 61-5-27a(c) also states that: "(c) *Fraudulent filings.*- It is unlawful for a person to knowingly cause a public official or employee to file, record or deliver a fraudulent claim of indebtedness, common law lien or other lien, financial statement, complaint, summons, judgement, warrant or other legal process, including those issued as the result of a fraudulent official proceeding."

54. No one left a copy of the summons or complaint or other case-initiating documents at Pintas' usual place of abode with a person who is age 13 or older or with a family member, or with a person residing there. Moreover, the "Affidavit of Special Process Server" signed by an Illinois process server Mey hired, claims to have made "CORPORATE SERVICE" on Pintas by leaving process with "Rachael Vanderstarre" at 360 W. Huron Street, Suite 100, Chicago, IL 60654-3424. Pintas, however, does not live in Illinois and does not have an abode at the Huron Street address. Moreover, Rachael Vanderstarre does not live with Pintas. She has never been, and is not, authorized to accept service of process for Pintas. The "Affidavit of Special Process Server" Mey hired does not say that the attesting process server hand delivered the papers to Pintas because they were not, and the Affidavit does not say such papers were left at Pintas' abode because they were not.

55. Likewise, no one has served process in Puerto Rico on P&M-PR; that is, no one delivered a copy of the summons and of the complaint to an officer, managing or general agent, or to any other agent authorized by appointment or designated by law to receive service of process. Moreover, the "Affidavit of Special Process Server" is not signed by a Puerto Rican process server. The "Affidavit of Special Process Server" claims to have been made as "CORPORATE SERVICE" on P&M-PR by leaving process with "Rachael Vanderstarre" at 360 W. Huron Street, Suite 100, Chicago, IL 60654-3424. P&M-PR does not have an office or agents in Illinois and so is not found

9

**EXHIBIT A**

in Chicago at the Huron Street address. Rachael Vanderstarre is not an officer, managing or general agent, authorized by appointment or designated by law to receive service of process for the Firm.

56. Mey did not initially serve P&M-Chicago, having totally ignored the Business Entity information made freely available to all by the Office of the Illinois Secretary of State names the Registered Agent for P&M-Chicago by name and provides the agent's address in Illinois. *See* Business Entity Search (ilsos.gov) last visited April 29, 2024. No one served process in this matter on P&M-Chicago's Registered Agent; that is, no one delivered a copy of the summons and of the complaint to the Registered Agent, an officer, managing or general agent, or to any other agent authorized by appointment or designated by law to receive service of process. The "Affidavit of Special Process Server" Mey had prepared claims to have been made as "CORPORATE SERVICE" on P&M-Chicago by leaving process with "Rachael Vanderstarre" at 360 W. Huron Street, Suite 100, Chicago, IL 60654-3424. Rachael Vanderstarre is not an officer, managing or general agent, authorized by appointment or designated by law to receive service of process for P&M-Chicago.

57. As detailed here, Mey tries to justify her acts, conduct, and false representations calculated to entrap P&M's agent by claiming she only wished to learn who made the calls.

58. In addition to the other matters alleged here, Mey violated provisions of the West Virginia Code, for example,

  a.  § 61-5-27a(h), by directing the filing of and prosecuting the original and fraudulent action.

  b.  § 61-5-27a(b), by knowingly engaging in a fraudulent official proceeding or legal process (*e.g*., insufficient process and service of process); and

**EXHIBIT A**

c.   § 61-5-27a(c), by knowingly causing a public official to file, record, or deliver a fraudulent complaint, defective summons, or other legal process.

59. Mey's violations are the direct and proximate cause of damages to P&M, including statutory and reasonable attorney's fees, court costs and other expenses because § 61-5-27a(i) provides for: "Civil sanctions. -- In addition to the criminal and civil penalties set forth in this section, a fraudulent official proceeding or legal process brought in a tribunal in violation of this section shall be dismissed by the tribunal and the person may be ordered to reimburse the aggravated person for reasonable attorney's fees, court costs and other expenses incurred in defending or dismissing such action."

**WHEREFORE**, Counterclaim Plaintiffs Willliam Pintas, P&M Law Firm, LLC, and P&M Law Firm (PR), LLC, pray (A) for judgment and all damages against Mey; (B) for costs, expenses, and reasonable attorney's fee, as authorized by statute; and (C) for such other relief as the Court may deem appropriate.

## COUNT III
### Common Law Fraud

60. P&M Law Firm (PR), LLC and William Pintas incorporate the preceding paragraphs 1-31 as if set forth fully herein.

61. Fraud is the concealment of the truth, just as much as it is the utterance of a falsehood.

62. P&M-PR and Pintas, as further stated herein, allege every one of the elements of a fraud claim, which this Court identified in *Glover v. EQT Corp.*, No. 5:19-CV-223, 2023 WL 7397486, at *5 (N.D. W. Va. Oct. 16, 2023) (Bailey, J.) ("The essential elements in an action for fraud are: '(1) that the act claimed to be fraudulent was the act of the defendant or induced by him;

11

**EXHIBIT A**

(2) that it was material and false; [3] that plaintiff relied on it and was justified under the circumstances in relying up, on it; and [4] that he was damaged because he relied on it'.")

