IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**DIANA MEY**, on behalf of herself and a
class of others similarly situated,

                Plaintiff,

v.                                             **Civil Action No. 5:24-CV-55**
                                                  Judge Bailey

**WILLIAM PINTAS**, **P&M LAW FIRM, LLC**,
**P&M LAW FIRM (PR), LLC**, **RELIANCE
LITIGATION LLC**, and **JAMES RYDER
INTERACTIVE LLC**,

                Defendants.

## ORDER

Pending before this Court is Plaintiff's Motion to Dismiss Defendants' Amended Counterclaims [Doc. 98] and accompanying Memorandum of Law in Support [Doc. 99], filed September 3, 2024. Defendants P&M Law Firm (PR), P&M Law Firm, and William Pintas filed a Response in Opposition to Plaintiff's Motion to Dismiss Amended Complaint [Doc. 102] on September 17, 2024. Plaintiffs filed a Reply [Doc. 103] on September 24, 2024. Based upon the foregoing, this Court is of the opinion that the Motion to Dismiss will be granted as to all four (4) of defendants P&M Law Firm (PR), P&M Law Firm, and William Pintas' counterclaims.

1

## I. BACKGROUND[1] AND STANDARD OF REVIEW

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." **Bell Atl. Corp. v. Twombly**, 550 U.S. 544, 570 (2007); see also **Giarratano v. Johnson**, 521 F.3d 298, 302 (4th Cir. 2008) (applying the **Twombly** standard and emphasizing the necessity of *plausibility*). When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. **Edwards v. City of Goldsboro**, 178 F.3d 231, 243–44 (4th Cir. 1999).

When rendering its decision, the Court should consider only the allegations contained in the Complaint, the exhibits to the Complaint, matters of public record, and other similar materials that are subject to judicial notice. **Anheuser-Busch, Inc. v. Schmoke**, 63 F.3d 1305, 1312 (4th Cir. 1995). In **Twombly**, the Supreme Court noted that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." **Twombly**, 550 U.S. at 555, 570 (upholding the dismissal of a complaint where the plaintiffs did not "nudge[ ] their claims across the line from conceivable to plausible.").

This Court is well aware that "[M]atters outside of the pleadings are generally not considered in ruling on a Rule 12 Motion." **Williams v. Branker**, 462 Fed. App'x. 348, 352

---

[1] The parties and this Court are intimately familiar with the Background of this case. Thus, this Court will not belabor the Background in this Order.

2

(4th Cir. 2012). "Ordinarily, a court may not consider any documents that are outside of the Complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." ***Witthohn v. Fed. Ins. Co.***, 164 Fed. App'x. 395, 396 (4th Cir. 2006). However, the Court may rely on extrinsic evidence if the documents are central to a plaintiff's claim or are sufficiently referred to in the Complaint. *Id.* at 396–97.

## II. Discussion

Plaintiff seeks to dismiss all four (4) counterclaims. This Court will address each Count within defendants P&M Law Firm (PR), P&M Law Firm, and William Pintas' Amended Counterclaim in turn.

### 1. Count I: Obtaining Services Under False Pretenses

Defendants allege in their Amended Counterclaim that plaintiff Mey "made misrepresentations of material facts to secure a contract with P&R-PR." [Doc. 91 at ¶ 36]. Defendants argue that Mey's use of a false name ("Rhonda Nicholson"), as well as her claim "that Rhonda Nicholson lived at Camp Lejeune at the relevant time, that Rhonda was married to someone who also lived at Camp Lejeune at the relevant time, that Rhonda suffered from a compensable injury, that Rhonda agreed to be represented . . . and that she and [sic] consented to be called and contacted on the subject" constituted "false pretenses." [Id. at ¶¶ 34–35].

West Virginia Code § 61-3-24 governs obtaining money, property, or services by false pretenses. This claim surrounds the alleged obtainment of services by false pretenses, which is detailed in section (d):

>(d) If a person, firm or corporation obtains labor, services or any other such thing of value from another by any false pretense, token or representation, with intent to defraud, the person, firm or corporation is guilty of theft of services.

Additionally at issue within the parties' arguments is section (f): "Prosecution for an offense under this section does not bar or otherwise affect adversely any right or liability to damages, forfeiture or other civil remedy arising from any or all elements of the criminal offense." W.Va. Code § 61-3-24(f).