63. Furthermore, as set forth here, P&M-PR and Pintas allege the time, place, and contents of Mey's concealment of material facts and her false representations with particularity and allege what she obtained thereby. *See United States v. Highland-Clarksburg Hosp., Inc.*, No. 1:18-CV-220, 2022 WL 4391508, at *3 (N.D. W. Va. Sept. 22, 2022)("[T]he circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.").

64. Starting on February 8, 2023 and through at least February 14, 2023, Mey answered and accepted calls from telemarketers about the Camp Lejeune Justice Act of 2022.

65. Mey was more than prepared to receive a telemarketing call; without doubt, she had a plan to defraud in place, along with a plan to conceal her identity. As previously mentioned, fraud is the concealment of the truth, just as much as it is the utterance of a falsehood.

66. The keystone of Mey's plan to deceive was simple: to conceal her identity and misled each telemarketing caller into believing Mey was a woman named "Rhonda Nicholson."

67. From the first to the last call, with calculated purpose and full of malice, Mey responded by misrepresenting to the caller, the substance of which was her repeated statements to multiple callers: (i) that her name was "Rhonda Nicholson"; (ii) that "Rhonda" lived in and so had her residence in and an address in Bensenville, Illinois; (iii) that "Rhonda" and her husband had been at Camp Lejeune at the relevant time; (iv) that "Rhonda" was interested in being represented in connection with obtaining the benefits and compensation available under the provisions of the Camp Lejeune Justice Act; (v) that the caller or an affiliate could call her back to discuss a potential

12

claim for benefits; and (vi) that she, "Rhonda" – after being told she was likely eligible for Camp Lejeune benefits and compensation – wanted a retainer reflecting her agreement to be represented by a lawyer in connection with the Camp Lejeune litigation.

68. The core pillar of these six illustrative false statements rests on Mey intentionally concealing these facts:  (i) that, in February 2023, when she answered these calls, "Rhonda Nicholson" did not exist; (ii) that "Rhonda" did not live in or have a residential address in Illinois; (iii) that "Rhonda" had no spouse who served in the military at Camp Lejeune; (iv) that "Rhonda" had never served in the military and so could not have been stationed at Camp Lejeune; (v) that the nonexistent "Rhonda" had could not have suffered a compensable injury; and (vi) that "Rhonda" had absolutely no right to claim benefits or compensation under the Camp Lejeune Act.

69. Diana Mey intentionally – as "Rhonda Nicholson" – made these numerous false statements and concealed material facts when she responded to telemarketing phone calls she received in February 2023, about the Camp Lejeune Justice Act of 2022, and by claiming that she had lived at Camp Lejeune and was married to a veteran who had been assigned to Camp Lejeune and that she was consenting to receiving additional information from the caller or affiliates.

70. As the preceding allegations show, these false statements were intentional acts by Diana Mey made to invite telemarketing calls she could later claim violated the TCPA, which in turn she would use in an effort to obtain an exorbitant settlement from P&M-PR and Pintas.

71. Additionally, Mey made these false statements and concealed her true identity with the intent to mislead and defraud P&M-PR and Pintas, as alleged herein.

72.  Mey acted on her fraudulent acts when she demanded six-figures from P&M-PR and Pintas to settle, or else she would complain about them to various federal and state authorities.

73. Of course, Mey followed up on her threats by escalating them.

**EXHIBIT A**

74. For example, Mey wrote a four-page letter dated February 16, 2014, to the Federal Trade Commission, where she admits freely her fraudulent concealment of the truth by using "unique pseudonyms," such as "Rhonda Nicholson."

75. This action against Mey for fraud can and does arise from the concealment of truth, which is actionable because, as this Court has explained, "[f]raud is the concealment of the truth, just as much as it is the utterance of a falsehood. *See Glover*, 2023 WL 7397486, at *5.

76. "Fraudulent concealment involves the concealment of facts by one with knowledge or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud." *Id.*

77. Mey had the knowledge and duty to disclose her identity, as well as the requisite intent to defraud P&M-PR and Pintas, after having invited calls related to Camp Lejune benefits.

78. But for Mey's deceit and concealment of the truth, P&M-PR and Pintas would have suffered no harm *if* Mey simply told the very first caller that she was actually Diana Mey and her subscribed number is on the Do-Not-Call Registry.

79. Instead, Mey intended that her concealment of her identity would allow her to string the callers along to ring the bell on more and more so-called illegal calls.

**WHEREFORE**, P&M Law Firm (PR), LLC and William Pintas respectfully pray (A) for judgment and all damages against Mey; (b) for costs and expenses; and (C) for such other relief as the Court may deem proper.

## COUNT IV
### Abuse of Process

80. P&M Law Firm (PR), LLC, P&M Law Firm, LLC, and William Pintas incorporate the preceding paragraphs 1-31, 54, and 55, as if set forth fully herein.