Plaintiff advances two (2) arguments in her Motion with respect to Count I. First, plaintiff claims that defendants' first "claim fails as a matter of law because it is premised on a criminal statute, which does not afford any private right of action." [Doc. 99 at 1]. Plaintiff claims that although West Virginia Code § 61-3-24(f) might not bar a right of civil recovery that already exists on independent grounds, no private right of recovery exists within the statute. [Id. at 4]. Second, plaintiff argues that even if there was a private right of action here, "P&M Law fails to identify any services obtained by Mey—fraudulent or not." [Id. at 1].

Defendants, in their Response state, "Mey does not cite any legislative history or other authority" supporting the conclusion that there is no private right of action. [Doc. 102 at 4]. Defendants further argue that the statute's inclusion of a provision allowing for recovery shows that "the statute therefore does not preclude a private right of action for those damages and other relief arising from false pretenses, but rather it makes one available." [Id.].

Finally, plaintiff's Reply counters defendants' arguments stating, "Even assuming Mey's use of a pseudonym constitutes a fraudulent act, P&M Law still fails to allege that they provided any 'labor, services, or thing of value' as a result of her alleged misrepresentation." [Doc. 103 at 3]. Plaintiff further contends that the counterclaim admits that "Mey never signed the proposed representation agreement, never received legal services, and never intended to execute the contract." [Id.].

This Court does not find defendants have made sufficient allegations of plaintiff obtaining "labor, services or any other such thing of value from another by any false pretense" in defendants' Amended Counterclaim. W.Va. Code § 61-3-24. Defendants claim "The only explanation for Section (f) in W.Va. Code § 61-3-24 is that there is a private right and civil cause of action for false pretenses." [Doc. 102 at 6]. Though it is far from clear that the phrase "does not bar or otherwise affect adversely any right or liability to damages" creates a private right of action, it is immaterial to this claim as defendants have failed to allege "services" obtained "under false pretenses" in this case. P&M Law fails to allege plaintiff ever signed the proposed representation, ever received legal services, and ever intended to execute the contract. *See, e.g.*, [Doc. 91 at ¶ 27 ("Rhonda Nicholson had no intention, but acted as if she did, of signing the retainer agreement she invited be sent to her because the true motive and intent behind asking for the retainer agreement was so Mey could use the retainer to generate more in-bound calls as TCPA violations in Mey's lawsuit.")].

Because defendants fail to allege enough facts to state a claim for relief that is plausible on its face, this Court will **GRANT** Plaintiff's Motion to Dismiss Defendants' Amended Counterclaim as to Count I.

### 2. Count II: Fraudulent Legal Process (West Virginia Code § 61-5-27a)

Defendants contend, in Count II of their Amended Counterclaim, that plaintiff has violated West Virginia Code § 61-5-27a, sections (b), (c), and (h) which provide as follows:

> (b) *Fraudulent[2] official proceedings.*- It is unlawful for a person to knowingly engage in a fraudulent official proceeding or legal process.[3]
>
> (c) *Fraudulent filings.*- It is unlawful for a person to knowingly cause a public official or employee to file, record or deliver a fraudulent claim in indebtedness, common law lien or other lien, financial statement, complaint, summons, judgment, warrant or other legal process, including those issued as the result of a fraudulent official proceeding.
>
> . . .
>
> (h) *Civil cause of action.*- A person who violates this section is liable in a civil action to any person harmed by the violation for injury or loss to person or property incurred as a result of the commission of the offense and for reasonable attorney's fees, court costs and other expenses incurred as a result of prosecuting the civil action commenced under this subsection, which is not the exclusive remedy of a person who suffers injury or loss to person or property as a result of a violation of this section.

W.Va. Code § 61-5-27a(b)–(c), (h).

---

[2] "'Fraudulent' means not legally issued or sanctioned under the laws of this State or of the United States, including forged, false, and materially misstated[.]." *See* W.Va. Code § 61-5-27(a)(1).

[3] "'Legal process' means an action . . . to pursue a claim against person or property." *See* W.Va. Code § 61-5-27(a).

Defendants allege plaintiff: violated section (h) by "directing the filing of and prosecuting the original and fraudulent action;" violated section (b) by "knowingly engaging in a fraudulent official proceeding or legal process (*e.g.*, insufficient process and service of process);" and violated section (c) by "knowingly causing a public official to file, record, or deliver a fraudulent complaint, defective summons, or other legal process." [Doc. 91 at ¶ 58]. Defendants argue, "Process is used for an impermissible purpose where, as here, Mey filed and eventually served the Complaint, which is fraudulent on the facts and the law." [Id. at ¶ 42].