**EXHIBIT A**

81. Under West Virginia law, "abuse of process consists of willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process." *See Wayne Cnty. Bank v. Hodges,* 338 S.E.2d 202, 205 (W. Va. 1985).

82. Mey filed, served, and is pursuing this action not for any legitimate purpose, but only to coerce them into dropping their valid claims by multiplying the proceedings and embroiling them in vexatious litigation calculated to cause harm and inflict maximum pain and damages.

83. Mey's abuse of process consists of willful and malicious misuse of lawfully issued process in this action, to collaterally attack the jurisdiction of the Court in the Commonwealth of Puerto Rico, where Mey had been litigating against P&M-PR for eleven plus months by seeking an injunction under the Anti-Injunction Act (AIA) against P&M-PR, P&M-Chicago, and Pintas to accomplish some purpose not intended or warranted by that process.

84.   Mey filed this federal court action against P&M Law Firm (PR), LLC—along with William Pintas and P&M Law Firm (Chicago), LLC, neither of whom is a party to the Puerto Rico Lawsuit—in the U.S. District Court for the Northern District of West Virginia at Wheeling, nine months *after* she started defending the lawsuit P&M-PR alone brought against her in Puerto Rico.

85. By her Complaint, which is pursued both individually and on behalf of others similarly situated, Mey sought to use her false claims for some other purpose—that is, to allege a class-wide claim for relief under the TCPA, along with the following individual claims: (1) fraudulent legal process; (2) abuse of process; (3) intentional infliction of emotional distress; and (4) injunctive relief under the AIA.

86. All of Mey's claims are a malicious subterfuge because her single purpose in filing in West Virginia is to forum shop, using the AIA.

EXHIBIT A

87. Mey's Complaint and moving papers make much of the fact that P&M-PR supposedly did not effectuate proper service of process in the Puerto Rico Lawsuit (which it did).

88. Ironically, however, at 4:12 PM EST on Friday, April 26, 2024, without first effectuating service of process on *any* of the named defendants in the West Virginia Lawsuit, Mey's lawyer emailed a copy of a Motion for Temporary Restraining Order and Preliminary Injunction to Carlos Baralt, counsel for P&M-PR in the Puerto Rico Lawsuit.

89. Very shortly thereafter, the District Court issued an order setting a hearing on Mey's request for temporary restraining order for Tuesday, April 30, 2024, at 10:30 AM.

90. The District Court also commanded Mey to effectuate actual notice regarding the AIA hearing on each defendant—and to file returns showing actual service—by no later than 12:00 PM EST on Monday, April 29, 2024.

91. Mey did not file the returns by the Court ordered deadline.

92. The hearing went forward, and Mey obtained an injunction under the AIA.

93. An anti-suit injunction is an extraordinary legal remedy used sparingly.

94. The AIA is a court order that *prevents* an opposing party from commencing or continuing a proceeding in another jurisdiction or forum.

95. The AIA is typically used to prevent forum shopping and is considered a significant measure to control legal proceedings, especially in cases involving multiple jurisdictions.

96. Here, Mey is using the AIA to forum shop.

97. Mey's malicious and willful misuse of process to obtain an extraordinary AIA injunction is aimed at these defendants in furtherance of Mey's vexatious nationwide campaign to use deceit and concealment as a vehicle to breathe life into fabricated TCPA claims.

**EXHIBIT A**

98. Mey's malicious abuse of process is the direct and proximate cause of damages to P&M Law Firm (PR), LLC and William Pintas, including costs, expenses, and attorneys' fees.

**WHEREFORE**, P&M Law Firm (PR), LLC, P&M Law Firm, LLC, and William Pintas respectfully pray (A) for judgment and all damages against Mey; (B) for costs and expenses; and (C) for such other relief as the Court may deem proper.

Respectfully submitted,

*/s/ Jared M. Tully*
Jared M. Tully (WV Bar No. 9444)
Blake N. Humphrey (WV Bar No. 14132)
FROST BROWN TODD LLP
500 Virginia Street E, Suite 1100
Charleston, WV 25301
Telephone: 304-345-0111
jtully@fbtlaw.com
bhumphrey@fbtlaw.com

*/s/ Richard W. Epstein*
Richard W. Epstein*
GREENSPOON MARDER LLP
200 East Broward Blvd, Suite 1800
Fort Lauderdale, FL 33301
Telephone: 954-491-1120
richard.epstein@gmlaw.com

Jeffrey Gilbert*
GREENSPOON MARDER LLP
600 Brickell Avenue, Suite 3600
Miami, FL 33131
Telephone: 305-789-2761
jeffrey.gilbert@gmlaw.com

Carlos R. Baralt Suárez*
BARALT LAW LLC
P.O. Box 190751
San Juan, PR 00919
Telephone: 939-625-3712
cbaralt@baraltlaw.com

*Admitted pro hac vice*

**EXHIBIT A**

*Counsel for William Pintas, P&M Law Firm LLC, & P&M Law Firm (PR), LL*C

**EXHIBIT A**