In her Memorandum, plaintiff asserts that neither plaintiff's lawsuit being fraudulent in itself, nor plaintiff's "fail[ing] to effectuate proper service but proceed[ing] as if she had" is sufficient to state a claim for fraudulent legal process. [Doc. 99 at 5]. Plaintiff goes on to state, "P&M Law does not point to any supposed misrepresentations of fact. Nor do they point to any misstatements of law." [Id.]. Additionally, plaintiff states that "neither this Court nor the Federal Rules of Civil Procedure required actual service at that early juncture. This Court required 'actual notice' prior to the hearing, which Plaintiff provided." [Id. at 6]. Plaintiff argues that regardless of service requirements, her departure from Federal Rule of Civil Procedure 4 does not constitute "fraudulent legal process." [Id. at 7].

Defendants respond by stating that plaintiff "directed the filing of," "knowingly engag[ed] in," and "knowingly caus[ed] a public official to file, record, or deliver" a "fraudulent" action. [Doc. 102 at 7]. Additionally, defendants point this Court to their claim that plaintiff "is prosecuting the [C]omplaint . . .to attack the legitimacy of the court in Puerto Rico in violation of the statute." [Id.]. Defendants allege that plaintiff, "filed her [C]omplaint in this Court and afterwards knowingly engaged in and directed a scheme to, among other

7

things, prepare fraudulent filings and papers (such as her Complaint) based on intentional misrepresentations." [Id.]. Defendants further argue that plaintiff's application for an injunction and her "forum shopping" were violations of § 61-5-27a(b) and therefore evidence of fraudulent legal process. [Id.].

Plaintiff's Reply argues that defendants "do not explain how this lawsuit is fraudulent." [Doc. 103 at 4]. Plaintiff's Reply takes issue with what she terms "general and conclusory allegations of fraud" that "lack any substantive detail." [Id. at 5]. Plaintiff categorizes defendants' arguments as a disagreement as to the legal propriety of the lawsuit, which she claims "is hardly sufficient to state a claim for fraudulent legal process." [Id. at 5]. Plaintiff likewise responds to the claim that she is forum shopping by stating, "disagreement as to this Court's jurisdiction is insufficient to state a claim for fraudulent legal process-especially when this Court has found that this is a proper venue for Mey's claims." [Id. at 5]. Finally, in response to defendants' allegations that plaintiff lied about allegations condemning PR Courts, P&M-PR, and the Puerto Rican People, she states, "They fail to identify any specific allegations they believe to be 'fabricated.'" [Id. at 6].

This Court does not find defendants have made sufficient allegations of fraudulent legal process. Although defendants allege that plaintiff engaged in fraudulent conduct prior to filing a lawsuit, they do not state any more than conclusory assertions that the claim or the filing was fraudulent. Although defendants point to the fact that plaintiff went by another name when ascertaining the source of the calls, they do not point to a fraudulent legal process in this case. Defendants focus on their view that plaintiff was fraudulent in gaining the information about who was calling, but do not address how that creates a claim for fraudulent legal process. Arguments about the lack of service when only notice was

8

required do not support an allegation of fraudulent legal process. Likewise, allegations that plaintiff is forum shopping when this Court has found that this is a proper venue do not lead to a plausible claim. Finally, allegations about the condemnation of PR Courts, P&M-PR, and the people of Puerto Rico are insufficient for a plausible claim of fraudulent legal process.

Because defendants fail to allege facts sufficient for a claim for relief that is plausible on its face, this Court will **GRANT** Plaintiff's Motion to Dismiss Counterclaim as to Count II.

### 3. Count III: Common Law Fraud

Defendants allege in their Amended Counterclaim that the common law fraud action against plaintiff "can and does arise from the concealment of truth, which is actionable." [Doc. 91 at ¶ 75]. Defendants quote *Glover v. EQT Corp.*, stating, "Fraudulent concealment involves the concealment of facts by one with knowledge or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud." [Id. (citing *Glover v. EQT Corp.,* 2023 WL 7397486, at *5 (N.D. W.Va. Oct. 16, 2023) (Bailey, J.)]. Defendants argue that plaintiff had "the knowledge and duty to disclose her identity, as well as the requisite intent to defraud P&M-PR and Pintas, after having invited calls related to Camp Lejeune benefits." [Id. at ¶ 77]. Defendants allege the following false statements by plaintiff:

> (i) that her name was "Rhonda Nicholson"; (ii) that "Rhonda" lived in and so had her residence in and an address in Bensenville, Illinois; (iii) that "Rhonda" and her husband had been at Camp Lejeune at the relevant time;

9

(iv) that "Rhonda" was interested in being represented in connection with obtaining the benefits and compensation available under the provisions of the Camp Lejeune Justice Act; (v) that the caller or an affiliate could call her back to discuss a potential claim for benefits; and (vi) that she, "Rhonda" – after being told she was likely eligible for Camp Lejeune benefits and compensation – wanted a retainer reflecting her agreement to be represented by a lawyer in connection with the Camp Lejeune litigation.

[Doc. 91 at ¶ 67]. Defendants allege that plaintiff "made these false statements and concealed her true identity with the intent to mislead and defraud P&M-PR and Pintas." [Id. at ¶ 71].

Plaintiff contends in her Memorandum that defendants' claim "must be dismissed for failure to sufficiently plead any fraudulent conduct or resulting injury." [Doc. 99 at 8]. Plaintiff also points out that this Court stated in a prior Order that "the Federal Trade Commission and numerous courts have endorsed plaintiffs posing as interested consumers in order to identify the source of a call." [Doc. 68 at 2 n.1]. Additionally, plaintiff states, "At no point does P&M Law suggest that Mey was attempting to extract free legal services from them. Thus, P&M Law has failed to allege any fraudulent conduct." [Doc. 99 at 8]. Plaintiff closes by stating that defendants "fail[] to explain [their] theory of detrimental reliance" and "fail[] to allege monetary injury," therefore defendants "failed to allege an injury resulting from Mey's use of a pseudonym." [Id.].

Defendants respond to the Motion to Dismiss by pointing out that plaintiff's "actions were material and admittedly false," and then that they "justifiably relied on Mey's actions, for example, her concealment of the truth that, among other things, Rhonda Nicholson was

not and never was eligible for Camp Lejeune benefits." [Doc. 102 at 9]. Defendants further state, "Fraudulent concealment as alleged here is actionable and involves the concealment of facts by one with knowledge or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud. [Doc. 102 at 10 (citing *Glover*, 2023 WL 7397486, at *5)].

Plaintiff's Reply states, "Detrimental reliance, or injury, is a fundamental element of common law fraud." [Doc. 103 at 6]. Plaintiff continues, "Even if Mey's use of a pseudonym were deemed fraudulent . . . P&M Law fails to allege any detrimental reliance resulting from it. They do not claim to have provided legal services to Mey under false pretenses, nor do they assert any economic injury stemming from her representations." [Id.]. Citing to defendants' response to her Motion to Dismiss, plaintiff argues that the only allegation of injury to P&M is the "single conclusory statement: 'P&M suffered damages because of Mey's misconduct.'" [Id. at 7 (citing [Doc. 102 at 10])].

Defendants note the elements of common law fraud in their Counterclaim: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied on it." [Doc. 91 at ¶ 62 (citing *Glover*, 2023 WL 7397486, at *5)]. Defendants likewise note that the time, place, contents of representations, and what was gained by the representations in common law fraud cases are "required to be pled with particularity under Rule 9(b)". [Id. at ¶ 63 (citing *United States v. Highland-Clarksburg Hosp., Inc.*, 2022 WL 4391508, at *3 (N.D. W.Va. Sept. 22, 2022) (Kleeh, C.J.)].

11

This Court does not find defendants have sufficiently alleged the elements of common law fraud in their Amended Counterclaim. Defendants claim that the fraudulent act was plaintiff concealing her true identity and acting as though she was interested in further communication and services from defendants when she was not. Plaintiff admits she went by a pseudonym in her attempt to ascertain the identity of defendants (and therefore admits that the name she gave was false). Defendants claim that they relied on the false information given by plaintiff, but fail to allege how they relied on it to their detriment or how they were damaged by that reliance.

Defendants cite to paragraphs 76–79 of their Amended Counterclaim when alleging that they had described damages, but those paragraphs seem to imply that the damages are the continuation of "so-called illegal calls." [Doc. 91 at ¶¶ 76–79 ("But for Mey's deceit and concealment of the truth, P&M-PR and Pintas would have suffered no harm if Mey simply told the very first caller that she was actually Diana Mey. . .[i]nstead, Mey intended that her concealment of her identity would allow her to string the callers along to ring the bell on more and more so-called illegal calls.")]. Although defendants do not need to anticipate affirmative defenses, they must allege the elements of a claim and must allege fraud with particularity. In this case, defendants fail to describe what services were given in reliance or how reliance resulted in damage to the defendants.

Because defendants fail to sufficiently allege the elements of common law fraud in such a way that relief is plausible on its face, this Court will **GRANT** Plaintiff's Motion to Dismiss Defendants' Amended Counterclaim as to Count III.

4. **Count IV: Abuse of Process**

Defendants allege in the Counterclaim that plaintiff used process to accomplish aims that were "malicious" and "not for any legitimate purpose." [Doc. 91 at ¶¶ 82–83]. They further allege that plaintiff's lawsuit is meant only to "collaterally attack the jurisdiction of the Court in the Commonwealth of Puerto Rico" and to "coerce [defendants] into dropping their valid claims by multiplying the proceedings and embroiling [defendants] in vexatious litigation calculated to cause harm and inflict maximum pain and damages." [Id.].

Plaintiff argues that a claim for abuse of process must focus "on the use of the process itself, and not on the initiation of the process." [Doc. 99 at 9 (citing ***Ballock v. Costlow***, 430 F.Supp.3d 146, 158 (N.D. W.Va. 2019) (Keeley, J.)]. Instead, plaintiff argues, "P&M Law's claim is premised on the initiation of process rather than the improper use of process thereafter." [Id. at 9].

Defendants respond by alleging plaintiff had an ulterior purpose for filing the lawsuit and as evidence they note,

> Mey waited nearly a year after P&M-(PR) filed a lawsuit against her in Puerto Rico to file her own action in this Court. Then she waited an additional thirty-eight (38) days after filing her action in this Court to give notice that she was seeking a Temporary Restraining Order and Preliminary Injunction.

[Doc. 102 at 11]. Defendants allege that plaintiff's goal in this lawsuit was to "multiply these proceedings vexatiously, to forum shop and manipulate the timing of filings and hearings, and use process to play hide-and-seek games with these defendants." [Id.].

Plaintiff responds stating that defendants "fail[] to explain how this timing is suggestive of legal abuse" and that she "did not run afoul of any rule or deviate from any legal process." [Doc. 103 at 8]. Plaintiff then responds to defendants' allegations that she "used process to obtain an injunction to which she is not otherwise entitled and used process, in part, to forum shop" by stating, "A mere disagreement of law does not give rise to an abuse of process claim." [Doc. 102 at 13]; [Doc. 103 at 9].

Under West Virginia law, "abuse of process consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by the process." **Preiser v. MacQueen**, 177 W.Va. 273, 279, 352 S.E.2d 22, 28 (1985).

This Court does not find defendants have alleged sufficient facts to support a claim of abuse of process in their Amended Counterclaim. The fact that plaintiff filed motions later than she could have, and gave notice instead of service where only notice was required does not support a claim of abuse of process. Likewise, allegations of forum shopping when this Court has found the Northern District of West Virginia is a proper venue does not support an abuse of process claim. Though defendants believe the lawsuit is "not for any legitimate purpose," the actions they ascribe to plaintiff (waiting "nearly a year. . .to file her own lawsuit," waiting "an additional 38 days before moving to enjoin the Puerto Rican lawsuit," prevailing in her injunction, and choosing the Northern District of West Virginia as a forum) are not a "misapplication of lawfully issued process." See [Doc. 102]; **Preiser**, 177 W.Va. at 279, 352 S.E.2d at 28. Because defendants fail to allege

14

enough facts to state a claim for relief that is plausible on its face, this Court will **GRANT** Plaintiff's Motion to Dismiss Defendants' Amended Counterclaim as to Count IV.

### III. CONCLUSION

For the reasons stated above, this Court **GRANTS** Plaintiff's Motion to Dismiss Defendants' Amended Counterclaims [**Doc. 98**].

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to all counsel of record herein.

**DATED:** September 30, 2024.

_____
**JOHN PRESTON BAILEY**
**UNITED STATES DISTRICT JUDGE**